# 23-6123-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

SHAVARIUS SMITH,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## APPENDIX

PAUL SKIP LAISURE
*Attorney for Defendant-Appellant*
1225 Franklin Avenue, Suite 325
Garden City, New York 11530
(571) 477-1003

CP COUNSEL PRESS    (800) 4-APPEAL • (323664)

i

# TABLE OF CONTENTS

| | Page |
|---|---|
| District Court Docket Sheet | A-1 |
| Indictment, filed on November 17, 2021 | A-13 |
| Plea Agreement, dated June 24, 2022 | A-16 |
| Consent to have Magistrate Judge Conduct Plea Allocution, filed June 24, 2022 | A-25 |
| Change of Plea Hearing Transcript, dated June 24, 2022 | A-26 |
| Plea Petition, dated June 24, 2022 | A-72 |
| Magistrate Judge Findings and Recommendation, dated June 26, 2022 | A-88 |
| Forfeiture Order, dated November 17, 2022 | A-92 |
| District Court Order Accepting Defendant's Guilty Plea, dated November 18, 2022 | A-94 |
| Defendant's Memorandum in Aid of Sentencing, dated November 18, 2022 | A-95 |
| Government's Sentencing Memorandum, dated November 18, 2022 | A-109 |
| Sentencing Hearing Transcript, dated November 28, 2022 | A-120 |
| Defendant's Supplemental Memorandum of Law, dated December 21, 2022 | A-137 |
| Sentencing Hearing Transcript, dated January 25, 2023 | A-145 |

ii

|  | Page |
|---|---|
| Ruling on Predicate Controlled Substance Offense Enhancement, dated January 31, 2023 .................. | A-182 |
| Judgment Appealed From, filed February 1, 2023 .... | A-188 |
| Notice of Appeal, filed January 30, 2023 .................. | A-192 |

A-1

Query    Reports    Utilities    Help    Log Out

APPEAL,CLOSED,EFILE,REFMC,RMS

# U.S. District Court
## District of Connecticut (New Haven)
## CRIMINAL DOCKET FOR CASE #: 3:21-cr-00202-JBA-1

| | |
|---|---|
| Case title: USA v. Smith | Date Filed: 11/17/2021 |
| Magistrate judge case number: 3:21-mj-01072-RMS | Date Terminated: 02/01/2023 |

Assigned to: Judge Janet Bond Arterton
Referred to: Judge Robert M. Spector

**Defendant (1)**

**Shavarius Smith**
*TERMINATED: 02/01/2023*

represented by **Francis L. O'Reilly**
Law Office of Francis L. OReilly
1735 Post Road, Suite 2C
Fairfield, CT 06824
203-319-0707
Email: attflor@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Justin C. Pugh**
Justin C. Pugh & Associates
315 Post Road W.
Suite 105
Westport, CT 06880
203-583-9103
Fax: 203-692-4438
Email: justinpugh530@gmail.com
*ATTORNEY TO BE NOTICED*

**Pending Counts**

UNLAWFUL TRANSPORT OF
FIREARMS, ETC.; Unlawful Possession of
Ammunition by a Felon
(1)

**Disposition**

The defendant is sentenced to 70 months
imprisonment, 3 years supervised release
with standard, mandatory, and special
conditions imposed; $100 special
assessment; forfeiture of four rounds of
Cascade Cartridges Inc., 9 mm ammunition;
one 9mm pistol with no serial number and
$111 in U.S. Currency.

**Highest Offense Level (Opening)**

Felony

A-2

**Terminated Counts**

CONTROLLED SUBSTANCE - SELL,
DISTRIBUTE, OR DISPENSE; Possession
with Intent to Distribute Controlled
Substances
(2)

**Disposition**

Dismissed on government motion.

**Highest Offense Level (Terminated)**

Felony

**Complaints**

18:922G.F (Felon in Possession of
Ammunition), 21:841A=CD.F (Possession
with Intent to Distribute Controlled
Substances)

**Disposition**

---

**Plaintiff**

**USA**

represented by **Jocelyn J. Courtney Kaoutzanis**
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
203-821-3756
Email: jocelyn.kaoutzanis@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leonard C. Boyle**
U.S. Attorney's Office-NH
157 Church St., 25th Floor
New Haven, CT 06510
203-821-3700
Email: leonard.boyle@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maria del Pilar Gonzalez**
172 Golden Hill Street
Bridgeport, CT 06604
203-579-6560
Email: mp.gonzalez@me.com
*TERMINATED: 05/02/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|

A-3

| | | |
|---|---|---|
| 10/26/2021 | 1 | COMPLAINT Signed by Judge Robert M. Spector as to Shavarius Smith (1). (Attachments: # 1 Affidavit) (Caffrey, A.) [3:21-mj-01072-RMS] (Entered: 10/27/2021) |
| 10/26/2021 | 3 | ELECTRONIC FILING ORDER FOR COUNSEL as to Shavarius Smith - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Robert M. Spector on 10/26/2021. (Caffrey, A.) [3:21-mj-01072-RMS] (Entered: 10/27/2021) |
| 11/02/2021 | 4 | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Shavarius Smith. (Freberg, B) [3:21-mj-01072-RMS] (Entered: 11/03/2021) |
| 11/03/2021 | 5 | ORDER granting 4 Motion for Writ of Habeas Corpus ad prosequendum as to Shavarius Smith (1). Signed by Judge Robert M. Spector on 11/3/2021. (Freberg, B) [3:21-mj-01072-RMS] (Entered: 11/03/2021) |
| 11/03/2021 | 6 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Initial Appearance via ZOOM set for 11/5/2021 at 03:30 PM before Judge Robert M. Spector. **Please see Notice Regarding Hearing via Zoom for attendance details**. (Freberg, B) [3:21-mj-01072-RMS] (Entered: 11/03/2021) |
| 11/03/2021 | | NOTICE regarding hearing via Zoom as to Shavarius Smith: The Initial Appearance scheduled for 11/5/2021 at 3:30PM will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1607544531?pwd=b2pscVJobjBxUmFtTXJYWlFkNnFCQT09 and call in number is +1 646-828-7666.<br><br>Meeting ID: 160 754 4531<br><br>Meeting Password: 406919<br><br>Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Freberg, B) [3:21-mj-01072-RMS] (Entered: 11/03/2021) |
| 11/04/2021 | 7 | MOTION for Pretrial Detention by USA as to Shavarius Smith. (Gonzalez, Maria del Pilar) [3:21-mj-01072-RMS] (Entered: 11/04/2021) |
| 11/05/2021 | 8 | ORDER granting 7 Motion for Pretrial Detention as to Shavarius Smith (1). Signed by Judge Robert M. Spector on 11/05/2021. (Spector, Robert) [3:21-mj-01072-RMS] (Entered: 11/05/2021) |
| 11/05/2021 | 9 | Minute Entry for proceedings held before Judge Robert M. Spector:Initial Appearance as to Shavarius Smith held on 11/5/2021. Motion Hearing as to Shavarius Smith held on 11/5/2021 re 7 MOTION for Pretrial Detention filed by USA., Detention Hearing as to Shavarius Smith held on 11/5/2021. order of Detention to follow. CJA affidavit due 11/19/2021. Added Attorney Francis L. O'Reilly for Shavarius Smith. ( Probable Cause Hearing set for 11/19/2021 09:30 AM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Robert M. Spector). Total time 15 minutes. (Court Reporter FTR.) (Murphy, Tatihana) [3:21-mj-01072-RMS] (Entered: 11/08/2021) |

**A-4**

| 11/05/2021 | 10 | ORDER as to Shavarius Smith pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No.116-182, 134 Stat. 894 (Oct. 21, 2020). Signed by Judge Robert M. Spector on 11/5/2021. (Murphy, Tatihana) [3:21-mj-01072-RMS] (Entered: 11/08/2021) |
|---|---|---|
| 11/17/2021 | 11 | INDICTMENT returned before Judge S. Dave Vatti with the signature of the foreperson redacted. Grand jury number B-21-1 as to Shavarius Smith (1) count(s) 1, 2. (Nuzzi, Tiffany) (Entered: 11/18/2021) |
| 11/17/2021 | 12 | Unredacted document with FOREPERSON'S SIGNATURE regarding Indictment 11 as to defendant(s)Shavarius Smith. Access to the pdf document is restricted pursuant to Federal Rule of Criminal Procedure 49.1(e). (Nuzzi, Tiffany) (Entered: 11/18/2021) |
| 11/17/2021 | 13 | ELECTRONIC FILING ORDER FOR COUNSEL as to Shavarius Smith - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Janet Bond Arterton on 11/17/2021. (Nuzzi, Tiffany) (Entered: 11/18/2021) |
| 11/22/2021 | 14 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Arraignment via Zoom set for 12/2/2021 at 11:00 AM before Judge Robert M. Spector. Please see Notice Regarding Hearing via Zoom for attendance details. (Murphy, Tatihana) (Entered: 11/22/2021) |
| 11/22/2021 |  | NOTICE regarding hearing via Zoom as to Shavarius Smith: The Arraignment scheduled for 12/2/2021 at 11:00AM will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1613994079?pwd=RnNyY0RqSFM1T3FoM1hISEpMN1hRUT09 and call in number is 1 (646) 828-7666.<br><br>Meeting ID: 161 399 4079<br><br>Meeting Password: 958293<br><br>Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. Any member of the public can attend this hearing by using the Zoom link or the Zoom Meeting ID and Password listed in this calendar entry. (Murphy, Tatihana) (Entered: 11/22/2021) |
| 11/24/2021 | 15 | USM Return of Service on Arrest Warrant executed as to Shavarius Smith on 11/5/2021 (Gonzalez, Maria del Pilar) (Entered: 11/24/2021) |
| 12/01/2021 | 16 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 11:00* Arraignment via Zoomset for 12/2/2021 at 12:30 PM before Judge Robert M. Spector. Please see Notice Regarding Hearing via Zoom for attendance details. (Murphy, Tatihana) (Entered: 12/01/2021) |

**A-5**

| | | |
|---|---|---|
| 12/01/2021 | | NOTICE regarding hearing via Zoom as to Shavarius Smith: The Arraignment scheduled for 12/2/2021 at 12:30PM will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1613994079? pwd=RnNyY0RqSFM1T3FoM1hISEpMN1hRUT09 and call in number is 1 (646) 828-7666.<br><br>Meeting ID: 161 399 4079<br><br>Meeting Password: 958293<br><br>Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. Any member of the public can attend this hearing by using the Zoom link or the Zoom Meeting ID and Password listed in this calendar entry. (Murphy, Tatihana) (Entered: 12/01/2021) |
| 12/02/2021 | 17 | Minute Entry for proceedings held before Judge Robert M. Spector:Arraignment as to Shavarius Smith (1) on Counts 1 and 2 held on 12/2/2021. Plea entered by Shavarius Smith, Not Guilty on counts One and Two. ( Jury Selection set for 2/1/2022 at 09:00 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton). Total time 7 minutes. (Court Reporter FTR.)(Murphy, Tatihana) (Entered: 12/02/2021) |
| 12/13/2021 | 18 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br><br>Telephonic Status Conference set for 12/16/2021 at 1:30 PM before Judge Janet Bond Arterton. Call: 877-402-9753, Access code: 3535720. (Reis, Julia) (Entered: 12/13/2021) |
| 12/16/2021 | 19 | Minute Entry for proceedings held before Judge Janet Bond Arterton:<br>Telephonic Status Conference as to Shavarius Smith held on 12/16/2021.<br>Defendant's substantive motions due 1/21/2022. Government's responses due 2/4/2022.<br>Voir Dire and Requests to Charge due 3/14/2022.<br>A Telephonic Pretrial Conference is set for 3/16/2022 at 3:30 PM before Judge Janet Bond Arterton. Please call 877-402-9753, access code: 3535720.<br>Jury Selection is rescheduled for 4/5/2022 at 9:00 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton.<br>Jury Trial set for 4/6/2022 at 9:30 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton.<br>Total time: 16 minutes (Court Reporter Corinne Thomas)(Reis, Julia) (Entered: 12/16/2021) |
| 01/19/2022 | 20 | MOTION to Approve Associate Counsel by Shavarius Smith. (O'Reilly, Francis) (Entered: 01/19/2022) |
| 01/27/2022 | 21 | ORDER granting 20 Motion to Approve Associate Counsel as to Shavarius Smith. Attorney Justin C. Pugh of Justin C. Pugh & Associates is approved as associate counsel and shall be paid at the CJA rate for associate attorneys. Attorney Pugh is directed to file his notice of appearance on the docket. Signed by Judge Janet Bond Arterton on 1/27/2022. (Reis, Julia) (Entered: 01/27/2022) |
| 01/28/2022 | 22 | ATTORNEY APPEARANCE: Justin C. Pugh appearing for Shavarius Smith (Pugh, Justin) (Entered: 01/28/2022) |

A-6

| 02/03/2022 | 23 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. |
| | | |
| | | *TIME CHANGE ONLY.* The Telephonic Pretrial Conference previously scheduled for 3/16/2022 at 3:30 PM is rescheduled for 4:00 PM before Judge Janet Bond Arterton. Please call 877-402-9753, access code: 3535720. (Reis, Julia) (Entered: 02/03/2022) |
| 03/01/2022 | 24 | First MOTION to Continue *Jury Selection* by Shavarius Smith. (O'Reilly, Francis) (Entered: 03/01/2022) |
| 03/02/2022 | 25 | ORDER granting 24 First Motion to Continue Jury Selection as to Shavarius Smith. Jury selection is rescheduled for 8/2/2022. Jury Trial shall begin on 8/3/2022. Defendant's Substantive Motions shall be filed by 4/21/2022. Government's Response shall be filed by 5/4/2022. Proposed Voir Dire and Requests to Charge shall be filed by 7/8/2022. The previously scheduled Telephonic Pretrial Conference remains scheduled for 3/16/2022 at 3:30 PM. Please call 1-877-402-9753; access code: 3535720. |
| | | The Court finds that the time from February 10, 2022 to the date of jury selection, August 2, 2022, is excluded for Speedy Trial Act purposes pursuant to 18 U.S.C. § 3161(h)(7)(A). The Court concludes that the ends of justice are served by such postponement and outweigh the interest of the public and the defendant in an earlier trial date, and the Court has considered each of the factors set forth in 18 U.S.C. § 3161(h)(7)(B), including the reasons set forth in the Defendants motion for a continuance (Doc. #24). Accordingly, the period of delay from February 10, 2022 until August 2, 2022 is hereby excluded pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv). See Zedner v. United States, 126 S. Ct. 1976 (2006). Signed by Judge Janet Bond Arterton on 3/2/2022. (Reis, Julia) (Entered: 03/02/2022) |
| 03/02/2022 | 26 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Jury Selection is rescheduled for 8/2/2022 at 9:00 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. Jury Trial is rescheduled for 8/3/2022 at 9:30 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. (Reis, Julia) (Entered: 03/02/2022) |
| 03/16/2022 | 27 | Minute Entry for proceedings held before Judge Janet Bond Arterton: Telephonic Status Conference as to Shavarius Smith held on 3/16/2022. Total Time: 8 minutes (Court Reporter Corinne Thomas)(Reis, Julia) (Entered: 03/16/2022) |
| 03/28/2022 | 28 | ATTORNEY APPEARANCE Jocelyn J. Courtney Kaoutzanis appearing for USA (Courtney Kaoutzanis, Jocelyn) (Entered: 03/28/2022) |
| 04/29/2022 | 29 | MOTION for Maria del Pilar Gonzalez to Withdraw as Attorney by USA as to Shavarius Smith. (Gonzalez, Maria del Pilar) (Entered: 04/29/2022) |
| 05/02/2022 | 30 | ORDER granting 29 Motion to Withdraw as Attorney. Maria del Pilar Gonzalez withdrawn from case as to Shavarius Smith. Signed by Judge Janet Bond Arterton on 5/2/2022. (Reis, Julia) (Entered: 05/02/2022) |
| 06/10/2022 | 31 | ORDER REFERRING CASE to Magistrate Judge Robert M. Spector for the purpose of conducting a change of plea hearing as to Shavarius Smith. Signed by Judge Janet Bond Arterton on 6/10/2022. (Reis, Julia) (Entered: 06/10/2022) |
| 06/17/2022 | 32 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Change of Plea Hearing via Zoom set for 6/24/2022 10:00 AM before Judge Robert M. Spector. Please see Notice |

**A-7**

| | | |
|---|---|---|
| | | Regarding Hearing via Zoom for attendance details. (Langello, Nicholas) (Entered: 06/17/2022) |
| 06/17/2022 | | NOTICE regarding hearing via Zoom as to Shavarius Smith: The Change of Plea scheduled for 6/24/2022 at 10:00 AM will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1618609076?pwd=WVpHdXRYdUQzUmdMOXVNRW9wWW4xZz09 and call in number is 16468287666.<br><br>Meeting ID: 161 860 9076<br><br>Meeting Password: 207904<br><br>Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. Any member of the public can attend this hearing by using the Zoom link or the Zoom Meeting ID and Password listed in this calendar entry. (Langello, Nicholas) (Entered: 06/17/2022) |
| 06/24/2022 | 33 | Consent Form as to Shavarius Smith to enter guilty plea before Hon. Robert M. Spector (Langello, Nicholas) (Entered: 06/24/2022) |
| 06/24/2022 | 34 | Minute Entry for proceedings held before Judge Robert M. Spector: Change of Plea Hearing as to Shavarius Smith held on 6/24/2022, Plea entered by Shavarius Smith (1) Guilty Count 1. by Shavarius Smith, ( Sentencing set for 10/3/2022 12:00 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton) 51 minutes (Court Reporter CourtSmart.)(Langello, Nicholas) (Entered: 06/24/2022) |
| 06/24/2022 | 35 | PLEA AGREEMENT as to Shavarius Smith (Langello, Nicholas) (Entered: 06/24/2022) |
| 06/24/2022 | 36 | Petition to Enter Plea of Guilty as to Shavarius Smith ( Signed by Judge Robert M. Spector) (Langello, Nicholas) (Entered: 06/24/2022) |
| 06/24/2022 | 37 | ORDER OF REFERRAL TO PROBATION FOR PRESENTENCE INVESTIGATION AND REPORT as to Shavarius Smith. First Disclosure-PSI due 8/22/2022 Objections Due 9/5/2022 2nd-Disclosure PSI due 9/15/2022 Sentencing Memorandum due 9/19/2022 Response due 9/26/2022 Sentencing set for 10/3/2022 12:00 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton<br>Signed by Judge Robert M. Spector on 6/24/2022. (Langello, Nicholas) (Entered: 06/24/2022) |
| 06/24/2022 | 39 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br><br>Sentencing set for 10/3/2022 at 12:00 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton.<br>Terminate Hearings as to Shavarius Smith: Jury selection and trial set to begin on 8/2/2022 at 9:00 AM is CANCELLED. (Reis, Julia) (Entered: 06/27/2022) |
| 06/26/2022 | 38 | FINDINGS AND RECOMMENDATION on a plea of guilty by Shavarius Smith re 34 Change of Plea Hearing, Plea Entered.<br>Signed by Judge Robert M. Spector on 06/26/2022. (Spector, Robert) (Entered: 06/26/2022) |

**A-8**

| 07/17/2022 | 40 | ENTERED IN ERROR: SEALED MOTION CJA 23 - by Shavarius Smith. (O'Reilly, Francis) Modified on 7/18/2022 to reflect error (Reis, Julia). (Entered: 07/17/2022) |
| 07/17/2022 | 41 | Document 40 Corrected: SEALED CJA 23 Financial Affidavit by Shavarius Smith (Reis, Julia) (Entered: 07/18/2022) |
| 08/04/2022 | 42 | AMENDED SENTENCING SCHEDULING ORDER as to Shavarius Smith. First Disclosure PSI due 9/7/2022. Objections to the First Disclosure-PSI due 9/21/2022. 2nd Disclosure PSI due 10/1/2022. Defendant's Sentencing Memorandum due 10/5/2022. Government's Sentencing Memorandum due 10/12/2022. Replies due 10/15/2022. Sentencing is rescheduled for 10/19/2022 at 12:30 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. Signed by Judge Janet Bond Arterton on 8/4/2022. (Sichanh, Christina) (Entered: 08/04/2022) |
| 08/04/2022 | 43 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. *RESET FROM 10/03/22 at 12:00PM.* Sentencing is rescheduled to 10/19/2022 at 12:30 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. (Sichanh, Christina) (Entered: 08/04/2022) |
| 09/07/2022 | 44 | PRESENTENCE INVESTIGATION REPORT (Draft Report) *(SEALED - government and defense counsel)* as to Shavarius Smith. Objections to PSI due 9/21/2022. (available to USA, Shavarius Smith) (Attachments: # 1 Financial Statement)(Sitek, J.) (Entered: 09/07/2022) |
| 09/20/2022 | 45 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 10/19/2022 at 12:30PM* Sentencing set is rescheduled for 10/19/2022 at 03:30 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. (Sichanh, Christina) (Entered: 09/20/2022) |
| 09/30/2022 | 46 | PRESENTENCE INVESTIGATION REPORT (Final Report) *(SEALED - government and defense counsel)* as to Shavarius Smith. (available to USA, Shavarius Smith) (Attachments: # 1 Addendum, # 2 Government Objections, # 3 Financial Statement)(Sitek, J.) (Entered: 09/30/2022) |
| 09/30/2022 | 47 | Sealed Sentencing Recommendation: as to Shavarius Smith (Sitek, J.) (Entered: 09/30/2022) |
| 10/12/2022 | 48 | MOTION to Continue *Sentencing* by Shavarius Smith. (O'Reilly, Francis) (Entered: 10/12/2022) |
| 10/17/2022 | 49 | ORDER granting 48 Motion to Continue Sentencing as to Shavarius Smith, absent objection, to 11/28/22 at 11:00 a.m. Signed by Judge Janet Bond Arterton on 10/17/22. (Tooker, Aimee) (Entered: 10/17/2022) |
| 10/17/2022 | 50 | Sentencing rescheduled to 11/28/2022 at 11:00 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton (Tooker, Aimee) (Entered: 10/17/2022) |
| 10/17/2022 | 51 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 10/19/22* - Sentencing reset for 11/28/2022 at 11:00 a.m. in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. (Barry, Donna) (Entered: 10/18/2022) |

A-9

| | | |
|---|---|---|
| 11/16/2022 | 52 | MOTION for Forfeiture of Property by USA as to Shavarius Smith. (Attachments: # 1 Text of Proposed Order)(Courtney Kaoutzanis, Jocelyn) (Entered: 11/16/2022) |
| 11/18/2022 | 53 | SENTENCING MEMORANDUM by Shavarius Smith (O'Reilly, Francis) (Entered: 11/18/2022) |
| 11/18/2022 | 54 | SENTENCING MEMORANDUM by USA as to Shavarius Smith (Courtney Kaoutzanis, Jocelyn) (Entered: 11/18/2022) |
| 11/18/2022 | 55 | ORDER granting 52 Motion for Forfeiture of Property as to Shavarius Smith (1). Signed by Judge Janet Bond Arterton on 11/18/2022. (Lewis, D) (Entered: 11/18/2022) |
| 11/18/2022 | 56 | ORDER DIRECTING FORFEITURE OF PROPERTY as to Shavarius Smith. Signed by Judge Janet Bond Arterton on 11/17/2022. (Lewis, D) (Entered: 11/18/2022) |
| 11/21/2022 | 57 | ORDER ACCEPTING DEFENDANT'S GUILTY PLEA re 38 Findings and Recommendations Signed by Judge Janet Bond Arterton on 11/18/2022. (Lewis, D) (Entered: 11/21/2022) |
| 11/23/2022 | 58 | SECOND ADDENDUM TO PRESENTENCE INVESTIGATION REPORT (Supplement) *(SEALED - government and defense counsel)* as to Shavarius Smith. (available to USA, Shavarius Smith) (Sitek, J.) (Entered: 11/23/2022) |
| 11/28/2022 | 59 | ORAL MOTION for Acceptance of Responsibility by USA as to Shavarius Smith. (Lewis, D) (Entered: 11/28/2022) |
| 11/28/2022 | 60 | Minute Entry for proceedings held before Judge Janet Bond Arterton: Motion Hearing/Sentencing as to Shavarius Smith held on 11/28/2022; granting 59 Oral Motion for Acceptance of Responsibility as to Shavarius Smith (1); Supplemental Briefing due 12/27/2022; any replies due by noon on 1/3/2023; Sentencing continued to 1/4/2023 at 12:30 p.m. 30 minutes(Court Reporter Corinne Thomas.) (Lewis, D) (Entered: 11/29/2022) |
| 11/28/2022 | 61 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Sentencing continued to 1/4/2023 12:30 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. Supplemental Briefing due 12/27/2022; any replies due by noon on 1/3/2023. (Lewis, D) (Entered: 11/29/2022) |
| 12/20/2022 | 62 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 1/4/2023* Sentencing has been changed to 1/5/2023 12:30 PM in Courtroom One, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. (Lewis, D) (Entered: 12/20/2022) |
| 12/21/2022 | 63 | Supplemental MOTION *re: Applicable Guideline Range, State of Connecticut Predicate Offense* by Shavarius Smith. (O'Reilly, Francis) (Entered: 12/21/2022) |
| 12/21/2022 | 64 | NOTICE OF E-FILED CALENDAR as to Shavarius Smith: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 1/5/2023* Continued Sentencing set for 1/25/2023 11:00 AM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton. (Lewis, D) (Entered: 12/21/2022) |
| 12/22/2022 | 65 | SENTENCING MEMORANDUM by USA as to Shavarius Smith (Courtney Kaoutzanis, Jocelyn) (Entered: 12/22/2022) |
| 01/10/2023 | 66 | ORDER as to Shavarius Smith: the Government is requested to file a certified copy of Defendant Shavarius Smith's state court conviction under Conn. Gen. Stat. § 21a-278(b)(1) |

**A-10**

| | | |
|---|---|---|
| | | (A) by January 17, 2023, to assist the Court in evaluating the parties' supplemental sentencing briefing. Signed by Judge Janet Bond Arterton on 1/10/2023. (Anderson, Colleen) (Entered: 01/10/2023) |
| 01/11/2023 | 67 | NOTICE *of Certified Conviction* by USA as to Shavarius Smith re 66 Order, (Courtney Kaoutzanis, Jocelyn) (Entered: 01/11/2023) |
| 01/25/2023 | 68 | ORAL MOTION to Dismiss count 2 by USA as to Shavarius Smith. (Lewis, D) (Entered: 01/25/2023) |
| 01/25/2023 | 69 | Minute Entry for proceedings held before Judge Janet Bond Arterton: Sentencing/Motion Hearing as to Shavarius Smith held on 1/25/2023; granting 68 Oral Motion to Dismiss as to Shavarius Smith (1). 1 hour and 3 minutes(Court Reporter Corinne Thomas.) (Lewis, D) Modified on 1/26/2023 (Lewis, D). (Entered: 01/25/2023) |
| 01/27/2023 | 70 | PRESENTENCE INVESTIGATION REPORT (Revised) *(SEALED - government and defense counsel)* as to Shavarius Smith. (available to USA, Shavarius Smith) (Sitek, J.) (Entered: 01/27/2023) |
| 01/30/2023 | 71 | NOTICE OF APPEAL re Final Judgment by Shavarius Smith. Text modified to remove filing fee. (Sichanh, Christina) (Entered: 01/31/2023) |
| 01/30/2023 | | Transmission of Notice of Appeal as to Shavarius Smith to US Court of Appeals re 71 Notice of Appeal - Final Judgment (Sichanh, Christina) (Entered: 02/03/2023) |
| 01/31/2023 | 72 | MEMORANDUM OPINION memorializing the bench ruling issued at the January 25, 2023 sentencing as to Shavarius Smith. Signed by Judge Janet Bond Arterton on 1/31/2023. (Anderson, Colleen) (Entered: 01/31/2023) |
| 02/01/2023 | 73 | JUDGMENT as to Shavarius Smith (1), Count(s) 1, The defendant is sentenced to 70 months imprisonment, 3 years supervised release with standard, mandatory, and special conditions imposed; $100 special assessment; forfeiture of four rounds of Cascade Cartridges Inc., 9 mm ammunition; one 9mm pistol with no serial number and $111 in U.S. Currency.; Count(s) 2, Dismissed on government motion. Signed by Judge Janet Bond Arterton on 2/1/2023. (Lewis, D) (Entered: 02/03/2023) |
| 02/01/2023 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link: <br><br> https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?crsurvey <br> (Lewis, D) (Entered: 02/03/2023) |
| 02/03/2023 | 74 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 71 Notice of Appeal - Final Judgment. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: none (Sichanh, Christina) (Entered: 02/03/2023) |
| 02/06/2023 | 75 | Statement of Reasons *(SEALED - government and defense counsel)* as to Shavarius Smith. (available to USA, Shavarius Smith) (Deniz, Angelica) (Entered: 02/06/2023) |

| 05/02/2023 | 76 | TRANSCRIPT of Proceedings: as to Shavarius Smith Type of Hearing: Initial Appearance & Detention Hearing. Held on November 5, 2021 before Judge Robert M. Spector. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 5/23/2023. Redacted Transcript Deadline set for 6/2/2023. Release of Transcript Restriction set for 7/31/2023. (Marshall, Martha) (Entered: 05/02/2023) |
| 05/02/2023 | 77 | TRANSCRIPT of Proceedings: as to Shavarius Smith Type of Hearing: Arraignment. Held on December 2, 2021 before Judge Robert M. Spector. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 5/23/2023. Redacted Transcript Deadline set for 6/2/2023. Release of Transcript Restriction set for 7/31/2023. (Marshall, Martha) (Entered: 05/02/2023) |
| 05/02/2023 | 78 | TRANSCRIPT of Proceedings: as to Shavarius Smith Type of Hearing: Change of Plea. Held on June 24, 2022 before Judge Robert M. Spector. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 5/23/2023. Redacted Transcript Deadline set for 6/2/2023. Release of Transcript Restriction set for 7/31/2023. (Marshall, Martha) (Entered: 05/02/2023) |
| 06/12/2023 | 79 | TRANSCRIPT of Proceedings: as to Shavarius Smith Type of Hearing: Motion Hearing/Sentencing. Held on 11/28/2022 before Judge Janet Bond Arterton. Court Reporter: Corinne Thomas. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained |

A-12

through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 7/3/2023. Redacted Transcript Deadline set for 7/13/2023. Release of Transcript Restriction set for 9/10/2023. (Thomas, Corinne) (Entered: 06/12/2023)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/07/2023 15:35:42 | | | |
| **PACER Login:** | pslaisure3 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cr-00202-JBA |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |

A-13

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury B-21-1

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:21CR202 (JBA)(RMS) |
| v. | VIOLATION: |
| SHAVARIUS SMITH | 18 U.S.C. §§ 922(g)(1) and 924(a)(2)<br>(Unlawful Possession of Ammunition by a Felon) |
| | 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)<br>(Possession with Intent to Distribute Controlled Substances) |

INDICTMENT

NOV 17 2021 PM 3:58
FILED - USDC - BPT - CT

The Grand Jury charges:

COUNT ONE
(Unlawful Possession of Ammunition by a Felon)

1.      On or about October 8, 2021, in the District of Connecticut, the defendant SHAVARIUS SMITH, having been, and knowing that he had been, convicted of a crime punishable by imprisonment for a term exceeding one year, that is (a) Second-Degree Larceny, in violation of Conn. Gen. Stat. § 53a-123; and (b) Possession with Intent to Sell Narcotics, in violation of Conn. Gen. Stat. § 21a-278(b)(1)(A), on or about November 14, 2018 in the Superior Court of the State of Connecticut, did knowingly possess ammunition in and affecting commerce, that is, four rounds of Cascade Cartridges Inc., 9-millimeter ammunition, all of which had been shipped and transported in interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

COUNT TWO
(Possession with Intent to Distribute Controlled Substances)

2.      On or about October 8, 2021, in the District of Connecticut, the defendant
SHAVARIUS SMITH did knowingly and intentionally possess with intent to distribute a mixture
and substance containing a detectable amount of heroin, a Schedule I controlled substance, and a
mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a
Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

FORFEITURE ALLEGATION
(Firearms Offense)

3.      Upon conviction of the offense alleged in Count One of the Indictment, the
defendant SHAVARIUS SMITH shall forfeit to the United States, pursuant to Title 18, United
States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), the firearm and
ammunition involved in the commission of the offense, including but not limited to the following
which were all seized on or about October 8, 2021: the 9-millimeter pistol with no serial number,
a high-capacity magazine, and all ammunition seized with that firearm and magazine.

All in accordance with Title 18, United States Code, Section 924(d); Title 21, United States
Code, Section 853; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal
Rules of Criminal Procedure.

FORFEITURE ALLEGATION
(Controlled Substances Offense)

4.      Upon conviction of the controlled substance offense alleged in Count Two of the
Indictment, the defendant SHAVARIUS SMITH shall forfeit to the United States, pursuant to Title
21, United States Code, Section 853, all right, title, and interest in any property constituting, or
derived from, proceeds obtained, directly or indirectly, as a result of the violation of Title 21,

United States Code, Section 841, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violation, and a sum of money equal to the total amount of proceeds obtained as a result of the offense, including but not limited to $111 in U.S. currency seized on or about October 8, 2021.

5.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All in accordance with Title 21, United States Code, Section 853 and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

UNITED STATES OF AMERICA

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

MARIA DEL PILAR GONZALEZ
ASSISTANT UNITED STATES ATTORNEY

3

**A-16**

United States District Court
District of Connecticut
FILED AT NEW HAVEN

_____6/24_____,20 22
By___N. Langello_____
Deputy Clerk

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center  157    (203)821-3700*
*Church Street, 25ᵗʰ Floor   New    Fax (203) 773-5376*
*Haven,    Connecticut    06510    www.justice.gov/usao/ct*

**June 24, 2022**

Francis L. O'Reilly, Esq.
O'Reilly & Shaw, LLC
41 Unquowa Place
Fairfield, CT 06824

> Re:   United States v. Shavarius Smith
>        Case No. 3:21-cr-202(JBA)

Dear Attorney O'Reilly:

This letter confirms the plea agreement between your client, Shavarius Smith (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to count one of a two-count indictment charging a violation of 18 U.S.C. §922(g)(1).

The defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

1. The defendant knowingly possessed ammunition as charged in Count One;

2. At the time the defendant possessed the ammunition, the defendant had been, and knew that he had been, previously convicted of a crime punishable for by a term of imprisonment exceeding one year; and

3. The possession of the ammunition was in or affecting interstate or foreign commerce.

*Francis L. O'Reilly, Esq.*
*Page 2*

## THE PENALTIES

### Imprisonment

This offense carries a maximum term of imprisonment of ten years.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

This offense carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

### Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

### Forfeiture

Pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), the defendant agrees to forfeit to the United States his interest in the property described herein, which is the ammunition charged in Count One of the Indictment: four rounds of Cascade Cartridges Inc., 9-millimeter ammunition seized on or about October 8, 2021. The defendant also agrees to forfeit to the United States the 9-millimeter pistol with no serial number and $111 in U.S. currency seized on or about October 8, 2021 by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

*Francis L. O'Reilly, Esq.*
*Page 3*

The defendant agrees to waive all interests in the firearm and ammunition described above ("the forfeitable assets"), in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for each of the forfeitable assets and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets covered by this agreement. The defendant further agrees to waive all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds. The defendant also understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional

*Francis L. O'Reilly, Esq.*
*Page 4*

relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing
Guidelines, and (2) disclosing to the United States Attorney's Office and the United States
Probation Office a complete and truthful financial statement detailing the defendant's financial
condition. The defendant expressly authorizes the United States Attorney's Office to obtain a
credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment
for acceptance of responsibility if the defendant engages in any acts, unknown to the
Government at the time of the signing of this agreement, which (1) indicate that the defendant
has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the
Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding
the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation
of any condition of release. Moreover, the Government reserves the right to seek denial of the
adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or
takes a position at sentencing, or otherwise, which, in the Government's assessment, is
inconsistent with affirmative acceptance of personal responsibility. The defendant understands
that he may not withdraw his plea of guilty if, for the reasons explained above, the Government
does not make one or both of the recommendations or seeks denial of the adjustment for
acceptance of responsibility.

<u>Guideline Stipulation</u>

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the
applicable Guidelines range.

Under *Chery v. Garland*, 16 F.4th 980 (2d Cir. 2021), the defendant's base offense level
under U.S.S.G. § 2K2.1(a)(3) is 22 because the offense involved a semiautomatic firearm that is
capable of accepting a large capacity magazine and the defendant committed the instant offense
subsequent to sustaining one felony conviction of a controlled substance offense, that is, a
Connecticut conviction for possession with intent to sell narcotics.

If it is determined that the defendant's prior Connecticut drug conviction does not qualify
as a "controlled substance offense" under § 2K2.1(a)(3), the defendant's base offense level is 20
because the offense involved a semiautomatic firearm that is capable of accepting a large
capacity magazine.

The defendant's base offense level is increased by four under § 2K2.1(b)(6)(B) because
the defendant possessed the firearm in connection with another felony offense. Three levels are
subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above. Accordingly,
if the defendant's base offense level is 22, the total offense level is 23. If his base offense level is
20, his total offense level is 21.

Based on an initial assessment, the parties agree that the defendant falls within Criminal
History Category IV. The parties reserve the right to recalculate the defendant's Criminal

*Francis L. O'Reilly, Esq.*
*Page 5*

History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

If the defendant's total offense level is determined to be 23, assuming a Criminal History Category IV, then it would result in a range of 70 to 87 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

If the defendant's total offense level is determined to be 21, assuming a Criminal History Category IV, then it would result in a range of 57 to 71 months of imprisonment (sentencing table) and a fine range of $15,000 to $150,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Information to the Court</u>

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

<u>Waiver of Trial Rights and Consequences of Guilty Plea</u>

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

*Francis L. O'Reilly, Esq.*
*Page 6*

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

<u>Waiver of Statute of Limitations</u>

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

<u>Waiver of Right to Challenge Conviction</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Waiver of Right to Appeal or Collaterally Attack Sentence</u>

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 87 months of imprisonment, a three-year term of supervised release, a $100 special assessment, a $200,000 fine, and forfeiture of the Forfeitable Assets described above, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government

*Francis L. O'Reilly, Esq.*
*Page 7*

will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty

*Francis L. O'Reilly, Esq.*
*Page 8*

may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his unlawful possession of a firearm, which forms the basis of the indictment in this case. After sentencing, the Government will move to dismiss count two of the indictment because the conduct underlying the dismissed counts will have been taken into account in determining the appropriate sentence.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

JOCELYN COURTNEY KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY

**A-24**

*Francis L. O'Reilly, Esq.*
*Page 9*

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____            6/27/22
SHAVARIUS SMITH                              Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____            6/23/22
FRANCIS L. O'REILLY, ESQ.                    Date
Attorney for the Defendant

United States District Court
District of Connecticut
FILED AT NEW HAVEN

6/24 ,20 22

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

By      N. Langello
Deputy Clerk

UNITED STATES OF AMERICA        :

                                :      CRIM.NO.: **21CR202(JBA)**

        v.                      :

                                :

**Shavarius Smith**             :

### CONSENT FORM

The defendant, **Shavarius Smith**         , hereby consents to have a United States

Magistrate Judge hear the application and to administer the allocution pursuant to F.R. Crim.

P., Rule 11.

### CONSENTED TO:

DEFENDANT:                                              6·23·72
                                                       Date

ATTORNEY FOR DEFENDANT:                                6/23/22
                                                       Date

UNITED STATES ATTORNEY
BY A.U.S.A.:        JOCELYN COURTNEY   Digitally signed by JOCELYN COURTNEY
                    KAOUTZANIS         KAOUTZANIS
                                       Date: 2022.06.17 10:33:52 -04'00'
                                                       _____
                                                       Date

Rev. 5/3/2011

A-26

1

1  UNITED STATES DISTRICT COURT

2  DISTRICT OF CONNECTICUT

3

4  UNITED STATES OF AMERICA,    )
                Plaintiff,   )
                             )    NO: 3:21CR202(JBA)
5  vs.                        )
                             )    June 24, 2022
6  SHAVARIUS SMITH,           )
                Defendant.   )    Change of Plea Hearing

7  _____

8                          141 Church Street
9                        New Haven, Connecticut

10  B E F O R E:
            THE HONORABLE ROBERT M. SPECTOR, U.S.M.J.

11
    A P P E A R A N C E S:
12
    For the Plaintiff :        JOCELYN COURTNEY KAOUTZANIS, AUSA
13                             United States Attorney's Office
                             157 Church Street, 25th Floor
14                             New Haven, CT 06510

15  For the Defendant:         FRANCIS L. O'REILLY
                             Law Offices of Francis L. O'Reilly
16                             1735 Post Road, Suite 2C
                             Fairfield, CT 06824

17

18

19

20

21

22

23
    Transcriber:               Martha C. Marshall, RMR, CRR
24

25  Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.

A-27

2

```
1              THE COURT:  Good morning.

2              All right.  I think we're ready to begin.

3              Attorney O'Reilly, have you had enough time to meet

4     with your client?

5              MR. O'REILLY:  Yes, I have, Your Honor.

6              THE COURT:  All right.  Thank you.

7              MR. O'REILLY:  Your Honor, I would point out before

8     we begin that Mr. Smith does not have the Plea Agreement with

9     him this morning.  He left it in his cell.  He and I reviewed

10    it yesterday.  So it should be fresh in his mind, but he

11    doesn't have the physical copy with him.

12             THE COURT:  All right.  It looks like Mr. Smith

13    signed it perhaps yesterday.  Does that sound right?

14             MR. O'REILLY:  That's correct, Your Honor.

15             THE COURT:  All right.  Well, it's entirely up to

16    you both.  I certainly don't mind waiting if that is

17    something that would be helpful to him.  I certainly don't

18    mind.  I can also share my screen if there's parts that he

19    wants to see.  I have it in front of me.  Whatever you prefer

20    is certainly fine with me.

21             MR. O'REILLY:  I think we could proceed, Your Honor.

22    I don't think we need to, you know, as long as that's okay

23    with Mr. Smith.  But I think it's fine.

24             THE COURT:  All right.  Mr. Smith, that's okay with

25    you?
```

A-28

3

```
 1              THE DEFENDANT:  Yeah, we good.

 2              THE COURT:  All right.  If at any point you have any

 3     question about any of the documents and you would like to see

 4     them on the screen, I have the ability to share my screen and

 5     show them to you.  So that's not a problem.

 6              So why don't we start.  We're here in the case of

 7     United States of America versus Shavarius Smith.  The case

 8     number is 3:21CR202, a case assigned to Judge Arterton.

 9              Could I please have appearances of counsel.

10              MS. KAOUTZANIS:  Good morning, Your Honor.  Jocelyn

11     Courtney Kaoutzanis for the Government.

12              MR. O'REILLY:  Good morning, Your Honor.  Francis

13     O'Reilly on behalf of Shavarius Smith.

14              Present with me, Your Honor, is Lauren Gareese (ph).

15     She's an intern in my office this summer.  And if it's okay

16     with the Court, she'd like to sit in and observe the

17     proceeding.

18              THE COURT:  Absolutely.

19              MS. KAOUTZANIS:  And, Your Honor, I think Special

20     Agent Reddick (ph) from the ATF is also joining us by Zoom.

21              THE COURT:  Good morning.

22              All right.  Mr. Smith, can you see and hear everyone

23     okay?

24              THE DEFENDANT:  Yeah.  There's something on the

25     screen.  I don't know how to get it off.  It's just letting
```

A-29

4

1   me know it's being recorded, but it's right in front of your

2   face.

3          THE COURT:  There's a way to get it off.  What you

4   should do is if you could knock on the door and have somebody

5   come in.  You just have to click a button.

6          I think you just need to hit the got it button.

7          Thank you.

8          All right.  So, Mr. Smith, as you know, under

9   Federal Rule of Criminal Procedure 43, you have the right to

10  have this hearing in a courtroom and to be physically present

11  for it, along with myself, your attorney, and the attorney

12  for the Government.

13         Do you understand you have that right?

14         THE DEFENDANT:  Yes.  Yes, sir.

15         THE COURT:  All right.  Have you had a chance to

16  talk to your attorney about your right to have this hearing

17  in a courtroom?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And do you have any questions that your

20  attorney -- did your attorney answer any questions you may

21  have had about this?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  And having talked with your

24  attorney, have you decided would you like to go forward by

25  video today?

A-30

5

```
 1          THE DEFENDANT:  Yes, sir.
 2          THE COURT:  Is anybody threatening you or forcing
 3  you to get you to give up your right to go forward in a
 4  courtroom?
 5          THE DEFENDANT:  No, sir.
 6          THE COURT:  All right.  Attorney O'Reilly, have you
 7  met with your client and talked to him about his right to go
 8  forward in a courtroom?
 9          MR. O'REILLY:  Yes, Your Honor.
10          THE COURT:  And are you confident he fully
11  understands that right that he is waiving today?
12          MR. O'REILLY:  Yes, Your Honor.
13          THE COURT:  All right.  So I'll find that Mr. Smith
14  has knowingly and voluntarily waived his right to go forward
15  in a courtroom and has agreed, instead, to go forward by
16  video.
17          This is a guilty plea.  So I have to make an
18  additional finding that it is in the interests -- best
19  interests of the public and the defendant that we go forward
20  expeditiously by video today versus waiting to go forward in
21  person.  Usually I ask either side to just put on the record
22  some of the reasons why it is in the best interest of
23  Mr. Smith and the public to go forward today.
24          MR. O'REILLY:  Your Honor, I think I can address
25  that issue quickly.  This case has been pending for
```

A-31

6

1    approximately nine or ten months.  There's a jury selection

2    date set for the beginning of August.  The Government and I

3    have had some extensive plea negotiations.  We've finally

4    come to a resolution or at least an agreement, you know,

5    prior to the presumption of trial.  And so I think it's in

6    Mr. Smith's best interest, as well as the public's best

7    interest, that we go forward as expeditiously as possible

8    and, therefore, this method by Zoom is the most expeditious

9    way to do it.

10            THE COURT:  Thank you.

11            And turning to the Government.  Do you agree with

12   Attorney O'Reilly's assessment?

13            MS. KAOUTZANIS:  Yes, Your Honor.  And I would also

14   just add that not only is the trial date upcoming, but

15   there's a number of upcoming deadlines that, when weighed

16   together, do make sense to proceed as expeditiously as

17   possible in this matter.

18            THE COURT:  All right.  Well, thank you both.

19            So I will make the additional finding under the

20   CARES Act that for the reasons that Attorney O'Reilly and

21   Attorney Kaoutzanis just put on the record and, in

22   particular, in light of the nature of the prosecution and the

23   interests of the defendant and the public, that the

24   proceeding cannot be further delayed without serious harm to

25   the interest of justice.  And so we will go forward by video

A-32

7

1    this morning.

2         What brings us here today is that Mr. Smith has

3    indicated his desire to plead guilty to Count One of a two

4    count Indictment, which charges him with a violation of Title

5    18, U.S. Code, Section 922(g)(1).

6         Attorney O'Reilly, am I correct that that's the

7    reason we're here today?

8         MR. O'REILLY:  Yes, Your Honor.

9         THE COURT:  Mr. Smith, I want to review some

10   important rights with you.  I know that the Court has already

11   reviewed these rights, but they're important.  So I want to

12   go through them again with you.

13        You have the right to remain silent.  That means

14   you're not required to make any statements to anyone that

15   might incriminate you.

16        If you choose to make a statement, you have the

17   right to have your attorney with you at that time.

18        If you've already made a statement, you do not need

19   to continue.

20        If you start making a statement, you may stop

21   speaking at any time.

22        The reason these rights are so important is that if

23   you choose to make a statement, anything you say can and very

24   likely will be used to prosecute you in this case or used

25   against you in other ways.

A-33

8

```
1          Do you understand these rights?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  You also have the right to be

4    represented by counsel at every stage of these proceedings.

5    You have that right even if you cannot afford to hire an

6    attorney yourself.

7          Attorney O'Reilly, are you here as appointed counsel

8    or retained counsel?

9          MR. O'REILLY:  I'm appointed counsel, Your Honor.

10         THE COURT:  Thank you.

11         So, Mr. Smith, the Court has already found that you

12   qualify for the appointment of counsel and has appointed

13   Attorney O'Reilly to represent you in this case.

14         Are you satisfied to have him represent you?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  If at some point you're no longer

17   represented by him, which I do not anticipate, you simply

18   would need to let the court know and we would ensure that new

19   counsel is appointed for you.  It is very important that you

20   have counsel represent you at all the stages of the

21   proceedings in this case.

22         Do you understand?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  There's a number of questions that I

25   must ask you while you're under oath to assure me that any
```

9

1  decisions you make today are knowing and voluntary, and to
2  assure me that there's a factual basis for any plea that you
3  enter.
4        So I'm going to ask my Courtroom Deputy to please
5  place Mr. Smith under oath.
6        THE COURTROOM DEPUTY:  Yes, Your Honor.  One moment,
7  please.
8        THE COURT:  No problem.
9        I should ask my Courtroom Deputy.  I don't mind
10  placing the defendant under oath if that's easier.  Is that
11  okay?
12        THE COURTROOM DEPUTY:  Yes, Your Honor.  I'm sorry.
13  That would be helpful.  Thank you.
14        THE COURT:  Mr. Smith, can you raise your right
15  hand.
16        *S H A V A R I U S   S M I T H, the defendant,*
17  *having been duly sworn by the Court, was examined and*
18  *testified on his oath as follows:*
19        THE COURT:  I want to make sure you understand that
20  having been sworn, your answers to my questions will be
21  subject to the penalties for perjury or for making a false
22  statement if you do not answer truthfully.
23        Do you understand?
24        THE DEFENDANT:  Yes, sir.
25        THE COURT:  If you don't understand any of my

A-35

10

 1  questions, please say so and I will rephrase them.  If you
 2  need time to talk to your attorney, let me know and I will
 3  give you as much time as you need.
 4          I also want to emphasize to you that the choice
 5  between taking a case to trial and pleading guilty is your
 6  choice, not your attorney's.  While it's proper for your
 7  attorney to advise you about this important decision, the
 8  decision whether or not to plead guilty is yours and yours
 9  alone.
10          Do you understand?
11          THE DEFENDANT:  Yes, sir.
12          THE COURT:  I also want to emphasize that what you
13  say today in response to my questions is also your
14  responsibility and yours alone.  It's you, and not your
15  attorney, who is going to have to live with what you say
16  today.  So whatever he may have told you about what you
17  should say, only you will be held responsible for what you do
18  say.
19          Do you understand?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  I'm going to ask you a few questions so
22  I can make sure that we're understanding each other.
23          Can you tell me how old you are?
24          THE DEFENDANT:  22.
25          THE COURT:  Can you tell me how far you've gone in

A-36

11

1    school?

2            THE DEFENDANT:  11th grade.

3            THE COURT:  Are you currently under the care of a

4    doctor or a counselor of any kind?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  Do you regularly take any prescription

7    medication?

8            THE DEFENDANT:  No, sir.

9            THE COURT:  Attorney O'Reilly, I think you mentioned

10   you had a chance to meet with your client before we got

11   started today?

12           MR. O'REILLY:  Yes, sir.

13           THE COURT:  Do you have any reason to believe that

14   he's under the influence of any drugs, alcohol, or medication

15   that would affect his ability to understand me?

16           MR. O'REILLY:  No, Your Honor.

17           THE COURT:  Mr. Smith, is your mind clear today?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Do you understand what's happening here?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Now because this case involves a felony,

22   you have the right to have this hearing before a United

23   States District Judge.  The hearing has been scheduled before

24   me, a United States Magistrate Judge, for the convenience of

25   all the parties and because the District Judge is not

12

1   available to conduct the hearing at this time.

2          District Judges and Magistrate Judges are appointed

3   in different ways and have different powers.  You may consent

4   to have this hearing before me or you may refuse that

5   consent.

6          Would you like to consent to proceed before me today

7   as proposed by the parties?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  And does the Government also

10  consent?

11         MS. KAOUTZANIS:  Yes, Your Honor.  And the parties

12  have all executed the written Consent Form as well.

13         THE COURT:  So I have a written Consent Form.  And I

14  see a signature for you, Mr. Smith.  Did you sign this form

15  yesterday, June 23rd?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  When you signed it, did you understand

18  what you were signing?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  All right.  So I'll ask my Courtroom

21  Deputy to file the Consent Form.

22         Now, Attorney Kaoutzanis, before we proceed any

23  further, can you tell me whether there are any parties who

24  have rights in regard to this proceeding under 18, U.S. Code,

25  Section 3771?

A-38

13

```
 1            MS. KAOUTZANIS:  Your Honor, this case involves
 2    possession of ammunition and a charge relating to narcotics.
 3    So there are no such parties.
 4            THE COURT:  Thank you.
 5            Attorney O'Reilly, have you had any difficulty
 6    communicating with Mr. Smith?
 7            MR. O'REILLY:  No, Your Honor.
 8            THE COURT:  Have you discussed this case with him?
 9            MR. O'REILLY:  Yes, Your Honor.
10            THE COURT:  Does he understand the rights he'll be
11    waiving by pleading guilty?
12            MR. O'REILLY:  Yes, he does, Your Honor.
13            THE COURT:  Do you have any doubts as to his
14    competence to plead at this time?
15            MR. O'REILLY:  No, Your Honor.
16            THE COURT:  Mr. Smith, have you had enough time to
17    discuss this case with your attorney?
18            THE DEFENDANT:  Yes, sir.
19            THE COURT:  Has he answered any questions you've
20    asked him?
21            THE DEFENDANT:  Yes, sir.
22            THE COURT:  Are you satisfied to have him represent
23    you?
24            THE DEFENDANT:  Yes, sir.
25            THE COURT:  Have you received a copy of the
```

A-39

14

1    Indictment?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Have you consulted with Attorney

4    O'Reilly about the charges?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Do you understand the charges?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  The first and most important thing that

9    you must understand is that you do not have to plead guilty

10   even if you are guilty.  Under American law, the Government

11   has the burden of proving the guilt of a defendant beyond a

12   reasonable doubt.  And if the Government's unable to meet

13   that burden of proof, the jury has the duty to find the

14   defendant not guilty.

15          Do you understand?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  It sometimes happens in an American

18   courtroom that a jury has returned a verdict of not guilty,

19   even though most people watching the trial or even those

20   people involved in the trial believe the defendant committed

21   the crime.  In such cases what the jury is saying is not

22   necessarily that the defendant was innocent but, rather, that

23   the prosecutor had failed to meet the burden of proving the

24   guilt of the defendant beyond a reasonable doubt.

25          Do you understand?

A-40

15

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  That's why I say even if you're guilty,

3    you have a choice.  You may require the Government to prove

4    each element of its case beyond a reasonable doubt.  You have

5    an absolute right to plead not guilty.  If you plead not

6    guilty, under the Constitution and the laws of the United

7    States you have a number of important rights:

8          You have a right to a speedy public jury trial.

9          You have the right to participate in the jury

10   selection process, through counsel, and to object to

11   potential jurors.

12         You have the right to be represented by counsel.

13   And, if necessary, have the Court appoint counsel at trial

14   and at every other stage of these proceedings.

15         Do you understand these rights?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  During the course of the trial, the

18   witnesses for the Government would have to come to court and

19   testify in your presence.  That is called your right of

20   confrontation.  Your counsel would have the right to

21   cross-examine the witnesses for the Government and to object

22   to any evidence offered by the Government.  You would have

23   the right to offer evidence on your own behalf and to compel

24   the attendance of witnesses with relevant information using

25   the subpoena power of the court.

A-41

16

```
 1              Do you understand?
 2              THE DEFENDANT:  Yes, sir.
 3              THE COURT:  At a trial, while you would have the
 4     right to testify, if you chose to do so, you could not be
 5     required to testify.  Under the Constitution of the United
 6     States, a defendant in a criminal case cannot be forced to
 7     take the witness stand at his trial and say anything that
 8     could be used to show that he is guilty of the crime with
 9     which he is charged.
10              THE DEFENDANT:  Yes, sir.
11              THE COURT:  If you decided not to testify at your
12     trial, the Court would instruct the jury that they could not
13     hold that against you.
14              Do you understand?
15              THE DEFENDANT:  Yes, sir.
16              THE COURT:  At the trial, you'd be presumed innocent
17     and the Government would have to overcome that presumption
18     and prove you guilty by competent evidence and beyond a
19     reasonable doubt.  You would not have to prove that you were
20     innocent.  If the Government were to fail to meet its burden
21     of proving each element of the offense, the jury would have
22     the duty to find you not guilty.
23              Do you understand your trial rights?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  If you decide to plead guilty today, I
```

A-42

17

```
1   will need to ask you questions about what you did that makes

2   you guilty.  I need to satisfy myself that you are, in fact,

3   guilty of the charge to which you seek to plead guilty.  So

4   you will need to answer my questions and acknowledge your

5   guilt.  That means that you will be waiving, in part, your

6   right to remain silent and not to say anything that might

7   incriminate you in order to tell me what you did.

8           Do you understand?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  If you plead guilty and I accept your

11  plea, there will be no trial.  You will be giving up the

12  trial rights I have described.

13          Do you understand?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  You will have no right to appeal the

16  conviction, though you may still be able to appeal the

17  sentence that is eventually imposed by the Court.  By

18  pleading guilty, you give up the right to a jury trial on

19  this charge.  The Court will simply enter a finding of guilty

20  on the basis of your guilty plea.

21          Do you understand?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  If you're found guilty, you may lose

24  some other important rights such as the right to vote, the

25  right to hold public office, the right to serve on a jury.
```

18

1        Because you're proposing to plead guilty to a

2  felony, you will lose the right to possess any kind of

3  firearm or ammunition.

4        You may also lose certain federal benefits.

5        A DNA sample will be collected from you for analysis

6  and indexing.

7        The Government also reserves the right to notify any

8  state or federal agency by whom you're licensed or with whom

9  you do business, as well as any current or future employer,

10  the fact of this conviction.

11        And finally, your conviction -- your guilty plea

12  today could work to your disadvantage if in the future you

13  are found guilty of another crime, because there's a

14  possibility you could receive a more severe sentence at that

15  time as a result of this guilty plea and conviction.

16        We call all of these the collateral consequences of

17  a conviction.

18        Do you understand?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  Attorney O'Reilly, is your client a

21  United States citizen?

22        MR. O'REILLY:  Yes, he is, Your Honor.

23        THE COURT:  Mr. Smith, your counsel's represented

24  that you are, in fact, a United States citizen.  I am

25  required to advise you, nonetheless, of the immigration

A-44

19

```
1   consequences of this conviction if you were not a United
2   States citizen.
3           If you were not a United States, your conviction in
4   this matter would likely result in your being ordered removed
5   from the United States and prohibited from reentering.  This
6   is not an Immigration Court and this Court would not make the
7   decision as to whether you would actually be removed, but
8   most felony convictions result in removal.  So you should
9   assume that you if are not a United States citizen, once your
10  criminal case was closed, you would be removed from the
11  United States and barred from returning.
12          Do you understand?
13          THE DEFENDANT:  Yes, sir.
14          THE COURT:  Are you willing to give up your right to
15  a trial on this charge?
16          THE DEFENDANT:  Yes, sir.
17          THE COURT:  Do you understand the potential
18  consequences of your guilty plea in this case?
19          THE DEFENDANT:  Yes, sir.
20          THE COURT:  If you plead guilty, whose choice would
21  that be?
22          THE DEFENDANT:  Mine's.
23          THE COURT:  And are you choosing to plead guilty
24  freely and voluntarily?
25          THE DEFENDANT:  Yes, sir.
```

A-45

20

1     THE COURT:  Attorney O'Reilly, I understand that

2 there's a written Plea Agreement.  We talked about it a

3 little bit earlier.  Have you reviewed that Plea Agreement

4 with Mr. Smith?

5     MR. O'REILLY:  Yes, I have, Your Honor.

6     THE COURT:  And, Mr. Smith, the Plea Agreement I

7 have in front of me has that you signed it yesterday.  Had

8 you read the agreement carefully before signing it?

9     THE DEFENDANT:  Yes, sir.

10     THE COURT:  Do you understand the Plea Agreement?

11     THE DEFENDANT:  Yes, sir.

12     THE COURT:  Have you had enough time to talk to your

13 attorney about the Plea Agreement?

14     THE DEFENDANT:  Yes, sir.

15     THE COURT:  All right.  I'm going to ask the

16 prosecutor now to summarize the terms of the Plea Agreement.

17 I want you to listen carefully because when she's done, I'm

18 going to ask you whether the agreement she summarized

19 reflects the agreement you think you're making with the

20 Government.

21     And, Attorney Kaoutzanis, when you've outlined the

22 terms of the agreement, if you could include the elements of

23 the offense, but you can leave out the maximum statutory

24 penalties.  I'll go through those.  And you can leave out any

25 of the advice of rights and those kinds of things that I've

21

1   already covered.

2        Thank you.

3        MS. KAOUTZANIS:  Thank you, Your Honor.

4        The Plea Agreement is dated with today's date.  It's

5   nine pages in total.  It begins by outlining that Mr. Smith

6   is agreeing to plead guilty to Count One of a two-count

7   Indictment, and discusses how the Government will dismiss the

8   second count.

9        The Count that he's agreeing to plead guilty to is

10  possession of ammunition.  So to be guilty of this offense,

11  the elements that must be satisfied are:

12       That Mr. Smith knowingly possessed ammunition as

13  charged in Count One of the Indictment.

14       And at the time he possessed that ammunition he had

15  been and knew that he had been previously convicted of a

16  felony or a crime punishable for a term of imprisonment

17  exceeding one year.

18       And the possession of the ammunition was in or

19  affecting interstate or foreign commerce.

20       So I'll skip the next part of the Plea Agreement.

21  It goes through the maximum penalties which I will skip.

22       At the bottom of page two there is a Forfeiture

23  Agreement which is basically that Mr. Smith is agreeing to

24  forfeit his interest in the firearm and the ammunition that

25  was seized on October 8th, 2021, and $111 in currency that

22

1    was also seized on that day.

2         Mr. Smith is agreeing to waive his interest in the

3    firearm and ammunition as described.  And he's agreeing to

4    hold the United States, its agents, and employees harmless

5    from any claims whatsoever in connection with the seizure or

6    forfeiture of those assets.

7         The next part outlines (audio interference).

8         So Mr. Smith, by entering this Plea Agreement, is

9    acknowledging that the Court -- that he understands that the

10    Court is required to consider the applicable Sentencing

11    Guidelines and the relevant factors in 18, United States

12    Code, Section 3553(a).  And he agrees that the Sentencing

13    Guidelines determinations will be made by the Court even

14    though the parties have a range in here.  And that he has no

15    right to withdraw his guilty plea if for some reason the

16    Guideline application is other than what he anticipated or

17    outside the range set forth in the agreement.

18         The Government is agreeing to recommend that the

19    Court reduce by two levels, an additional third level based

20    on his prompt recognition and acceptance of responsibility.

21    However, the Government does reserve the right to seek denial

22    of the adjustment for acceptance of responsibility if there

23    was evidence brought to the Government's attention that would

24    indicate that he was engaging in any act, unknown to the

25    Government at the time of the signing of this agreement,

23

1   which indicated that he had not withdrawn from criminal

2   conduct or association or could provide a basis for an

3   adjustment for obstructing or impeding the administration of

4   justice or, if he were to be released at some point, could

5   constitute a violation of any condition of release.

6           And the Government further reserves the right to

7   seek the denial of adjustment for acceptance of

8   responsibility if the defendant were to seek to withdraw his

9   guilty plea or take a position at sentencing or otherwise

10  which is inconsistent with what the Government believes is

11  affirmative acceptance of personal responsibility.

12          And Mr. Smith is acknowledging if it were to happen,

13  the Government did not make one or both of the

14  recommendations or sought denial of the adjustment for

15  acceptance of responsibility, he would not be able to

16  withdraw his plea of guilty at that time.

17          The parties are agreeing -- in the next part there's

18  a Guideline Stipulation.  So the 2021 Guidelines Manual is in

19  effect.

20          And there are several paragraphs from the Guidelines

21  range just because of the potential impact of *Chery v.*

22  *Garland* which is a Second Circuit case from 2021.

23          So under this case, the defendant's base offense

24  level is 22.  If it is determined that the defendant's prior

25  Connecticut drug conviction does not qualify as a controlled

24

1    substance offense, the defendant's base offense level is 20.

2          So basically it's either 22 or 20, depending on one

3    of his prior convictions and how the case impacts that prior

4    conviction.

5          Mr. Smith's offense level is increased by four

6    because he possessed the firearm at issue here in connection

7    with another felony offense.  Then after three levels are

8    subtracted for acceptance of responsibility, as I just went

9    over, the defendant's base offense level would be -- if 22,

10   his total offense level would be 23.  If his base offense

11   level was 20, his total offense level would be 21.  So

12   there's two applicable potential ranges.

13         But the parties agree that based on their initial

14   assessment Mr. Smith is Criminal History Category IV,

15   although they do reserve the right to recalculate that

16   Criminal History Category in the corresponding sentencing

17   ranges if it was wrong.

18         So if Mr. Smith's total offense level is 23,

19   assuming Criminal History Category IV, he faces a range of 70

20   to 87 months of imprisonment, a fine range of 20 to $200,000,

21   and a supervised release term of one to three years.

22         If his total offense level is determined to be 21,

23   with Criminal History Category IV, he faces a range of 57 to

24   71 months, a fine range of 15,000 to 150,000, and the

25   supervised release term of one to three years.

25

1       Both parties are agreeing to reserve their rights to

2  seek a departure or a non-Guidelines sentence and to object

3  to a departure or a non-Guidelines sentence.

4       And once again, Mr. Smith is acknowledging here that

5  he understands that the Court's not bound by the ranges set

6  forth above.

7       And the parties are reserving their right to respond

8  to any inquiries from the United States Probation Office or

9  the Court regarding the proposed alternate calculations and

10 to defend any sentencing determination even if it differs

11 from those stipulated by the parties in a post-sentencing

12 proceeding.

13       The next section of the Plea Agreement goes through

14 the waiver of rights.  Your Honor had gone through the waiver

15 of trial rights.

16       With regards to the waiver of statute of

17 limitations, Mr. Smith agrees that if the conviction

18 following his guilty plea should be vacated for any reason,

19 any prosecution not time-barred on this date could be

20 commenced or reinstated against Mr. Smith even if the statute

21 of limitations had expired.  And he agrees to waive all

22 defenses based on the statute of limitation with respect to a

23 prosecution not time-barred on this date.

24       Mr. Smith is acknowledging that he can challenge his

25 conviction under certain circumstances, but by pleading

26

1    guilty here he's waiving his right to appeal or collaterally

2    attack his conviction in any proceeding including, but not

3    limited to a motion under Section 2255 and/or 2241.  And

4    specifically, waiving his right to challenge his conviction

5    based on any non-jurisdictional defect in the proceedings, a

6    claim to the statutes to which he's pleading guilty are

7    unconstitutional, or a claim that the admitted conduct does

8    not fall within the scope of the statute.  He's not barred

9    from raising an ineffective assistance of counsel claim.

10          He's also agreeing to waive his right to appeal or

11   collaterally attack his sentence, if that sentence, in any

12   proceeding, if that sentence does not exceed 87 months of

13   imprisonment, a three-year term of supervised release, a $100

14   special assessment, a $200,000 fine, and forfeiture of the

15   forfeitable assets that I went over above, even if the Court

16   were to impose such a sentence based on a totally different

17   analysis than the parties have agreed to in the Plea

18   Agreement.

19          The Government and the defendant further agree that

20   this waiver applies regardless of whether that term of

21   imprisonment is supposed to run consecutively or concurrently

22   with, in whole or in part, the undischarged portion of any

23   other sentence that has been imposed on the defendant at the

24   time of this (audio interference).

25          Mr. Smith is acknowledging that he's entering into

27

```
1    the agreement and pleading guilty freely and voluntarily

2    because he's guilty.  He's acknowledging that this agreement

3    is limited to the undersigned parties.  Doesn't bind any

4    other federal authority or any state or local authority.

5            Finally, the agreement concludes by stating that if

6    this guilty plea is accepted by the Court, it will satisfy

7    the federal criminal liability of Mr. Smith in the District

8    of Connecticut as a result of his unlawful possession of the

9    ghost gun and ammunition which forms the basis of the

10   Indictment in the case.  And that after sentencing, the

11   Government will move to dismiss Count Two of the Indictment

12   because the conduct underlying the dismissed count will have

13   been taken into account in determining the appropriate

14   sentence.

15           And finally, Mr. Smith is acknowledging that he

16   understands that if before sentencing he were to violate any

17   term or condition of the agreement, engage in criminal

18   activity, fail to appear for sentencing, the Government could

19   void all or part of the agreement.  If the agreement were

20   voided, in whole or in part, Mr. Smith would not be permitted

21   to withdraw his guilty plea.

22           And then finally, Mr. Smith is acknowledging that no

23   other promises or agreements or conditions have been entered

24   into.  And all -- myself, Attorney O'Reilly, and Mr. Smith

25   have signed the Plea Agreement.
```

28

1          THE COURT:  Thank you.

2          MS. KAOUTZANIS:  Thank you, Your Honor.

3          THE COURT:  Mr. Smith, did the prosecutor say

4   anything that came as a surprise to you?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Does the written agreement that she

7   outlined fully and accurately reflect your understanding of

8   the Plea Agreement that you've entered into with the

9   Government?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And I understand you signed that

12   agreement yesterday as we've discussed.  And that is your

13   signature I'm looking at on the document, is that correct?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  When you signed that document, did you

16   understand what you were signing?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Had you had enough time to review the

19   document with your attorney?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And had your attorney answered any

22   questions you may have had about the document?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Other than the promises that have been

25   set down in writing, has anyone made any other promises to

29

1    you that are not set down in writing that have caused you to

2    plead guilty?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Has anyone made any threats against you

5    to cause you to plead guilty?

6            THE DEFENDANT:  No.

7            THE COURT:  Has anyone made any promises to you

8    about what your sentence will be?

9            THE DEFENDANT:  No.

10           THE COURT:  It's important that you understand that

11   if the Court does not accept the Guideline analysis set forth

12   in your Plea Agreement, you'll still be bound by your guilty

13   plea.  You will have no right to withdraw your guilty plea,

14   and the Government will have no right to withdraw from its

15   agreement either.

16           Do you understand?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  I now want to discuss with you the

19   maximum possible sentence that could apply in your case.  And

20   this information is set forth on page 2 of your Plea

21   Agreement.

22           As you know, the offense in Count One which charges

23   a violation of Title 18, U.S. Code, Section 922(g)(1),

24   carries a maximum penalty of 10 years imprisonment.  In

25   addition to any prison term that you serve, you would also

30

```
1    face a term of supervised release of as much as three years.
2    If you were to ever violate any condition of supervised
3    release, the Court could then sentence you for up to two
4    years additional time in prison with no credit for the time
5    you'd spent on supervision per violation.
6             Do you understand?
7             THE DEFENDANT:  Yes, sir.
8             THE COURT:  You could also be fined up to $250,000.
9    And you're subject to what's called the alternative fine,
10   which is up to twice the gross gain to you resulting from the
11   offense, or twice the gross loss to others resulting from the
12   offense, whichever is greater.  There's a mandatory special
13   assessment of $100.  And there's no restitution in this case.
14            Do you understand the maximum penalties that you
15   face in this case?
16            THE DEFENDANT:  Yes, sir.
17            THE COURT:  Okay.  Of course, in addition to the
18   penalties, there's a forfeiture provision in your Plea
19   Agreement in which you're agreeing to forfeit to the United
20   States the ammunition charged in Count One of the Indictment,
21   and the 9 millimeter pistol and $111 of U.S. currency seized
22   on October 8th, 2021.
23            Do you understand?
24            THE DEFENDANT:  Yes, sir.
25            THE COURT:  You should also know that parole has
```

A-56

31

1   been abolished in the federal system.  If you are sentenced

2   to prison, you will not be released on parole.  Your sentence

3   could also be increased within that statutory maximum penalty

4   of 10 years for a variety of reasons.  For example, if it's

5   determined that you have a serious criminal history, whether

6   you committed the offense while on parole or probation, or

7   engaged in other offenses or relevant conduct during the

8   commission of the offense, if these matters are brought to

9   the Court's attention and the Court decides to increase your

10   sentence within the 10 year maximum penalty, you may not

11   withdraw your guilty plea.

12           Do you understand?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Do you understand the maximum penalties

15   you face in this case?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  I now want to describe for you how

18   sentencing works in Federal Court.

19           Before your sentencing, you, your attorney, and the

20   Government will receive a report prepared by the Probation

21   Office called a Presentence Report, a PSR.  To prepare that

22   report, the Probation Officer will interview you, talk to

23   some of your friends, your family members, research your

24   background, and summarize the offense conduct.  The Probation

25   Officer will use this information to recommend a sentencing

32

1    range under the Sentencing Guidelines.  The PSR will consider

2    whether any downward or upward departure from the suggested

3    sentencing range is warranted.  It's important for you to

4    understand that the Court must consider the Sentencing

5    Guidelines and their Policy Statements in determining your

6    sentence, but the Court is not bound by those Guidelines.

7             If there's factual disputes in matters relevant to

8    your sentence, including objections to particular

9    applications of the Guidelines, the Court will either resolve

10   those issues based on a preponderance of the evidence or

11   choose not to resolve them.

12            In analyzing the Sentencing Guidelines, the Judge

13   will consider your position and the position of the

14   Government, and will give due weight to any agreement you

15   made in your Plea Agreement about how you believe the

16   Guidelines apply in this case.  But, of course, the Court is

17   not bound by any such agreement.

18            After the Court has considered the factual matters

19   concerning your sentence, the Court will make a finding as to

20   the appropriate sentencing range for you under the Sentencing

21   Guidelines.  But, again, the Court is not bound by the

22   Guidelines.  The Court will impose a sentence based on the

23   factors set forth in a federal statute, 18, U.S. Code,

24   Section 3553(a) and the purposes of a criminal sentence.

25            Those factors include, your own history and

33

1    characteristics; the nature and circumstances of the offense;

2    any need for rehabilitation; and any need for restitution.

3          In the end, the Court may give you a sentence

4    within, above, or below the Guideline range.  If the Court

5    does not accept the Guideline analysis set forth in your Plea

6    Agreement, you'll still be bound by your guilty plea.  You

7    will have no right to withdraw from your -- withdraw your

8    guilty plea, and the Government will have no right to

9    withdraw from its agreement either.  At the end of the day,

10   the Court can impose a sentence that's higher or lower than

11   anyone expected.

12         Do you understand all of this?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Do you have any questions for me or for

15   your attorney at this time?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Have you reviewed with your attorney the

18   maximum penalties in your case, the operation of the

19   Sentencing Guidelines, and how they might apply to you?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Attorney O'Reilly, have you discussed

22   with your client the operation of the Sentencing Guidelines

23   and the sentencing process in this court?

24         MR. O'REILLY:  Yes, I have, Your Honor.

25         THE COURT:  Have you given him any estimate as to

34

```
1    what his sentence might be?

2           MR. O'REILLY:  Yes.

3           THE COURT:  Have you informed him that he will not

4    be able to withdraw his guilty plea if the Court does not

5    follow your recommendation or the Government's recommendation

6    concerning sentencing?

7           MR. O'REILLY:  Yes, Your Honor.

8           THE COURT:  Thank you.

9           Mr. Smith, I want to talk to you about your right to

10   appeal.  Generally, you have no right to appeal your

11   conviction after a guilty plea unless your guilty plea was

12   somehow unlawful or involuntary, or if there's some other

13   fundamental defect in the proceedings that was not waived by

14   your guilty plea.  You do have the right to appeal your

15   sentence under certain circumstances.  Any Notice of Appeal

16   must be filed within 14 days of judgment being entered in

17   your case.  If you're unable to pay the costs for an attorney

18   and you request, the Clerk of the Court will prepare and file

19   a Notice of Appeal on your behalf.

20           I should note that in your Plea Agreement you have

21   agreed that you will not appeal or collaterally attack your

22   sentence under certain circumstances.  And I'm looking now at

23   page -- the bottom of page 6 and top of page 7.  You've

24   agreed that you will not appeal or collaterally attack your

25   sentence if the sentence does not exceed 87 months of
```

A-60

35

1   imprisonment, a three-year term of supervised release, a $100

2   special assessment, a $200,000 fine, and forfeiture of the

3   assets discussed in the Plea Agreement.

4           Do you understand?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  In other words, if the Court imposes a

7   sentence of 87 months in prison, including the other agreed

8   upon terms, you will not be able to appeal the sentence

9   imposed even if you disagree with it.

10          Do you understand?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Is anyone forcing you to limit your

13  right to appeal your sentence?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  Has anyone promised you anything to get

16  you to limit your right to appeal?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Do you understand your right to appeal

19  your sentence?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  Thank you.

22          Now, I understand Mr. Smith has prepared a Petition

23  to Plead before appearing here today.  Is that correct,

24  Attorney O'Reilly?

25          MR. O'REILLY:  Yes, Your Honor.

36

```
 1          THE COURT:  And has the Government seen a copy of
 2   the Petition?
 3          MS. KAOUTZANIS:  I have, Your Honor.  Attorney
 4   O'Reilly sent it last night or this morning, but I have
 5   reviewed it.
 6          THE COURT:  Does it appear in order to you?
 7          MS. KAOUTZANIS:  It does, Your Honor.
 8          THE COURT:  All right.  So, Mr. Smith, I have in
 9   front of me a Petition to Plead Guilty.  Did you prepare this
10   Petition with the assistance of your attorney?
11          THE DEFENDANT:  Yes, sir.
12          THE COURT:  Is everything in Petition truthful and
13   accurate?
14          THE DEFENDANT:  Yes, sir.
15          THE COURT:  All right.  And in the Petition you made
16   a factual statement about the offense.  Is that
17   information -- in other words, what you did that makes you
18   guilty.  Is that also truthful and accurate?
19          THE DEFENDANT:  Yes, sir.
20          THE COURT:  It looks like you signed that Petition
21   either it looks like today, maybe this morning.  Does that
22   sound right?
23          THE DEFENDANT:  Yes, sir.
24          MR. O'REILLY:  Your Honor, we signed it yesterday,
25   but we dated it today because -- and I thought that Mr. Smith
```

A-62

37

1 could affirm that -- and only because it said that it should

2 be signed in open court.

3       THE COURT:  Sure.

4       MR. O'REILLY:  That would be today.

5       THE COURT:  That's not a problem, Attorney O'Reilly.

6       MR. O'REILLY:  We're not physically present to do

7 it.  So that's why I did it the way I did it.

8       THE COURT:  No problem.

9       And when you signed this document, did you

10 understand exactly what you were signing, Mr. Smith?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  All right.  So what I'll do is I'll ask

13 my Courtroom Deputy to change the last page, which has the

14 signature for Judge Arterton, if you could change that to

15 Judge -- to my name and enter my electronic signature, and

16 then file the Petition on the docket today.  That would be

17 wonderful.

18       Thank you.

19       All right.  We're now going to turn to the plea

20 itself.  You'll recall, Mr. Smith, that the Assistant United

21 States Attorney has described the elements of the offense

22 which are listed on the first page of the Plea Agreement.

23 The elements are those facts that the jury would have to find

24 beyond a reasonable doubt in order to find you guilty at

25 trial, and the Court must also find that there's a factual

38

1  basis for each of those elements in order to accept your
2  guilty plea.
3          Before we proceed to your statement of the offense,
4  do you have any questions that you'd like to ask me or your
5  attorney?
6          THE DEFENDANT:  No, sir.
7          THE COURT:  Tell me in your own words what you did
8  which, in fact, shows that you are guilty of the charge that
9  you're offering to plead guilty to.
10          THE DEFENDANT:  I knowingly was in possession of
11  ammunition while being a felon.
12          THE COURT:  All right.  And when did this happen?
13          THE DEFENDANT:  October 8th, 2021.
14          THE COURT:  All right.  And you possessed -- it
15  looks like you possessed a handgun as well that contained the
16  ammunition, is that correct?
17          THE DEFENDANT:  Yes, sir.
18          THE COURT:  And you knew that you had both of those
19  things in your possession?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  It also appears that you're agreeing
22  that prior to October 8th, 2021, you were a convicted felon?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  And did you know you were a convicted
25  felon on October 8th?

A-64

39

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you have any reason to doubt that the

3   ammunition crossed state lines before you possessed it?

4        THE DEFENDANT:  No, sir.

5        THE COURT:  All right.  Thank you.

6        Is there any other questions the Government would

7   want me to ask Mr. Smith?

8        MS. KAOUTZANIS:  No, Your Honor.  Thank you.

9        THE COURT:  I'm going to now turn to the Government,

10  Mr. Smith.  I'm going to ask the prosecutor to summarize the

11  Government's evidence as to Count One of the Indictment which

12  is the charge you're proposing to plead guilty to.  I want to

13  you listen carefully.  When she's finished, I'm going to ask

14  whether you agree with her summary of the evidence.

15       Go ahead, Ms. Kaoutzanis.  Thank you.

16       MS. KAOUTZANIS:  Thank you, Your Honor.

17       If this case were to go to trial, the Government

18  would prove the following through the testimony of law

19  enforcement witnesses, video surveillance, GPS tracking

20  information, and physical evidence.

21       As Mr. Smith has stated, this incident occurred on

22  Friday, October 8th, 2021, at the Mill River Crossing Complex

23  in New Haven.  New Haven Police Department Officers responded

24  upon hearing complaints about a group of males who were

25  drinking alcohol and listening to music.

40

```
1          When they came over they noticed a rental car that
2    had been reported stolen.  And the car's engine was running
3    so the police officer shined a flashlight inside and noticed
4    a black nine millimeter caliber pistol that was determined to
5    be a gun without a serial number that had one round of
6    ammunition in the chamber and a (audio interference) high
7    capacity magazine.  The ammunition was later determined to be
8    manufactured in Idaho.  And had this case gone to trial, ATF
9    Special Agent Sean Bracket (ph) would have been able to
10   testify to that effect.
11         Officers also located 125 bags of a substance that
12   field tested positive for heroin, and several small bags
13   of (audio interference).  Those tested positive for crack
14   cocaine.
15         And then in determining -- in trying to determine
16   who was in the car and whose firearm it was, New Haven Police
17   Department Officers reviewed surveillance footage and saw a
18   dark figure walk from the front seat.  The quality of the
19   surveillance footage was not precise enough to determine
20   whose face it was.  New Haven Police Department was able to
21   confirm that Mr. Smith was on probation, was being monitored
22   by a GPS ankle monitor (audio interference).
23         THE COURT:  You broke up there at the end.  I'm
24   sorry.  I heard up to where you said he'd been monitored by
25   an ankle monitor and then you broke up.
```

41

1          MS. KAOUTZANIS:  So the timing for that ankle
2   monitor was exactly consistent with him arriving in that
3   stolen rental car.  And then exiting the car shown in the
4   video, there was further surveillance footage that was found
5   that showed him in the car earlier in the day.  So all that
6   would be used to show that he had arrived in the car.  That
7   the firearm was his.
8          And then in terms of his prior history, the
9   Government would have also used certified convictions and
10  transcripts to show his prior felony convictions and to make
11  clear that he knew he was a convicted felon.
12         THE COURT:  Thank you.
13         Mr. Smith, do you agree with the prosecutor's
14  summary of what you did?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  Is there anything that she said that you
17  disagree with?
18         THE DEFENDANT:  No, sir.
19         THE COURT:  All right.  Typically this is where I
20  have the parties sign the agreement.  The parties have
21  already signed the agreement, which is no problem, and I've
22  already gone through that.  So I'll ask my Courtroom Deputy
23  to please file the agreement on the docket.
24         And I'm going to now ask is there anything that
25  either the attorneys think I've missed before I turn to the

42

1    plea itself?

2            MS. KAOUTZANIS:  Not from my perspective, Your

3    Honor.  Thank you.

4            MR. O'REILLY:  No, Your Honor.

5            THE COURT:  Thank you.

6            Mr. Smith, have you read the charge against you in

7    the Indictment?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  You have the right to have the charge

10   read out loud to you before you enter your plea or you can

11   waive a reading of the charge.  Would you like to waive a

12   reading of the charge?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  I'm going to ask the Clerk -- my

15   Courtroom Deputy to take Mr. Smith's plea to Count One of the

16   Indictment.

17           THE COURTROOM DEPUTY:  Yes, Your Honor.

18           In the case of the United States of America versus

19   Shavarius Smith, criminal number is 3:21CR202, assigned to

20   Judge Arterton.

21           As to Count One of the Indictment, charging you with

22   a violation of Title 18, United States Code, Section

23   922(g)(1), what is your plea?

24           THE DEFENDANT:  Guilty.

25           THE COURTROOM DEPUTY:  Your Honor, the defendant

43

1    pleads guilty to Count One of the Indictment.

2           THE COURT:  Thank you.

3           Mr. Smith, have you entered that plea of guilty

4    voluntarily, knowingly, and of your own free will and because

5    you're, in fact, guilty?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Does either counsel know of any reason

8    why I should not accept this plea today?

9           MS. KAOUTZANIS:  No, Your Honor.

10          MR. O'REILLY:  No, Your Honor.

11          THE COURT:  Thank you.  On the basis of the answers

12   given by the defendant under oath, on the record, and in the

13   presence of his counsel to the questions of the Court, the

14   written Plea Petition and the written Plea Agreement, the

15   remarks of defense counsel and the remarks of the Assistant

16   United States Attorney, I hereby find:

17          That the defendant is competent to plead.

18          That he knows of his right to a trial.

19          That he knows of the maximum potential sentence that

20   could be imposed.

21          That he knows the Court will make its own

22   determination as to the Sentencing Guidelines and will give

23   the Guidelines due weight.

24          That he understands that he will not be permitted to

25   withdraw his plea if the calculation of the Sentencing

A-69

44

1    Guidelines or the sentence ultimately imposed are different

2    than he expected.

3          And that he understands his right to appeal his

4    sentence as limited by the Plea Agreement.

5          I also find that there's a factual basis for the

6    defendant's plea and that he's entering this plea

7    voluntarily, knowingly, and of his own free will.

8          Accordingly, I will file a finding and

9    recommendation on a Plea of Guilty for the Court's approval,

10   and the case shall be referred to the United States Probation

11   Office for a Presentence Investigation.

12         It is so ordered.

13         Within the next few weeks, Mr. Smith, your attorney

14   will arrange for an interview of you by a United States

15   Probation Officer.  Your attorney will attend that interview.

16   After the interview and other background research, the

17   Probation Officer will prepare the PSR that we talked about

18   earlier.

19         I also am going to be issuing a sentencing schedule

20   on the docket.  So you don't need to take all of these dates

21   down.

22         The schedule that we received from Judge Arterton,

23   the sentencing date will be October 3rd, 2022, at 12:00,

24   p.m., in front of Judge Arterton in Courtroom 2 in New Haven.

25   So, again, October 3rd, 2022, at 12, p.m.

A-70

45

1       I'll ask my Courtroom Deputy to add the date and my

2   title and my electronic signature to the document that you

3   sent me.  That can be docketed today.

4       If you want to change the schedule for sentencing,

5   you would need to file a motion with Judge Arterton.

6       Is there any request for release pending sentencing

7   under 18, U.S. Code, Section 3143?

8       MR. O'REILLY:  Not at this time, Your Honor.

9       THE COURT:  All right.  Thank you.

10       Is there anything else we should do in Mr. Smith's

11   case today?

12       MS. KAOUTZANIS:  No, Your Honor.  And thank you for

13   making time to get this in.

14       Thank you, Your Honor.

15       THE COURT:  No problem.

16       MR. O'REILLY:  No, Your Honor.

17       THE COURT:  All right.  Thank you all.  Have a

18   wonderful day and weekend.

19       Thank you.

20       MR. O'REILLY:  Thank you, Your Honor.

21       THE COURT:  You're welcome.

22       (Concluded at 11:14, a.m.)

23

24

25

A-71

46

```
1               C E R T I F I C A T E

2

3        I, Martha C. Marshall, RMR, CRR, hereby certify that

4   the foregoing pages are a complete and accurate transcription

5   to the best of my ability of the electronic recording held in

6   the matter of UNITED STATES V. SHAVARIUS SMITH, which was

7   held before the Honorable Robert M. Spector, U.S.M.J., at 141

8   Church Street, New Haven, Connecticut, on June 24, 2022.

9

10

11

12                              /s/Martha C. Marshall
                                Martha C. Marshall, RMR,CRR
13                              Transcriber

14

15

16

17

18

19

20

21

22

23

24

25
```

United States District Court
District of Connecticut
FILED AT NEW HAVEN

6/24 _____ ,20 22

By ___ N. Langello ___

Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA    :
                            :
            v.              :    CASE NO. *3:21 CR 202*    (JBA)
                            :
*Shavarius Smith*           :

## PETITION TO ENTER A PLEA OF GUILTY
## PURSUANT TO RULES 10 AND 11 OF THE
## FEDERAL RULES OF CRIMINAL PROCEDURE

The above-named defendant respectfully petitions this

Court to permit him/her to withdraw his/her previously entered

plea of "Not Guilty" to Count(s) ___ *One* ___ of

the Indictment/Information in Criminal No. *3:21 CR 202* (JBA),

and to plead "GUILTY" at this time to Count(s) ___ *One* ___ .

In support of this petition, petitioner represents to the

Court as follows:

(1) My full and legal name is: _____

___ *Shavarius Tiger Smith* ___ .

I request that all proceedings against me be had in this name.

(2) I am *22* years of age.

(3) I was born in (City, State, etc.) *New Haven, CT* .

(4) (Place check in appropriate places.)

(a) I am able to read *X* and write *X* in the

English language.

– 1 –

      (b)  I am not able to read and write in English, and I have had the benefit of the interpretation and and translation services of _____ (name of interpreter), who is fluent in _____ (name of language). I continue to require such an interpreter.

(5)  (a) I have received the following education in the United States (check the highest level completed):

Grade School  1___2___3___4___5___6___7___8___

High School      *10*_____(Years)

College           _____(Years)

Graduate School  _____(Years)

      (b)  If education received in foreign country, give details_____

_____.

(6)  I am represented by counsel and the name of my attorney is   *Francis O'Reilly*_____.

(7)  (a) I have received a copy of the Indictment/Information, I have read and discussed it with my attorney, and I understand every accusation made against me in this case.

- 2 -

(b)   As stated below in my own words, I understand
      that in the counts of the Indictment/Information
      to which I am now offering to plead guilty, I am
      charged with the following crime(s):

      *Being a Felon in Possession of Ammunition*

      [Identify each count and the nature of the
      crime charged therein.]

(8)   My attorney informed, counseled, and advised me as to
      the nature of every accusation against me, and as to
      any possible defense I might have with respect to these
      accusations.

(9)   My attorney has advised me that, with respect to the
Count(s) to which I intend to plead "GUILTY," the punishment
which the law provides is as follows:

[Add up the punishments on each count.  For example, if a
defendant is pleading guilty to counts one and two, and there
is a two-year maximum sentence on count one, and a five-year
maximum sentence on count two, write in seven years as the
maximum amount of imprisonment, and $100 as the mandatory
special assessment.]

- 3 -

(a)   A maximum of _10 years_ imprisonment.

(b)   A mandatory minimum of _0_ imprisonment.

(c)   A maximum fine of $ _250,000.00_ .

(d)   A minimum fine of $ _0_ .

(e)   A maximum term of supervised release of _3_ years following imprisonment for the offense(s) charged in Count(s) _One_ of the Indictment/Information.

(f)   A minimum term of supervised release of at least _0_ years following imprisonment for the offense(s) charged in Count(s) _One_ of the Indictment/Information. I understand that if I violate any condition of the supervised release before the term expires, I may be required to serve a further term without any credit for the time already spent on supervised release of:
(a)                    **years imprisonment**
(b)  the entire term of supervised release.

(g)   A maximum order of restitution equal to the amount of loss resulting to any victims of the offense(s) charged in the Indictment/ Information to which I am offering to plead guilty.

(h)   I understand that I must also pay a mandatory special assessment of $ _100.00_ .

- 4 -

(10)  My attorney has also advised me that:

[Check applicable line.]

 (a)  Because the offense to which I am offering to plead "GUILTY"is a Class A/B felony, the Court is not authorized to sentence me to probation.

_____ (b)  Probation is a possible sentence, but that it may or may not be granted.

(11)  My attorney has also advised me that in imposing a sentence on the offense(s) to which I am now offering to plead guilty, the Court must consider the Guidelines promulgated by the United States Sentencing Commission and the related policy statement.  The Court, however, is not bound by the Guidelines but must consider them along with other factors set forth in 18 U.S.C. §3553.

My attorney has counseled me with his/her opinion on what my sentencing range might me.  I fully understand that my attorney's opinion (or my own) may be incorrect and that any disputed facts and objections to application of the Guidelines calculated will be made by a preponderance of the evidence. I understand that my attorney's opinion or prediction concerning the Guidelines to be considered is not binding on the Court nor are the Guidelines themselves binding on the Court; and that I have no right to withdraw my plea on the ground that my attorney's opinion or prediction (or my own) concerning any

- 5 -

sentence proved to be incorrect.  I fully understand that the sentence could be up to the maximum provided by the statute.

My attorney has advised me that in certain instances, conduct which is found or stipulated to have occurred will be taken into consideration in computing the applicable Guidelines to be considered, even though that conduct does not form the basis of the specific count(s) to which I am pleading guilty.

My attorney has advised me, and I fully understand, that parole has been abolished for offenses committed on or after November 1, 1987, and that if I am sentenced to prison, I will not be released on parole.

_____ (12) Consequences for parole and probation. [Check if defendant is on probation or parole in this or any other court.]

I understand that by pleading GUILTY here, my probation/parole may be revoked and I may be required to serve time in prison in the case in which I am on probation/parole, in addition to any sentence imposed upon me in this case. Moreover, my attorney has advised me that my status on probation/parole at the time of the offense charged in this case may result in an increase in the Guideline range or in the sentence imposed.

(13) My attorney has advised me that if I plead "GUILTY" to more that one offense, the Court may order the sentence to be served consecutively - that is, one after another.

- 6 -

(14) I understand that I may, if I so choose, plead "NOT GUILTY" to any offense charged against me, and that I may continue to plead "NOT GUILTY," if I have already so pleaded.

(15) I understand that if I choose to plead "NOT GUILTY," I may proceed to trial at the time set by the Court.  I further understand that the United States Constitution guarantees me:

    (a)  the right to a speedy and public trial by jury;

    (b)  the right to see, hear, and question all witnesses called by the government against me;

    (c)  the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses, in my favor;

    (d)  the right to have the assistance of counsel in my defense at all stages of these proceedings, as well as upon the trial;

    (e)  the right not to be compelled to incriminate myself; that is, I understand that if I go to trial, I may remain silent and I cannot be compelled to take the witness stand; and

    (f)  the right to be found "not guilty" on any charge for which the evidence lawfully admitted at trial does not sustain a finding of guilt beyond a reasonable doubt.

(16) I understand that, by pleading "GUILTY," I waive (that is, I give up) my right to a trial, and that there will be no further trial of any kind.

- 7 -

(17) I understand that, if I plead "GUILTY," the Court may ask me questions about the offense to which I am pleading "GUILTY."  I also understand that if I answer these questions under oath, on the record, and in the presence of counsel, my answers, if false may later be used against me in a prosecution for perjury or false statement.

I understand also that, by pleading "GUILTY," I waive any right against self-incrimination concerning the facts constituting the offense to which I am pleading "GUILTY."

(18) I understand that, if I plead "GUILTY," the Court may impose the same punishment as if a I pleaded "NOT GUILTY," stood trial, and had been convicted by a jury.

(19) I further understand that if a plead "GUILTY," I waive (that is, I give up) any defenses I may have had and, in particular, that I waive any claims which I may have based upon any previous violations of my statutory or constitutional rights. I understand that if I were to continue to plead "NOT GUILTY," I would be entitled to have my attorney make appropriate application to the Court based upon any such violations - for example, a motion to suppress evidence.

(20) I declare that no officer or agent of any branch of government (federal, state or local), nor any other person, has made any promises or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter

- 8 -

sentence, or probation, or any other form of leniency, if I would plead "GUILTY," except to the extent that my plea of "GUILTY," may be a factor considered by the Court in determining whether I have accepted responsibility for my criminal conduct within the meaning of the Guidelines or to the extent indicated in my written plea agreement with the Government.

(21) I declare that I have not been <u>threatened</u> or <u>forced</u> in any way to plead guilty at this time or any other times.

(22) My decision to plead "GUILTY" arises out of discussions between me and my attorney, who advised me that if I plead "GUILTY" to Count(s) _One_ the government has agreed to the following: [Staple here a copy of any written agreement between the government and the defendant. If there is no written agreement, state the nature of the agreement in the space below.]

- 9 -

(23) I understand that the Court may accept or reject the terms of this agreement, or may defer its decision to accept or reject the agreement until it has had an opportunity to consider a presentence report prepared by the United States Probation Office.

(24) (a)  I have made this decision to plead "GUILTY" freely and voluntarily and as a result of my own reasoning processes.

(b)  I know that the Court will not accept a plea of "GUILTY" from any one who claims to be innocent and I am not pleading "GUILTY" for any reason other than that I am indeed guilty.

(25) [Place check mark in appropriate place:]

I have_____/have not___ X___ made any statement to any law enforcement officer or anyone else in which I admitted the crime or any part of the crime to which I now want to plead guilty.

[Check if defendant has made such a statement]

_____ I would choose to plead "GUILTY" even if I knew that the statement could not be used against me.

(26) I understand that, in cases prior to November 1, 1987, a federal judge has no authority to order a federal sentence of imprisonment to run at the same time as a state sentence of imprisonment.

However, for an offense committed after November 1, 1987, I understand that under 18 U.S.C. §3584(a), a federal judge may impose terms of imprisonment that run concurrently.

(27) I believe and understand that my attorney has done all that an attorney should have done to counsel and assist me with respect to this case.

(28) I am not now under the influence of any drugs or alcohol.

(29) Within the last seven (7) days, I have taken the following drugs, medicines, pills or alcoholic beverages:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

- 11 -

(30) The following is my own statement as to what occurred, which shows that I am, in fact, guilty of each charge to which I am now offering to plead "Guilty."   [Defendant must set forth, in his/her own statement as to each count with which he/she is charged. Use additional sheets if necessary and attach to this petition.]

ON OCTOBER 8TH 2021 I was IN Possesion of a Handgun THaT contained Ammunition and I knew THaT I Have Previously Been convicTed of a Felony THaT IS a crime Punishable of more THan one year of imprisonment

(31) I declare that I offer my plea of "GUILTY" freely and voluntarily and of my own accord.  I also declare that my attorney has explained to me, and I understand, the statements set forth in the Indictment/Information and in this petition and in the "Certificate of Counsel" attached to this petition.

(32) I have read and discussed with my attorney the Indictment/Information, and I further state that I wish the Court to omit and consider as waived (that is, to consider as given up) by me all reading of the Indictment/Information in open court, and all further proceedings upon my arraignment, and to consider any undecided motions previously made by me as withdrawn.

(33) I request that the Court enter now my plea of "GUILTY" as set forth above in reliance upon my statements in this petition.

Signed by me in open court in the presence of my attorney at New Haven, Connecticut, this 24 day of JUNE , 2022 .

_____
Defendant

- 13 -

CERTIFICATE OF COUNSEL

The undersigned, as attorney and counselor for the defendant, *Shavorius Smith*, hereby certifies as follows:

(1)   I have read and fully explained to the defendant all the accusations against the defendant which are set forth in the Indictment/Information in this case;

(2)   To the best of my knowledge and belief each statement set forth in the foregoing petition is in all respects accurate and true;

(3)   The plea of "GUILTY," as offered by the defendant in the foregoing petition, accords with my understanding of the facts as related to me by the defendant, and is consistent with my advice to the defendant;

(4)   In my opinion, the defendant's waiver of the reading of the Indictment/Information in open court, and of all further proceedings upon arraignment as provided in the Federal Rules of Criminal Procedure, is voluntarily made; the defendant understood what he/she was doing when he/she waived the reading; and I recommend to the Court that the waiver be accepted by the Court;

(5)   In my opinion the plea of "GUILTY," as offered by the defendant in the foregoing petition, is voluntarily and understandingly made, and I recommend to the Court that the plea of "GUILTY" be now accepted and entered on behalf of the defendant as requested in the defendant's petition;

(6)   I have read and understood and explained to the defendant all the provisions of Rules 10 and 11 of the Federal Rules of Criminal Procedure, and I believe the defendant understands the substance of both of those Rules;

(7)   I have caused a copy of the foregoing petition, completed by the defendant, to be delivered to the Assistant United States Attorney in charge of this case prior to the parties' appearance in court at the plea proceeding.

Signed by me in open Court and in the presence of the defendant above named at New Haven, Connecticut, this 24th day of June_____, 20 22_____

Attorney for the Defendant

Francis L. O'Reilly

- 15 -

O R D E R

Good cause appearing from the foregoing petition of the
defendant above named and the certificate of his counsel, and
from all proceedings heretofore had in this case, it is hereby
ORDERED that the petition by granted and that the defendant's
plea of "GUILTY" be accepted and entered as prayed in the
defendant's petition and as recommended in the certificate of
his/her counsel.

Done in open court in New Haven, Connecticut this __24th__
day of __June__, 20_22_

                                    /s/ Robert M. Spector
                                    _____
                                    Robert M. Spector
                                    United States Magistrate Judge

A-88

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------x
                                :

**UNITED STATES OF AMERICA**      :     **Crim. No. 3:21CR202(JBA)**
                                :

**v.**                             :

**SHAVARIUS SMITH**         :     **JUNE 26, 2022**
                                :

---------------------------------------------------x

## FINDINGS AND RECOMMENDATION ON A PLEA OF GUILTY

      The captioned matter was referred to the undersigned by United States District Judge Janet Bond Arterton, and a hearing was conducted on June 24, 2022, in open court, via Zoom, and on the record, with the written consent of the defendant, counsel for the defendant and counsel for the United States, regarding the defendant's request to change his plea to "Guilty" to Count One of the Indictment, charging him with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Based upon the answers given by the defendant under oath and in the presence of counsel; the remarks of defense counsel and counsel for the government; and the written representations in the plea petition and the plea agreement; I find the following:

•     that the defendant is competent to plead;

•     that he understands the charges against him in the Indictment and the charge to which he pleaded guilty;

•     that he knows he has the right to be represented by counsel at trial and at every other stage of the proceeding, and is satisfied with his current counsel;

•     that he understands his right to plead not guilty and, having already done

so, to persist in that not-guilty plea;

• that he understands his right to a jury trial, including the right to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses, and that he understands he would be giving up these trial rights if he pleaded guilty and the Court accepts that plea;

• that he knows the maximum possible sentence including the maximum possible terms of imprisonment and supervised release, the consequence of a violation of supervised release, the maximum potential fine that could be imposed, and the mandatory special assessment of $100.00;

• that he knows that the Court is obligated to consider the advisory sentencing guidelines range, possible departures under the sentencing guidelines, and other sentencing factors under applicable sentencing law, and that any factual disputes at sentencing will be resolved by the Court by a preponderance of the evidence;

• that he understands the potential immigration consequences and the other collateral consequences of a felony conviction;

• that he knows he will not be permitted to withdraw his plea of guilty if the calculation of the sentencing guidelines or the sentence ultimately imposed is other than he anticipates;

• that he understands his right to appeal, including limitations placed on that right by the terms of a waiver in his plea agreement and that such waiver was knowingly and voluntary;

- that he understands the elements of the offenses to which he pleaded guilty and that there is a factual basis for the defendant's plea; and

- that the defendant's waiver of rights and plea of guilty have been knowingly and voluntarily made, are of his own free will, were not coerced and were not the product of any other promises other than those contained in the plea agreement.

The Court also finds that, based on the representations of the government's counsel, the requirements of 18 U.S.C. § 3771 do not apply in this case.

Lastly, the Court conducted this hearing by video conference, pursuant to section 15002 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), P.L. 116-136, 134 Stat. 281 (Mar. 27, 2020). The Court finds that proceeding by video is appropriate as to the felony change of plea hearing, pursuant to Section 15002(b)(2)(A). Specifically, the Court finds:

1.     The Chief Judge of this Court previously has made findings that "felony pleas under Rule 11 of the Federal Rules of Criminal Procedure . . . cannot be conducted in person without seriously jeopardizing public health and safety."

2.     The plea in this case cannot be further delayed without serious harm to the interests of justice, for the reasons set forth in more detail on the record in open court today and proceeding by videoconference accessible to the public adequately balanced those interests with the public's right of access.

3.     The defendant understood his right to proceed in a public courtroom but knowingly and voluntarily consented to proceed by videoconference, after

3

consultation with counsel.

Accordingly, I hereby RECOMMEND that the defendant's plea of guilty be accepted.

Dated this 26th day of June, 2022, at New Haven, Connecticut.

/s/ *Robert M. Spector*

ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

4

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 3:21-CR-202(JBA) |
| v. | : | |
| | : | |
| SHAVARIUS SMITH | : | |

<u>ORDER OF FORFEITURE</u>

WHEREAS, Defendant Shavarius Smith has pleaded guilty to Count One of a two-count indictment, charging him with unlawful possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1).

WHEREAS, the Court finds, based on the Defendant's plea agreement letter that the United States of America ("Government") has established the requisite nexus between the below-referenced property and the offenses to which the defendant has plead guilty.

NOW, THEREFORE, IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c) that all right, title and interest that the defendant may have in the following: Four rounds of Cascade Cartridges Inc., 9mm ammunition; One (1) 9mm pistol with no serial number; and $111.00 in U.S. currency, seized from the Defendant on or about October 8, 2021, is hereby condemned and forfeited to the United States of America.

IT IS FURTHER ORDERED, pursuant to 21 U.S.C. § 853(g) and Fed. R. Crim. P. 32.2(b)(3), that the Attorney General of the United States or his authorized designee shall seize said property and conduct any discovery proper in identifying, locating, or disposing of the property subject to forfeiture, and to commence proceedings that comply with any statutes governing third-party rights.

IT IS FURTHER ORDERED, pursuant to 21 U.S.C. § 853(n), that the Government may publish notice of the forfeiture in a manner consistent with the provisions of Supplemental Rule G(4)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which may include publication on the Government's forfeiture website on the internet (www.forfeiture.gov).  However, notification by publication is not required for assets valued at less than $1,000.00.  The Government shall also, to the extent practicable provide written notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture of the property in an ancillary proceeding.  The foregoing publication and written notice shall include notice of the Government's intent to dispose of the property in accordance with the law, and notice that any person, other than the defendant, having or claiming an interest in any of the above-listed forfeited property must file a petition with the Court within thirty (30) days of the final publication of notice or of receipt of actual notice, whichever is earlier.

IT IS FURTHER ORDERED, pursuant to Fed. R. Cri. P. 32.2.(b)(3), that this Order of Forfeiture shall be final as to the defendant and shall be made part of the sentence and included in the judgment.

IT IS FURTHER ORDERED, pursuant to Fed. R. Cri. P. 32.2(c)(2), that this Order of Forfeiture shall be final as to a third party if no petition to adjudicate said third-party's interest is timely filed in accordance with 21 U.S.C. § 853(n).

SO ORDERED this 17th day of Nov., 2022 at New Haven, Connecticut.

/s/ Janet Bond Arterton
JANET BOND ARTERTON
UNITED STATES DISTRICT JUDGE

2

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

V.                                          3:21-CR-00202-JBA-1

SHAVARIUS SMITH

### ORDER ACCEPTING DEFENDANT'S GUILTY PLEA

The Court has reviewed Magistrate Judge Robert M. Spector's Findings and

Recommendations on a Plea of Guilty (Doc. #38) finding that a valid plea of guilty by

Defendant Shavarius Smith has been knowingly and voluntarily made and finds that Judge

Spector's recommendation that the Defendant's plea of guilty be accepted to be fully in order.

Accordingly, the Court approves and adopts the recommendation. The Defendant's

guilty plea is accepted and a finding of guilty as to Count One of the Indictment shall be entered.

IT IS SO ORDERED.

/s/ Janet Bond Arterton
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, CT, November ___, 2022

**UNITED STATES DISTRICT COURT**
**District of Connecticut**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:21-CR-202(JBA) |
| | : | |
| v. | : | |
| | : | |
| SHAVARIUS SMITH | : | NOVEMBER 18, 2022 |

<u>**MEMORANDUM IN AID OF SENTENCING**</u>

The defendant in the above-captioned case, Shavarius Smith, respectfully submits this memorandum as an aid to the Court in his sentencing.

If it is true that we human beings are a product of our environments, then Shavarius Smith was in trouble from the start. It is difficult to conceive of a more traumatic—and, unfortunately, more typical—childhood than the one Shavarius experienced. Teenage parents, unprepared to raise a child? Check. Mother and father in and out of prison? Check. Substance abuse before the age of ten? Check. No high school diploma. Long stretches in juvenile detention. Multiple mental health diagnoses. Murphy's Law reduced to flesh and blood.

The question posed by this grim, futile backdrop is one that the criminal justice system has yet to adequately answer: what is the law to do with a person whose upbringing was so abject, who was given so little in the way of hope and opportunity?

One answer is, of course, incarceration. Lock the problem away and hope that he learns the error of his ways. But, as the Presentence Report notes, "[Shavarius] was not deterred at all by the fact that he had just been released from jail.... or the potential that he would be caught and go back to jail." (PSR at ¶ 90). Perhaps this is because deterrence alone is not the answer. Incarceration is not the one-size-fits-all panacea our ancestors believed it be. To her credit, the

1

Probation Officer notes this herself, in a thoughtful summation at the close of the Presentence

Report:

> In order to address his anti-social values and stop the pattern of engaging in
> criminal behavior, it will be important for him to participate in drug treatment to
> address his dependency on drugs, and mental health counseling with cognitive
> behavioral therapy, to address his thinking patterns. With ongoing counseling and
> therapy, and age on his side, Mr. Smith has the potential to turn his life around
> and become the productive and law-abiding citizen he has the potential to be.

(*Id.*) As this summation suggests, Shavarius has hope, but little chance of success if he is once

again locked away with no support. As the instant memorandum will demonstrate, his is a case

for the rehabilitative aspects of punishment, rather than merely the retributive.

Accordingly, Mr. Smith respectfully requests that the Court impose a sentence of 48

months' imprisonment. Such a sentence is sufficient but not greater than necessary to punish him

for his admitted conduct. Coupled with rehabilitation in the form of programming, both in

custody and upon his release, this sentence will give Shavarius the best chance of staving off the

example of his parents and becoming a useful member of society.

## I.   INTRODUCTION

On June 24, 2022, Mr. Shavarius Smith pleaded guilty to Count One of the Indictment in

Docket No. 3:21CR202(JBA), charging him with Felon in Possession of Ammunition, in

violation of 18 U.S.C. §§ 922(g)(1), and 924(a)(2). The plea agreement and Presentence Report

("PSR") note that the base offense level is either 20 or 22, depending on whether Mr. Smith has

previously been convicted of a controlled substance offense as that term is defined by § 2K2.1.

The applicable base offense level is then increased by four levels pursuant to § 2K2.1(b)(6)(B).

Three levels are subtracted for Acceptance of Responsibility.

The Government contends that Mr. Smith has a prior conviction for a controlled substance offense, and that the adjusted offense level is 23. Mr. Smith disputes this contention. As outlined below and in the Presentence Report, he does not have a prior predicate conviction, and so the adjusted offense level is 21.

The plea agreement provided an initial assessment that Mr. Smith fell into Criminal History Category IV. However, the Presentence Report calculates a Criminal History Category of V. Thus, the applicable guideline range in this case is either 70 to 87 months (with a total offense level of 23) or 57 to 71 months (with a total offense level of 21).

Mr. Smith respectfully requests that the Court consider his age at the time of sentencing, upbringing and family life, and potential for rehabilitation, and impose a sentence of 48 months incarceration. Such a sentence will serve to punish him for his admitted criminal conduct, deter others, and promote respect for the law.

## II.    LEGAL STANDARD

The Guideline range provides the "starting point and the initial benchmark" for the Court in considering an appropriate sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007). The Second Circuit has identified the following principles governing the selection of sentences:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby,* 397 F.3d 103, 113 (2d Cir. 2005). These principles do not render the Guidelines a mere "body of casual advice," and instead require the courts to "'consider' the Guidelines and all of the other factors listed in in § 3553(a)" in reaching an individualized sentence. *Id.,* at 113–4; *see also Gall,* 552 U.S. at 50 (requiring an "individualized assessment based on the facts presented"). § 3553(a) provides the following factors for the Court's consideration in imposing a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> > (i) issued by the Sentencing Commission . . .
> (5) any pertinent policy statement--
> > (A) issued by the Sentencing Commission . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The goal of these strictures and the governing precedent is a mechanism that enables sentencing judges to arrive at sentences that are, pursuant to § 3553(a), "sufficient, but not greater than necessary, to comply with the purposes" of the federal sentencing regime. *Id.*

## III.    THE GUIDELINE CALCULATION

Even if the Court concludes that the Probation Office's Criminal History Score is correct—and the undersigned does not have any legitimate basis upon which to contend that it is

not—the Court should apply the calculation adopted by the parties. The Presentence Report arrives at a higher guideline range than that contemplated by the parties. The possibility of that enhanced punishment comes, not from the plea-bargaining process, but rather from the United States Probation Office. The federal courts, though, have long recognized the value of the plea-bargaining process and the concomitant need to honor its results. *E.g. United States v. Fernandez,* 877 F.2d 1138, 1144-46 (2d Cir. 1989) (describing historical importance of plea-bargaining in criminal cases). It is because of this importance that the Sentencing Guidelines permit the district courts to "depart from a Guidelines sentence in order to give effect to a plea bargain if such a departure is warranted." *Id.* at 1145. In this case, the Court should honor the plea-bargaining process and decline to apply the increased Criminal History Category suggested by the PSR.

### IV.    MR. SMITH'S BACKGROUND AND POTENTIAL FOR REHABILITATION

British Reform rabbi Lionel Blue once famously described the Jewish people as "like everyone else, only more so." The phrase was wry, tongue-in-cheek, intended to provoke good-natured smiles among Blue's BBC Radio audience. In the years since its first use, the phrase has been co-opted and expanded to apply to circumstances or situations that are, in certain contexts, outliers. Scenarios that are familiar and predictable, only to such a degree that they become not mundane, but notable.

The brief but troubled life of Shavarius Smith is one such outlier. In many ways, the broad strokes may sound familiar, especially to the Court, which has more experience in these matters than the undersigned or anyone else. But the length and breadth of Shavarius' difficulties, the obstacles erected in his path, those are in a category all their own. In this

context—a review of Shavarius' history and characteristics for the purposes of a federal sentencing—he is just like everyone else, only more so.

Shavarius Smith was born on April 12, 2000. At the time of this writing, he is 22 years old. His mother, Thomasina Evans was sixteen when she gave birth to Shavarius. His father, Melvin Galloway, was nineteen, and already fresh off a stint in state prison. The pair were categorically unprepared to raise a child. Thomasina had been raised in foster care for most of her childhood—which was still in progress when she gave birth to her son. Her foster mother was a woman named Pam Evans. Pam was a good person, and she meant well, but she had difficulty providing the level of care and, perhaps more crucially, supervision that children need. As a result, Thomasina had begun to drift down a dangerous path even before Shavarius was born. It was on that dangerous path that she met Melvin Galloway, who was three years older than her and, in her words, "in the streets," involved in the drug culture of the early 2000s.

Soon after Shavarius was born, Thomasina was arrested on drug charges and sentenced to state prison. Melvin was nowhere to be found. Instead of passing into the custody of the State, as Shavarius might have under other circumstances, he was taken in by his mother's foster mother, Pam Evans. Ms. Evans had custody of Shavarius for approximately three years in the early 2000s, while Thomasina served her sentence.

When she was released, Thomasina struggled to find a home for herself and her young son. Eventually, she secured an apartment in the Farnam Court housing project. Farnam Court, of course, is notorious in certain circles. It was and is well-known as being an environment where drugs and violence are ubiquitous, even routine. Shavarius' experience there was no different, like everyone else's only more so. He saw drugs on a regular basis, sure. Sold in the hallways and the courtyards and any other secluded place. Crushed or snorted or injected. He saw violence

A-101

of the expected sort. Beatings and stabbings and shootings. But he also saw things that no child should ever have to see. Before he was ten years old, Shavarius saw his first dead body. To this day, he does not remember what exactly caused the person's death, only that he looked like a wax mold of a person, an approximation of the genuine article. This was the first dead body he saw during his childhood, but it was not the last, nor even the most traumatic. That dubious honor belongs to Shavarius' adoptive grandfather, Jimmy, whom Shavarius found dead in a bathtub. The memory haunts him to this day.

And behind the scenes, out of Shavarius' sight, a custody battle was unfolding. Not between his mother and father; Melvin Galloway still had no interest in participating in the life of his firstborn son. No, this custody battle was unfolding between Thomasina and her sister, Jasmin Evans. Jasmin believed—correctly, it must be said—that Farnam Court was no place to raise a young boy. Thomasina agreed, but Farnam Court was the only option she had. She was young, a single mother burdened with a criminal record, and no real hope of meaningful employment. She did not want to give up her son.

The matter was further complicated in 2006, when Thomasina was arrested again, this time for federal Bank Fraud. Shavarius went to live with Pam Evans while Thomasina spent four months in federal prison. Then, in 2008, when Shavarius was eight years old, the custody battle intensified. Thomasina had violated the terms of her federal probation and been returned to custody, and Shavarius went to live with his aunt Jasmin West Haven. This was now the third time that Thomasina's interactions with the criminal justice system had led to Shavarius' removal from her custody.

When Thomasina was released, she tried to get her son back, but Jasmin fought her on it. Jasmin did not want Shavarius returned to Farnam Court and his mother's transient custody. For

A-102

several years, Shavarius lived in a state of limbo, effectively splitting time between his mother's apartment in Farnam Court and his aunt's home in West Haven. Ultimately, when he was old enough to choose, he chose his mother's custody.

Today, Shavarius recalls that choice as both the best and the worst choice he has, perhaps, ever made. He has a close relationship with his mother, and he recalls her presence in his life as a positive one. They watched movies together, played board games, cooked dinner together. They developed a closeness that they had never before experienced, due to Thomasina's frequent and extended absences from the home.

And yet, Thomasina was a single mother who was forced to work multiple jobs to provide for herself and for her son. She was often out of the house, and even when she was home, she was typically exhausted and somewhat less attentive than she might have been. Shavarius, by then approaching the end of elementary school, noticed this lack of attention. In his words, his mother's frequent preoccupation with work and providing for his needs gave him "more freedom than he was ready for." As he describes it, he began to exploit that freedom by getting into trouble with other local children who were similarly neglected. Breaking windows, trespassing, starting fires. He describes this mischief as the result of too little supervision, but the undersigned sees it differently. It strikes the undersigned that Shavarius' delinquent behavior may not have been a necessary byproduct of his mother's absence in his life, but rather a predictable reaction to it. He was experiencing a formative stage of his life and he was doing it without a father and largely without a mother. His behavior might more properly be seen, then, as a cry for help, or at the very least for attention.

Whatever the reason, Shavarius' education was the thing that suffered. In his words, his schooling was "done" by the end of 5th grade. He continued on into middle school, but he cared

A-103

very little for his coursework. His mother would often find unfinished homework crumpled in his school bag, and he would frequently sleep or daydream in his classes.

Then, when Shavarius was eleven, his father Melvin was shot and killed. The two had never had a close relationship, but Melvin had come and gone throughout Shavarius' life. Shavarius took his father's death hard. He had used marijuana for the first time at nine years old—like everyone else, only more so—but now, at eleven, his use escalated. He would spend the whole day getting high with the other delinquent children of Farnam Court, skipping school and playing dice.

It was this lifestyle that led to Shavarius' first experience with incarceration. At thirteen, he was sent to the Connecticut Juvenile Training School ("Long Lane"). There, he found not rehabilitation or a pathway to a productive life, but more of the same. Kids who had the same sort of struggles he did, who reacted in the same ways, and adults that cared very little for the welfare of their charges. He emerged at fifteen, high school aged but with no desire for further education. He tried one brief foray into high school, but it did not last. Technically, Shavarius was in the tenth grade when he left school for good, but to hear him tell it, he had learned almost nothing since the fifth grade, when he decided education was not for him.

Around this same time, at fifteen, Shavarius began taking Percocet. His use was slow, at first, but soon escalated, as expected, to daily use or up to 120mg a day. When the pills were unavailable, he used other things, including marijuana and Ecstasy.

Then, at eighteen, Shavarius, with no high school diploma and no work history, was arrested for the first time. He received a two-year sentence for larceny and assault. He served just over a year-and-a-half, and emerged at twenty into a world that had moved on without him, one that was calculated to impose near-insurmountable obstacles on a person in his position. Much

A-104

has been made in the last decade about the extended consequences of incarceration. The difficulties it can impose on things like finding a job or a home. The various ways that lengthy sentences can stunt development, especially in young people. Take those considerations and magnify them tenfold and there may appear an approximation of what Shavarius Smith faced upon being released from jail at twenty: penniless, without a high school education, without a job, without any work history, with a serious felony already on his criminal record and with no one to speak for him or be his advocate.

What hope is there for a person under those circumstances? What should we expect of such a man?

Shavarius, faced with those monolithic hurdles, unfortunately turned to the wrong solutions. He left his childhood behind. His drug use escalated. His life turned over into a downward spiral.

This juncture in Shavarius' life is a point of inflection, a place where some positive influence, some role model, might have intervened and saved him. But, as we have seen, there was no such person for Shavarius. His mother was there, but only partly so. Same with his aunt and his adoptive grandmother, Pam Evans. He had family, but he was completely alone. And so the downward spiral of his life only became tighter and steeper. He was arrested. He was incarcerated. He was released and he emerged into a world that was insensitive in the same ways it had been before, only more so. He got older. His criminal record got longer. Society became less and less tolerant of his mistakes.

And that brings us to today, the most recent iteration of the cruel cycle of Shavarius Smith's life. It is difficult to believe, but he is still only twenty-two. Twenty-two and possessed of enough pain and suffering to fill a life twice as long. Twenty-two on the outside and yet little

developed beyond his early teenage years. Stunted by a long history of drug abuse and negative influences. The arc of his life is a familiar one, but the tragedy condensed into such a brief existence is staggering. Like everyone else, only more so.

Still, even now, Shavarius has hope. He recognizes now the pattern that has characterized his life, essentially from the age of ten. He sees that while escaping this pattern will be difficult, it is possible. And he knows he will need help.

He has it from his mother, who has supported him all the way through the instant case and intends to do so when he is released. But he knows that is not enough. He knows he will need to take advantage of whatever other opportunities are given him. Substance abuse treatment. Mental health counseling. Education and career advice.

This is precisely what he intends to do. Even amidst the gloom, Shavarius still has hope that the pattern of his life is not destined to repeat itself *ad it finitum*. That, ultimately, is all that he wants for his life today: to be more than the man the Government says he is, the man described in the PSR. To be, instead, the man his mother sees when she looks at him.

Today, Shavarius deeply regrets the choices he made that led him to this point. If he could take it all back, he would, but he knows that is not possible. Instead, he has determined to make the best of the opportunity that has been given him, and to be the best man he can be from here on out. To that end, he intends to take advantage of whatever opportunities the Court and the justice system provide him. He intends to do whatever he can to rehabilitate himself. He asks only for those chances, for the Court to consider his life and to value rehabilitation over retribution.

11

## V.   ADDITIONAL SENTENCING FACTORS

### a.   INCARCERATION DURING THE COVID-19 PANDEMIC

Aside from the enumerated § 3553 factors, the Court may also wish to consider the fact that the period of incarceration that Mr. Smith has already served while awaiting trial in this case has been more punitive than it would have been under ordinary circumstances. With the COVID-19 pandemic now seemingly in recession across much of the United States, it is easy to forget that the past few years have presented unique challenges and dangers to citizens all across the social spectrum. This is perhaps truer of inmates and detainees than of any other class of persons.

State and federal prisoners, already deprived by their status of many privileges we take for granted, have suffered through a long period in which even their barest and most essential liberties were curtailed by the pandemic. Recreational time, education, prison jobs, library time, prison programming—all of these have been at times restricted or outright suspended during the pendency of the pandemic. The same is true of contact visitation, that most essential link to the outside world. These factors combine to create circumstances under which inmates are more isolated, more segregated, possessed of even fewer liberties than they would normally be.

Mr. Smith's incarceration has been no different. As noted above, he spent more than nine months in detention, during some of the most difficult circumstances presented by the pandemic. He was denied visitation from his friends and family. He was isolated for a large majority of his detention. And he was forced to reckon with the reality that his circumstances placed him at a higher risk of infection from the coronavirus than an ordinary person. His detention during the COVID-19 pandemic resulted in a period of incarceration that was fundamentally different than it would otherwise have been. These periods of detention—whether in a federal prison or at

A-107

home—were more restrictive, more punitive, more difficult, than they would ordinarily have been, and the undersigned respectfully submits that this fact must be accounted for at sentencing.

### b. THE LENGTH OF MR. SMITH'S PRIOR SENTENCES

As the Presentence Report notes at paragraphs thirty-seven to thirty-nine, Shavarius' longest sentence, prior to the instant case, was no more than three years. And those were just the imposed sentences. It appears from the PSR that Shavarius has never served longer twenty months in continuous custody. (*See* PSR at ¶ 38 (describing longest prior custodial sentence, which ran from November 14, 2018 to June 17, 2020)).

Accordingly, the period that Shavarius has spent in detention in the instant case is already approaching the longest custodial sentence of his life. A guideline sentence, then, is likely unnecessary from a specific deterrence perspective. That is, the deterrent effect of incarceration is more pronounced in someone like Shavarius, whose experience with incarceration is limited, than it might be for others. The same degree of specific deterrence could be achieved in Shavarius with a lesser sentence. As such, a guideline sentence would likely be far more severe than necessary to achieve the ends of the federal sentencing regime.

### VI.   CONCLUSION

Mr. Smith respectfully requests that the Court impose a sentence of 48 months incarceration. Such a sentence will serve to adequately punish him for his admitted criminal conduct, deter others, and promote respect for the law, all while giving Mr. Smith a chance to return to his family and pursue a healthy, productive life.

A-108

THE DEFENDANT
**SHAVARIUS SMITH**

**By:**      /s/ CT17505
              Francis L. O'Reilly
              Fed. Bar No.: CT17505
              1735 Post Road, Suite 2C
              Fairfield, CT 06824
              Phone: 203-319-0707
              Fax: 203 319-0128

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was electronically filed this 18th day of November 2022:

        **/s/ CT17505**
        Francis L. O'Reilly

14

A-109

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:21-cr-202 (JBA) |
| | : | |
| V. | : | |
| | : | |
| SHAVARIUS SMITH | : | November 18, 2022 |
| | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this sentencing memorandum in connection with defendant Shavarius Smith's sentencing hearing, currently scheduled for November 28, 2022. For the reasons detailed below, the Government asks that the Court adopt the findings of fact in the Presentence Report ("PSR") and impose a sentence of 70 months. This is within both Guidelines ranges originally calculated by the parties and below or at the low end of either revised Guidelines ranges with the defendant's higher Criminal History category. In the Government's view, such a sentence best balances the nature and seriousness of the offense, the need for specific deterrence and to protect the public against mitigating circumstances from the defendant's background.

## I.   BACKGROUND

The offense conduct underlying the charges here, laid out in paragraphs 9 through 16 of the Presentence Report ("PSR"), stem from an October 8, 2021 incident. A summary is repeated herein.

### A.   Offense Conduct

On October 8, 2021, after reports of gunfire and individuals loitering in the area were lodged with the New Haven Police Department ("NHPD"), officers responded to the Mill River housing complex at 657 Grand Avenue at approximately 11:15 p.m. Upon arrival, NHPD officers observed a group of males, who appeared to be trespassing, drinking alcohol and

1

listening to music next to a silver Volkswagen Jetta with dark-tinted windows.  One of the males was identified as the defendant, Shavarius Smith.  One NHPD officer noticed that the Jetta's engine was running and when he shined his flashlight inside, he observed a black handgun with a high-capacity magazine on the floorboard of the front driver's seat.  The Jetta was a rental car that had been reported as stolen out of Westport.

The NHPD's Bureau of Identification (the crime scene unit) was called to respond and they collected and processed the firearm, which was determined to be a black 9-millimeter caliber pistol with no serial number, containing one round of ammunition in the chamber and a 31-round high-capacity magazine loaded with 20 rounds of ammunition.  Upon locating the firearm, the officers subsequently searched the silver Jetta.  They located the key to the Jetta (which also had attached to it, a key fob belonging to a Toyota Rav); five white wax folds each containing a tan powder-like substance with a "Bulls" logo stamped in red ink; five white wax folds each containing a tan powder-like substance with no stamp; seven small green tinted Ziploc bags each containing a white, rock-like substance; one clear plastic bag twisted and knotted containing a white, rock-like substance; Shaverius Smith's Department of Correction paperwork; a rental agreement for the Volkswagen Jetta bearing GA RYE2674; a business card for a Connecticut adult probation officer; and $111.00 in U.S. currency.  The narcotics seized were field tested and tested positive for heroin and cocaine at a total weight of 50 grams.  Based on the amount of heroin and crack cocaine and the way the drugs were packaged, it was clear that they were intended for redistribution and not personal use.

NHPD officers subsequently obtained surveillance footage from a resident at the complex, which showed the Jetta pulling into the rear parking lot of 657 Grand Avenue at approximately 11:06 p.m. and reversing into the parking space and a dark figure exiting the car.

Using the card found in the vehicle, officers also contacted Mr. Smith's probation officer and were able to determine that he was on probation at the time and had a GPS ankle bracelet. The reports of the movement of that ankle bracelet matched the timing on the video and indicated that Smith was the individual who drove to the complex in the Jetta and then exited the car, leaving the firearm and drugs in the vehicle.

Additional surveillance footage was obtained which showed Mr. Smith in the Jetta at his last known address on October 8, 2021 at approximately 9:41 p.m., approximately an hour and twenty minutes before he was found with a firearm at the Mill River Crossing housing complex. He was wearing the same clothing as was later captured in the surveillance footage from the complex. Shavarius Smith left the residence at approximately 10:06 p.m. and drove to the complex.

The semiautomatic firearm recovered from the vehicle was identified as a black semiautomatic handgun with the marking "P80" on the hand grip. The gun was a "ghost gun" untraceable and with no serial number. The magazine was capable of holding thirty-one rounds of ammunition, but only twenty-one rounds were inside. An ATF Firearms Expert would testify that he examined four rounds of the ammunition recovered from within the firearm and determined that the ammunition was manufactured by Cascade Cartridges Incorporated (CCI/Speer), located in Idaho, and had thus traveled in interstate commerce.

**B.      Procedural History**

The defendant was arrested on a complaint on October 26, 2021. *See* Docket Entry No. 1. On November 17, 2021, the grand jury returned an indictment charging the defendant with Unlawful Possession of Ammunition by a Felon (Count One) and Possession with Intent to Distribute Controlled Substances (Count Two). *See* Dkt. Entry No. 11. On June 24, 2022, the

3

defendant agreed to plead guilty in front of Magistrate Judge Robert Spector to Count One of the plea agreement charging him with Unlawful Possession of Ammunition by a Convicted Felon. *See* Dkt Entry No. 34.[1]

C.      **Plea Agreement and Sentencing Guidelines Stipulation**

In the plea agreement, the parties disagreed as to whether the defendant's base offense level under U.S.S.G. § 2K2.l(a)(3) was 22 because the defendant committed the instant offense subsequent to sustaining one felony conviction of a controlled substance offense, that is, a Connecticut conviction for possession with intent to sell narcotics or 20 because that prior conviction did not qualify as a "controlled substance offense." *See* Dkt Entry No. 35 at 4. It was the Government's position at the time of the plea agreement, and remains the Government's position, that, under *Chery v. Garland*, 16 F. 4th 980 (2d Cir. 2021), the defendant's prior conviction qualifies as a "controlled substance offense." The Probation Officer reads *Chery v. Garland* as only covering Connecticut General Statues ("Conn. Gen. Stats.") § 21a-277. *See* PSR ¶ 5. However, the Government reads this case more broadly as extending to other sections of the Connecticut General Statutes. As detailed in the objections filed to the Presentence Report, Government counsel obtained and disclosed certified copies of the defendant's convictions. Those show that the defendant was convicted on November 14, 2018 under Conn. Gen. Stats. § 21a-278(b)(1)(A), which prohibits the manufacturing, distribution, sale etc… of a "narcotic substance." In the Government's view, a conviction for a "narcotic substance" would qualify as a controlled substance offense for the purposes of the Guidelines calculation.

As the Probation Officer notes because the parties incorrectly calculated Mr. Smith's criminal history, if Mr. Smith's base offense level is 22, after the additional enhancement the

---

[1] Findings and recommendations were issued by the magistrate judge on June 26, 2020 recommending that the Court accept the plea (*see* Dkt Entry No. 38), but the plea has not yet been formally accepted by this Court.

parties agree on and the subtraction for acceptance of responsibility, the defendant has a total offense level of 23 and with Criminal History Category V, faces a Guidelines range of 84 to 103 months.  If the Court finds that the prior conviction does not qualify, Mr. Smith would have a total offense level of 21 and with Criminal History Category V, a Guidelines range of 70 to 87 months.[2]

## II.    DISCUSSION

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence."  *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006).  The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid

---

[2] Defense counsel argues that a departure under *United States v. Fernandez*, 877 F.2d 1138, 1144-46 (2d Cir. 1989) is appropriate.  *See* Dkt. Entry No. 53 at 5.  However, considering the language in the plea agreement that "the parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate," the Government does not believe such a departure should be applied.  *See* Dkt Entry No. 35 at 4-5.  In any event, it is the Government's view that a sentence of 70 months is appropriate, which is within both ranges originally calculated by the parties.

unwarranted sentencing disparities; and (7) the need to provide restitution to victims.  *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness.  *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005).  The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)."  *Id.*

## A.   Section 3553(A) Factors

Here, the relevant factors weigh in favor of a sentence of 70 months.  *See* 18 U.S.C. § 3553(a).

### 1.   The Nature and Seriousness of the Offense Requires a Significant Sentence

The defendant possessed a loaded firearm and narcotics (including heroin and cocaine) packaged for street level distribution.  The handgun had a high-capacity magazine and had twenty rounds of ammunition inside.  The significance of that high-capacity magazine is recognized by the Guidelines, which add a four-level enhancement for possessing such a weapon and should also be accounted for in the sentence ultimately imposed.  There is simply no reason why any civilian would ever need a gun capable of firing that amount of rounds.  Moreover, the firearm was a "ghost gun"—assembled by an unlicensed manufacturer and designed to evade all of the regulations that apply to the firearms industry.  Perhaps most troubling, the defendant knew he was prohibited from possessing firearms as a felon and he further knew that he was prohibited from any criminal activity when he was on probation.  Yet, even while being tracked by Probation, he drove around in a stolen car, and entered a densely populated residential area with a high-capacity firearm and narcotics for redistribution.  He had a loaded firearm while wearing a GPS bracelet on his ankle.

6

Moreover, choosing to sell heroin and cocaine is also a serious offense as such drugs destroy communities and the lives of individuals.

### 2.    Shavarius Smith 's History and Characteristics

Shavarius Smith undoubtedly had a difficult upbringing after his father was murdered and he had to move between his mother and his aunt's houses and he also reports substance abuse issues.  PSR ¶¶ 46-47, 56.  Defense counsel ably describes in detail the challenges that he faced. *See* Dkt. Entry No. 6-10.  However, he was supported by both his mother and his aunt and states that he was not exposed to abuse, violence or drugs at home.  His exposure to violence came outside of the home as a result of his living in the Farnam Court housing project.  That exposure to violence may help explain why he has turned to some of the criminal activity he has engaged in, but it does not justify it.  And that exposure to violence is tragic, but the defendant's decision to himself carry a loaded firearm is an affirmative act that does not take him away from the violence.  To the contrary, it helps insert him within it.  There are dozens of people living in the Farnam Court housing project who have never decided to illegally possess a loaded firearm with an extended magazine.

Moreover, his criminal history for his age is significant.  Mr. Smith has prior convictions for Larceny in the 2nd Degree; Interfering With/Resisting and Officer; Assault in the 3rd Degree; and Possession with Intent to Sell Narcotics (while on Probation); and Possession of a Controlled Substance.  PSR ¶¶ 37-39.  His conduct and interactions with law enforcement are also troubling.  During his first arrest, when officers attempted to apprehend him, the defendant struck an officer in the face and bloodied his nose.  PSR ¶ 37.  While in custody with the Department of Corrections, he has incurred 24 disciplinary tickets including four since being arrested for the incident here relating to gang affiliation and for assault.  PSR ¶ 39.

### 3.   A Lengthy Sentences is Necessary to Promote Respect for the Law and Provide Just Punishment

In 2021, according to NHPD records, there were 110 non-fatal shooting incidents in the city and twenty-six homicides.  In October of 2021, when Smith was arrested with a firearm, there were eight non-fatal shootings and one homicide.  This year already, the city is at 104 non-fatal shooting incidents.  New Haven has a population of just over 135,000.  These numbers are horrifying.  They are also important because they demonstrate that possession of a firearm is not really a victimless crime.  The more firearms on the streets, the more likely that these statistics will stay as high as they are and the more likely that innocent people will continue to get caught in the crossfire, will live in fear of getting shot or losing someone to gun fire, and will normalize and accept the regular sounds of gunshots.

If the defendant, after multiple prior run-ins with law enforcement, after convictions and serving time in prison, having been released from state custody one month prior to this incident, and while being on probation and wearing a GPS bracelet cannot manage to stay away from firearms and drugs, a significant federal sentence is needed to promote respect for the law and to provide just punishment.

### 4.   The Need to Accomplish Specific and General Deterrence

There is a need for specific deterrence here.  Smith twice engaged in criminal conduct while on State Probation.  Clearly state supervision has not dissuaded him and so it can only be hoped that federal supervision will have some effect.  Similarly, a significant sentence here will dissuade others from engaging in similar activity and from using and possessing ghost guns and firearms with high-capacity magazines. The Government agrees with Probation's assessment that the defendant has the potential to return to society as a law-abiding citizen upon release, but

8

without a significant period of imprisonment to dissuade him from ever picking up a firearm again,
success upon his return appears much less likely.

**5.      Other Considerations**

Fortunately, Smith's incarceration did not occur during the height of the COVID-19
pandemic.  To the extent he has missed out on programming, his time in Bureau of Prisons
custody will provide an opportunity for him to take advantage of such programming.  It is worth
underscoring that Government counsel also wholly agrees with defense counsel's assessment
that "Mr. Smith still has hope that the pattern of his life is not destined to repeat itself," *see* Dkt
Entry No. 53 at 11, and that Mr. Smith can and should reenter society and reach the potential that
he has as a law-abiding member of society.  In the Government's view a variance to 48 months,
just does not adequately punish the offense or provide adequate deterrence to prevent Mr. Smith
from reoffending.

A-118

## III.    CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to adopt the factual

findings in the Presentence Report and to impose a 70-month sentence in order to best balance all

the 3553(a) factors.


Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

  _/s/ Jocelyn Courtney Kaoutzanis_
JOCELYN COURTNEY KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT30426
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, Connecticut 06510
(203) 821-3700

10

A-119

## **CERTIFICATION**

I hereby certify that on November 18, 2022 a copy of the foregoing was filed electronically

with the court and served by mail on anyone unable to accept electronic filing.  Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.

       */s/ Jocelyn Courtney Kaoutzanis*
      JOCELYN COURTNEY KAOUTZANIS
      ASSISTANT UNITED STATES ATTORNEY

A-120

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3   _____ )
     UNITED STATES OF AMERICA,    )
 4                                ) No. 3:21-cr-00202-JBA
                       Plaintiff, )
 5                                ) November 28, 2022
     v.                           )
 6                                ) 11:05 a.m.
                                  )
 7   SHAVARIUS SMITH,             )
                                  ) 141 Church Street
 8                 Defendant.     ) New Haven, Connecticut
     _____ )
 9

10             MOTION HEARING/SENTENCING

11

     B E F O R E:
12
            THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
13

14   A P P E A R A N C E S:

15    For the Government:

16         UNITED STATES ATTORNEY'S OFFICE
                157 Church Street, 25th Floor
17              New Haven, CT 06510
                203-821-3756
18              E-mail: jocelyn.kaoutzanis@usdoj.gov
           BY: JOCELYN J. COURTNEY KAOUTZANIS, AUSA
19

20    For the Defendant:

21         LAW OFFICE OF FRANCIS L. O'REILLY
                1735 Post Road, Suite 2C
22              Fairfield, CT 06824
                203-319-0707
23              E-mail: attflor@aol.com
           BY: FRANCIS L. O'REILLY, ESQ.
24
                Official Court Reporter:
25              Corinne T. Thomas, RPR
                   (203) 809-0848
```

A-121

2

```
 1              (Call to Order, 11:05 a.m.)
 2          THE COURT:  Good morning, counsel, ladies and
 3    gentlemen.  Please be seated.  We are here in the
 4    matter of United States of America vs. Shavarius
 5    Smith, 21-cr-202.
 6          May I please have appearances of counsel
 7    starting with the government.
 8          MS. KAOUTZANIS:  Good morning, Your Honor.
 9          Jocelyn Courtney Kaoutzanis for the
10    government and with me at counsel table is ATF Special
11    Agent Sam Fuller.
12          MR. O'REILLY:  Good morning, Your Honor.
13          Francis O'Reilly on behalf of Shavarius Smith
14    who is present in court.
15          THE COURT:  Good morning, Mr. O'Reilly.  Good
16    morning, Mr. Smith.
17          And also present with us is the probation
18    officer Xenia Gray.
19          Mr. Smith is before the Court to be sentenced
20    today for his conviction by his guilty plea of felon
21    in possession of ammunition in violation of 18 United
22    States Code 922(g)(1) and 924(a)(2).
23          Ms. Kaoutzanis, there is no victim
24    notification relevant, right?
25          MS. KAOUTZANIS:  That is correct, Your Honor.
```

A-122

1    THE COURT:  And with respect to the factual

2  statements, not the conclusions to be drawn from them,

3  I do not see in the briefing that there are disputes

4  on the factual statements necessary for the

5  determination of a sentence here; is that correct?

6    MS. KAOUTZANIS:  That's correct from my

7  perspective, Your Honor.

8    MR. O'REILLY:  That's correct.  However,

9  there are some issues on the sentencing guideline

10  calculation, Your Honor.

11    THE COURT:  Right.  And those are at most a

12  mixture of fact and law.

13    MR. O'REILLY:  Yes.

14    THE COURT:  Okay.  I'm going to adopt the

15  factual statements in the presentence report and we

16  will get to the dispute as to the appropriate advisory

17  guidelines.

18    All right, Mr. Smith, have you read the

19  presentence report that Ms. Gray has prepared on you?

20    THE DEFENDANT:  Yes, Your Honor.

21    THE COURT:  And do you understand it?

22    THE DEFENDANT:  Yes, Your Honor.

23    THE COURT:  Have you discussed it with your

24  attorney?

25    THE DEFENDANT:  Yes.

A-123

4

```
1          THE COURT:  Do you -- have you given any
2  input that you wanted to about the contents of that
3  report either through your lawyer or directly to
4  Ms. Gray?
5          THE DEFENDANT:  Yes.
6          THE COURT:  Any reason not to impose sentence
7  today?
8          THE DEFENDANT:  No.
9          THE COURT:  Very well.  In determining the
10 advisory sentencing guideline using the November 2021
11 manual, the presentence report sets out the following
12 -- you all have the second addendum from the probation
13 officer?
14         MR. O'REILLY:  Yes, Your Honor.
15         MS. KAOUTZANIS:  Yes, Your Honor.
16         THE COURT:  Okay.  Because that impacts one
17 of these guidelines.  And then when you speak, you are
18 welcome to remove your mask.
19         Under 2K2.1(a)(4)(B) for a firearm capable
20 of -- excuse me just a moment, capable of accepting a
21 large capacity magazine while he was a prohibited
22 person, that is an Offense Level 20.
23         I think we've come to the point of dispute
24 under 2K2.1(a)(3) in which the presentence report now
25 and the government urges an Offense Level 22 because
```

1  it involved a semiautomatic firearm and was after

2  conviction for a controlled substance offense, that is

3  possession with intent to sell.  The briefing outlines

4  the parties' positions with respect to whether the

5  enhancement applies.

6         Let me just go through the rest to make sure

7  at least the remaining portion is not disputed.  Under

8  2K2.1(b)(6)(B) for firearm possessed in connection

9  with another felony, that is the possession of heroin

10  and cocaine packaged for resale, that is an increase

11  of four.  Because Mr. Smith has accepted personal

12  responsibility for this offense, he's entitled to a

13  two-level reduction under 3E1.1(a).

14         I look to the government for any further

15  reduction.

16         MS. KAOUTZANIS:  Yes, Your Honor.  The

17  government would also move for the additional point

18  for acceptance of responsibility.

19         THE COURT:  All right.  Your motion is

20  granted and three levels will be reduced.

21         I'll hear from you, Mr. O'Reilly, with

22  respect to the enhancement for -- under 2K2.1(a)(3).

23         MR. O'REILLY:  Thank you, Your Honor.  I

24  guess before I would begin with that, Your Honor, I

25  would like to add that the probation officer had

A-125

1   calculated the criminal history as a Category V.  In

2   the plea agreement, we had contemplated a Category IV.

3   I've advanced in my memo a request for the Court to

4   make a departure under *Fernandez.*  And so I would just

5   like to bring that briefly to the Court's attention

6   before I begin my argument on whether that two-level

7   enhancement for the drug offense should apply here.

8            Your Honor --

9            THE COURT:  And you both -- both sides

10  calculated a Criminal History IV at the time you

11  negotiated the plea and the probation officer has

12  correctly concluded that it is a Criminal History V,

13  correct?

14           MR. O'REILLY:  Yes, Your Honor.

15           THE COURT:  Would you like to take your mask

16  off while you argue?

17           MR. O'REILLY:  Yes, I would.  Thank you.

18           So I haven't briefed this issue regarding the

19  enhancement as thoroughly as I would have liked, Your

20  Honor, because I thought at least up until last

21  Wednesday that probation was in agreement that it did

22  not apply, and then when I was preparing this morning,

23  I looked and I saw the second addendum.  So I quickly

24  started to prepare for that argument in greater detail

25  this morning.

A-126

7

```
 1          So forgive me for -- a little bit, but I did
 2   review the second addendum with Mr. Smith prior to our
 3   appearance here.  So he's fully aware of it and, in
 4   fact, he was aware when we met before and discussed --
 5   we met about a week ago and discussed these issues.
 6   And so we was aware that this potentially was an issue
 7   that the government was seeking this two-level
 8   enhancement and we were opposing it.  But I think the
 9   complexion of it changed when probation then filed the
10   second addendum saying they ultimately agreed with the
11   government.
12          It's our position, Your Honor, that the
13   government and probation are incorrect in their
14   assessment of that two-level enhancement and I would
15   point to two facts.  One is there's a case of Your
16   Honor's, it's United States v. Epps, it's 322 F.Supp
17   299, it's a 2018 case, where Your Honor held that
18   21a-277 was categorically overbroad and would
19   therefore be inapplicable.
20          And I know that the Second Circuit has now
21   come out with the immigration case, the Chery case,
22   that the government is relying upon to say no, in
23   fact, Second Circuit has weighed in on this.  Our
24   position would be is that that is -- it's an
25   immigration case.  There hasn't been an analysis of
```

1  the statute, you know, based on what its impact on a

2  criminal case enhancement would be, and, therefore,

3  I'm not sure exactly what the Second Circuit's

4  position would be on this issue.

5       Secondly, Your Honor, I would point out that

6  the statute that Mr. Smith was convicted on was not

7  the 27 -- I'm sorry, 21a-277 statute that was analyzed

8  in *Chery*.  He's convicted under 21a-278b, which is a

9  different statute, and my look at that statute looks

10 that that statute is also overbroad as it relates to

11 the federal statute in that -- give me one second --

12 278a criminalizes the administering of a narcotic

13 substance and 841 does not.

14      So a brief look at it says that the -- looks

15 to me as if 21a-278, which is the statute that Mr.

16 Smith was convicted under that's at dispute here, is

17 overbroad as it relates to two -- well, I'm mixing my

18 words up here, but 21-841 federal criminal statute,

19 Your Honor.

20      And so, therefore, for both reasons, one is

21 that the immigration case is not -- it's not clear

22 what the proper analysis under that format is to

23 determine whether the analysis is correct for the

24 statute 21a-277, and then even if Your Honor was to

25 consider that as appropriate, that that's analyzing a

A-128

9

1 statute that Mr. Smith was not convicted of. He was

2 convicted of 21a-278b which in itself is overbroad in

3 relation to 21-841 USC.

4 THE COURT: And you say it's overbroad

5 because 841 doesn't criminalize administration of a

6 narcotic substance and 21a-278b does?

7 MR. O'REILLY: Yes, Your Honor. That's my --

8 I was looking at it quickly as much as I could this

9 morning, but yes, that's my take on that statute.

10 THE COURT: All right. Ms. Kaoutzanis.

11 MS. KAOUTZANIS: Yes, Your Honor?

12 THE COURT: How does the government respond

13 to Mr. O'Reilly's analysis?

14 MS. KAOUTZANIS: Your Honor, I think, first

15 of all, with regard to the earlier *Epps* case that

16 Mr. O'Reilly cited, as I think he correctly noted that

17 was before the Second Circuit's decision in *Chery v.*

18 *Garland* in 2021, which, as we read it, affected a

19 change in the prior qualifying convictions for a

20 controlled substance offense. So I think that Chery

21 v. Garland is directly on point for 21a-277 and the

22 case law on this topic does not distinguish between

23 what's being considered as controlled substance

24 offenses in the immigration context versus the context

25 here with regards to the sentencing guidelines.

1      As for 21a-278, which is the subsection that

2  the defendant's convicted under here, *Chery v.*

3  *Garland* does not limit the analysis to only 21a-277

4  but extends more broadly.  And Connecticut's general

5  statute 21a-278(b)(1)(A) prohibits the manufacturing,

6  distribution, sale, et cetera of a narcotic substance

7  which would qualify as a controlled substance for the

8  purposes of the guideline's calculation.

9      And with regards to Mr. Smith specifically,

10  the government has disclosed initially in this case a

11  certified copy of his conviction which specified the

12  exact subsection which he was convicted under, that

13  (b)(1)(A) subsection which specifically prohibits the

14  manufacturing, distribution, sale of a narcotic

15  substance.

16      THE COURT:  So your position is that because

17  the exact basis for Mr. Smith's state court conviction

18  can be ascertained from the certified record, that the

19  fact that there's a bit of discongruity between 841

20  and 278(b) doesn't matter.

21      MS. KAOUTZANIS:  That is exactly right, Your

22  Honor.  There are some subsections of this statute

23  that I do not think would qualify, but the one that he

24  is convicted under does qualify.

25      THE COURT:  Qualifies as a predicate narcotic

11

1   offense?

2       MS. KAOUTZANIS:  As a prior controlled

3   substance offense under the guidelines.

4       THE COURT:  Any response, Mr. O'Reilly,

5   particularly to the specific factual circumstances of

6   this case and what can be ascertained from state

7   records on what his conviction actually was?

8       MR. O'REILLY:  I have nothing beyond what the

9   government has provided with their certified copy of

10  the conviction, Your Honor.  I would just add, though,

11  that *Chery* doesn't address this statute.  There's no

12  analysis in *Chery* of this statute and whether this

13  statute would be considered a controlled substance

14  offense and I think the fact that *Chery's* in the

15  context of an immigration case gives it maybe some

16  less precedential weight than if it was a case that

17  was actually analyzing the 21a-278(b)(1)(A) statute,

18  Your Honor.

19      THE COURT:  So are you saying that *Chery* just

20  doesn't enter into this analysis or that it does not

21  affect the change regarding prior qualifying

22  convictions for controlled substances that the

23  government argues?

24      MR. O'REILLY:  I'm not sure I understand the

25  difference in the question, Your Honor.  What I'm

12

```
 1    saying is that that Chery hasn't -- Chery's analyzing
 2    277, 21a-277, which is the Connecticut -- which is a
 3    Connecticut drug statute.  This is a different statute
 4    that Mr. Smith was convicted under, it's 21a-278(b)
 5    and while it addresses the 21a-277 statute, it doesn't
 6    address the statute that Mr. Smith was convicted of.
 7           And I think the fact that it's an immigration
 8    case and it's not analyzed in the context of the
 9    criminal case, that to say that it encompasses or it
10    is broad enough to encompass 278(b), the statute that
11    Mr. Smith has been convicted of previously, I would
12    think is an inappropriate extension of Chery to
13    encompass this statute which in our view is overbroad.
14           THE COURT:  Does the government want to
15    respond any further?
16           MS. KAOUTZANIS:  Your Honor, I mean, to the
17    extent it would be helpful to the Court, I would be
18    happy to brief this in further detail.  I think that
19    just looking at the language of Chery -- there is
20    nothing in Chery that cabins the analysis to just
21    21-277.  So I think the principles that Chery
22    articulates would apply as well to the certain
23    subsections of 278, and in this case, the (b)(1)(A)
24    subsection would apply.
25           THE COURT:  So here is the issue,
```

13

1   Mr. O'Reilly has impressively risen to the occasion of
2   late notice that the probation report changed and so
3   he has expanded and deepened his analysis.  Would it
4   be helpful to have some supplemental briefing on this
5   issue rather than, for instance, taking a rather long
6   recess while I look up the analysis that defendant
7   urges versus the government?
8           MR. O'REILLY:  Your Honor, I think the
9   opportunity to brief it might be the better way to go.
10          THE COURT:  I'd feel more comfortable doing
11  that.  There is a new analysis that's being urged and
12  I would like both sides to have the opportunity to
13  thoughtfully address that.  Perhaps we can continue
14  with the rest of our sentencing hearing
15  notwithstanding the fact that I can't ascertain today
16  what the advisory guidelines are.  Shall we do that?
17          I believe there are people in the courtroom
18  today, I don't know we whether they wish to be heard,
19  but it's -- I'd --
20          MR. O'REILLY:  Your Honor, his mom is here,
21  Ms. Evans.
22          THE COURT:  Good morning, Ms. Evans.
23          MR. O'REILLY:  My suggestion is I would
24  prefer to have a more fulsome hearing at the second --
25  I mean, at the next hearing, if that's the case.

14

```
 1          I think she should be -- you would be able to
 2   come to that, right?
 3          THE COURT:  Let's see if we can find a good
 4   date for that.
 5          MR. O'REILLY:  I'm starting a trial with
 6   Ms. Kaoutzanis next Tuesday through Christmas, Your
 7   Honor.  Hopefully it will be over before Christmas.
 8          THE COURT:  Does that mean that you need to
 9   get me your supplemental briefing by Monday, the 5th?
10          MR. O'REILLY:  Well, I was hoping -- I was
11   hoping maybe we could do the sentencing the first week
12   of January and we could get something to you between
13   Christmas and New Year.
14          THE COURT:  All right.  Let's do this, see if
15   this works with people's schedule, if we continue
16   scheduling -- excuse me, sentencing to Wednesday,
17   January 4th, at 10 a.m.
18          MR. O'REILLY:  Your Honor, I have a
19   sentencing with Judge Bolden at 11 a.m. that morning.
20   The rest of the day is free.  So I could -- I mean, I
21   could be here at 9 a.m. or 12:30 for the balance of
22   the day.
23          THE COURT:  Would 12:30 work with your
24   schedule, Ms. Kaoutzanis?
25          MS. KAOUTZANIS:  Yes, Your Honor.  Thank you.
```

A-134

15

| | |
|---|---|
| 1 | THE COURT: Okay. Wednesday January 4th at |
| 2 | 12:30. |
| 3 | Ms. Evans, does that work for you? |
| 4 | MS. THOMASINA EVANS: Yes. |
| 5 | THE COURT: And then I'll get the |
| 6 | supplemental briefing. You're on trial until |
| 7 | December 25th? |
| 8 | MR. O'REILLY: December 22nd, I think |
| 9 | Ms. Kaoutzanis is saying. We're hoping much earlier |
| 10 | than that. |
| 11 | MS. KAOUTZANIS: We're hopefully optimistic |
| 12 | it will be earlier than that. |
| 13 | THE COURT: Does that mean you can get me a |
| 14 | brief by December 23rd? |
| 15 | MR. O'REILLY: That might be optimistic, Your |
| 16 | Honor, just in case -- we could shoot for the 23rd |
| 17 | with the caveat -- |
| 18 | THE COURT: I don't want to keep moving the |
| 19 | dates. |
| 20 | MR. O'REILLY: No. The 5th, we could stick |
| 21 | with the 5th, but if we just had the caveat we might |
| 22 | need a few extra days depending on when the trial |
| 23 | ends, we could inform chambers. |
| 24 | THE COURT: I want you to get me your briefs |
| 25 | by December 27th because that will enable anybody who |

A-135

16

1  feels compelled to file a reply by January 3rd by

2  noon.  Okay?

3          MR. O'REILLY:  Yes, Your Honor.

4          All right.  And Ms. Gray, you're okay with

5  that schedule?

6          THE PROBATION OFFICER:  Yes, Your Honor.  I

7  will not be at the sentencing on that day.

8          THE COURT:  Okay.  You will arrange and brief

9  a substitute?

10          THE PROBATION OFFICER:  Yes, Your Honor.

11          THE COURT:  Okay.  Thank you.  All right.  I

12  guess that's what we can complete today.  So I will

13  have to say I'll see you next year.  All right.

14          Any question, Mr. Smith, about what we're

15  doing and why we're doing it?

16          MR. O'REILLY:  I'll explain it to him, Your

17  Honor.  He understands, Your Honor, and -- but he's

18  concerned.  He was hoping to be moved up to Wyatt

19  today.  I told him that you don't control those

20  issues, that the marshals do, but we're hoping that he

21  gets transferred to Wyatt today.

22          THE COURT:  Well, maybe it will happen and

23  maybe it won't, but I leave that to the marshals.

24  He's back in state court on November 30th; is that

25  right?

17

```
 1              MR. O'REILLY:  I don't know, Your Honor.

 2              THE COURT:  Is that not what was in the

 3    second amendment?  Yeah.  Pending charges under

 4    paragraph 43, the next state court date is

 5    November 30th.

 6              MR. O'REILLY:  Okay.

 7              THE COURT:  And then I will get an update

 8    from probation on the outcome of that.  All right

 9    then.  I thank you very much and we stand in recess.

10              (Proceedings adjourned, 11:36 a.m.)

11

12              C E R T I F I C A T E

13

14    RE:   UNITED STATES OF AMERICA v. SHAVARIUS SMITH
                    No. 3:21-cr-00202-JBA-
15

16              I hereby certify that the within and

17    foregoing is a true and accurate transcript taken in the

18    aforementioned matter to the best of my skill and ability.

19

20              /s/ Corinne T. Thomas

21              CORINNE T. THOMAS, RPR
                   Official Court Reporter
22              United States District Court
                     141 Church Street
23              New Haven, Connecticut 06510
                      (203) 809-0848

24

25
```

**UNITED STATES DISTRICT COURT**
**District of Connecticut**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:21-CR-202(JBA) |
| | : | |
| v. | : | |
| | : | |
| SHAVARIUS SMITH | : | DECEMBER 21, 2022 |

**SUPPLEMENTAL MEMORANDUM OF LAW REGARDING PRIOR CRIMINAL**
**SENTENCE AND U.S.S.G. § 2K2.1**

The defendant in the above-captioned case, Shavarius Smith, respectfully submits this memorandum as an aid to the Court in determining the applicable advisory guideline range. As the Court is aware, the parties presently disagree regarding the application of the Guidelines to Mr. Smith, specifically, whether his November 14, 2018 conviction in the State of Connecticut for Possession with Intent to Sell a Narcotic Substance by a Non-Dependent Person, in violation of C.G.S. § 21a-278, constitutes a controlled substance offense within the meaning of U.S.S.G. § 2K2.1. If it does, Mr. Smith's base offense level is increased by two. If it does not, the base offense level remains 20. For the reasons stated herein, Mr. Smith's prior conviction is not a controlled substance offense.

As an initial matter, courts in this jurisdiction have, for a number of years, recognized that Connecticut's general statute governing possession with intent to sell, C.G.S. § 21a-277(a), is categorically overbroad. *See, e.g., United States v. Epps,* 322 F. Supp. 3d 299 (D. Conn. 2018). However, as the Probation Office noted when it filed the Final Presentence Report, Mr. Smith's prior conviction did not arise under § 21a-277(a), but rather under § 21a-278. The Probation Office appears to have initially concluded, as did the undersigned, that this statute was

categorically infirm for much the same reason as § 21a-277(a). However, at some point following the filing of the Final Presentence Report, the Probation Office changed its opinion, and now avers that "Mr. Smith's November 14, 2018 conviction qualifies as a controlled substance offense pursuant to *Chery v. Garland* with the understanding that when considering prior convictions under C.G.S. § 21a-278(b), such convictions are analyzed under the modified categorical approach and a conviction for a 'narcotic substance' would qualify as a controlled substance offense for the purposes of the Guidelines calculation." (ECF No. 58.)

Respectfully, the basis for this about-face is unclear.

To begin with, *Chery v. Garland,* 14 F.4th 980 (2d Cir. 2021), which is cited as the sole basis for the above-referenced change in analysis, is actually of little use to the Court in deciding the precise issue implicated here. *Chery* is an immigration decision, not a criminal law decision. *Chery* also dealt with a different criminal statute. And finally, as discussed in greater detail herein, *Chery* has been largely rendered ineffectual, at least in the criminal law context, by the operation of intervening Second Circuit precedent.

I.   ***Chery v. Garland***

Beginning where the Government and the Probation Office began their analysis, it is worth noting at the outset that *Chery* is not a criminal case. It is instead an immigration and removal decision, which as the Second Circuit has repeatedly noted, presents a different legal and factual context. *See, e.g., United States v. Gibson,* No. 20-3049, slip op. at 34 (2d Cir. Dec. 6, 2022) ("Legally, an alien removal proceeding is not a criminal prosecution.")

Moreover, *Chery* did not address § 21a-278, the statute of conviction in this case. Instead, it rested its holding on a change in the intervening law governing § 21a-277(a). Specifically, the *Chery* court held, without much in the way of analysis, that a Connecticut Supreme Court

decision which altered the meaning of the term "offer" within § 21a-277(a) operated to bring that statute back in line with the Controlled Substances Act (CSA), at least insofar as the specific acts proscribed by both sets of statutes. *Id.* at 985 (discussing relationship between *State v. Webster* and *United States v. Savage*). With respect to the specific substances prohibited by the Connecticut drug schedules and the CSA, the *Chery* court stated simply that "Connecticut did not criminalize narcotics that were not included in the federal schedules at the time of petitioners' convictions." *Id.* at 986.

The instant case directly implicates not § 21a-277(a), the statute at issue in *Chery*, but rather a different, but admittedly related statute, C.G.S. § 21a-278. That statute, though it operates by the use of similar language, criminalizes different conduct than its companion § 21a-277(a). As the *Chery* court noted, § 21a-277(a) punishes "[a]ny person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." *Chery,* 16 F.4th at 984 (quoting C.G.S. § 21a-277(a)). § 21a-278(b) though, states that a person may not "manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter or chapter 420f, a narcotic substance," where such is person is not "at the time of the commission of the offense, a drug-dependent person." C.G.S. § 21a-278(b). § 21a-277(a) is therefore a different offense from § 21a-278(b). More specifically, § 21a-277(a) is a lesser included offense of § 21a-278. *See, e.g., State v. Bradley,* 60 Conn. App. 534 (2000).

3

The Government and the Probation Office might contend that these two statutes are similar and thus susceptible to the same analysis, but to do so would be to ignore the entire essence of not only the *Chery* decision, but all other categorical approach precedents. That is, in performing a categorical analysis of a state criminal statute, a portion of the Court's task—as the *Chery* court made clear—devolves to comparing the specific acts proscribed by both the state and federal statutes. The *Chery* court performed this task, and determined that § 21a-277(a) and the federal statutes proscribed the same conduct. But § 21a-278, as a greater offense than § 21a-277(a), comes with different components. It is a statute for which there is no present match under the precise language of the Controlled Substance Act. *Compare* C.G.S. § 21a-278(b) *with* 21 U.S.C. § 841. There is no federal drug statute within the CSA that makes allowances as a matter of fact and law for the status of the defendant as a "drug-dependent person," as § 21a-278 specifically does. Thus, to hold as the Government and the Probation Office recommend, that § 21a-278 is a categorical match for the CSA drug statutes, effectively requires holding either that the additional language of § 21a-278 is meaningless, or that § 21a-278 and §21a-277 are functionally identical, notwithstanding the fact that one is a lesser included offense of the other.

Such a holding would necessitate wading deep into the semantic thicket of the categorical approach, guided only by the faint light of a brief, largely conclusory immigration decision interpreting a different state statute. Thankfully, as discussed in greater detail herein, that dark journey is both unnecessary and unwarranted.

**II.    *United States v. Gibson***

Happily, *Chery v. Garland* is mostly a red herring in the context of this case. As detailed above, the analysis in *Chery* is largely inapposite here. But even if it were, even if it were a criminal law decision, and even if its holding reached the applicable statute here, still it would be

mostly useless to the Court in deciding the precise question raised by the instant case. That question, and the proper analysis to be deployed in reaching an answer, was addressed earlier this month, when the Second Circuit decided *United States v. Gibson,* a case which involved not the Immigration and Nationality Act, but rather a categorical analysis of New York state drug offenses in the career offender context. No. 20-3049, slip op. (2d Cir. Dec. 6, 2022).

The defendant in *Gibson* faced a similar problem to the problem that Shavarius Smith now faces: the prospect of an increase to his guidelines on the basis of a prior conviction arising under state law. In *Gibson,* the state law was the law of New York, and the guidelines were the career offender provisions of Chapter Four. At sentencing, the Government argued that Gibson was a career offender based, in pertinent part, on his 2002 conviction for Criminal Sale of a Controlled Substance in the Third Degree. *Id.* at 8. However, the Government also recognized and conceded that the State of New York's drug schedules had diverged from the CSA in 2015. *Id.* at 10. The question in *Gibson* then became one of timing, or which versions of the applicable drug statutes to compare for categorical approach purposes.

The specific and narrow holding of *Gibson*—that in assessing state offenses under the career offender rubric, the district courts should use the so-called "time of sentencing," or perhaps even a "time of commission," approach—is less crucial than everything else the Court had to say of the comparison between the federal and state offenses. Specifically, the Court made clear that it was operating from the initial principle that New York's drug schedules and the CSA had diverged in 2015, when the federal schedules removed the substance Naloxegol, which continues to be controlled at a state level.[1] And the Court naturally accepted the long-established

---

[1] As noted above, the Government in *Gibson* conceded this issue in the District Court, and so it was not actually before the Second Circuit in *Gibson.* However, if the Second Circuit had disagreed with this initial principle, it would, presumably, have returned the case to the district court for further consideration.

precept that if a state law criminalizes a broader range of conduct than its federal counterpart, then it is not a categorical match and cannot serve as the basis for an enhancement at sentencing. All that remained was the question of timing.

**III.  Application**

Here, though, there is no such timing concern. Applying the *Gibson* analysis to the instant case yields just one possible result, no matter the timing.

Start from the beginning. Compare the CSA to the drug schedules in effect in the State of Connecticut. Use any of the timing approaches referenced in *Gibson.* Under the so-called "time-of-prior-conviction" approach advocated by the Government in *Gibson* and rejected by the Second Circuit, the 2018 CSA is compared to Connecticut's drug schedules. Under the Second Circuit's proposed "time-of-commission" approach, the 2021 CSA is compared to the Connecticut drug schedules. And under the "time-of-conviction" approach, the 2022 CSA is compared to the state schedules. No matter how you slice it, the same problems emerge.

The first, and most obvious given the directives of *Gibson,* is the Naloxegol problem. That is, just like the New York statutes at issue in *Gibson,* the Connecticut drug schedules continue to criminalize Naloxegol, while the version of CSA in effect since 2015 does not. Thus, the Connecticut drug statutes are broader, and criminalize a greater range of conduct, than their federal counterparts. They are therefore categorically overbroad.

It is a similar story with respect to ioflupane, a "cocaine-related" substance that was removed from the CSA schedules in 2015 because of its potential value in diagnosing Parkinson's disease. 80 Fed. Reg. at 54716; *see also* 21 C.F.R. § 1308.12(b)(4)(ii) (2017). Connecticut statutes make no exception for this substance, but the CSA does. Again, the Connecticut drug statutes are categorically overbroad.

6

Finally, Connecticut's drug schedules criminalize certain isomers of cocaine, which the CSA does not. Cocaine includes stereoisomers (i.e., optical, and geometric isomers) and non-optical, non-geometric isomers (e.g., constitutional, and positional isomers). *See United States v. Holmes*, 2022 WL 1036631 at 7 (E.D.N.Y., April 6, 2022) (Garaufis, J.) (explaining the numerous types of and subtypes of isomers). Judge Garaufis in *Holmes* conducted a comprehensive review of the New York drug schedule, which is functionally equivalent to the Connecticut schedules with respect to cocaine isomers, and concluded that the "New York Law covers non-optical, non-geometric isomers in its definition of isomers of cocaine, whereas the CSA does not." *Id.* at 11; *accord. United States v. Fernandez-Taveras*, 2021 WL 66485 (E.D.N.Y., Jan. 7, 2021) (Garaufis, J.); *United States v. Baez-Medina*, 20 Cr 24 (S.D.N.Y.) (Koeltl, J.); *United States v. Ferrer*, 20 Cr. 650 (S.D.N.Y.) (Buchwald, J). Again, as above, the Connecticut drug statutes are categorically overbroad.

And, as detailed above, this is the analysis regardless of what the Government and Probation Office may have to say about *Chery. Chery,* respectfully, does not answer the question before this Court. That question, as *Gibson* makes clear, is susceptible to only one possible answer: the Connecticut drug statute under which Mr. Smith was convicted in 2018 is categorically overbroad. It cannot serve as the basis for a § 2K2.1 enhancement, and the Court should decline to so apply it.

Respectfully Submitted:

THE DEFENDANT
**SHAVARIUS SMITH**


**By:**      **/s/ CT17505**
              Francis L. O'Reilly

A-144

Fed. Bar No.: CT17505
1735 Post Road, Suite 2C
Fairfield, CT 06824
Phone: 203-319-0707
Fax: 203 319-0128

Justin C. Pugh
Fed. Bar No.: CT 30655
315 Post Road West, Suite 105
Westport, CT 06880
Phone: 203-583-9103

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing was electronically filed this 21st day of December 2022:

_____**/s/ CT17505**_____
Francis L. O'Reilly

8

A-145

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF CONNECTICUT
 2

 3   _____ )
     UNITED STATES OF AMERICA,      )
 4                                  ) No. 3:21-cr-00202-JBA
                    Plaintiff,      )
 5                                  ) January 25, 2023
     v.                             )
 6                                  ) 11:21 a.m.
                                    )
 7   SHAVARIUS SMITH,               )
                                    ) 141 Church Street
 8                  Defendant.      ) New Haven, Connecticut
     _____ )
 9

10               SENTENCING/MOTION HEARING

11

     B E F O R E:
12

         THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
13

14   A P P E A R A N C E S:

15   For the Government:

16       UNITED STATES ATTORNEY'S OFFICE
             157 Church Street, 25th Floor
17           New Haven, CT 06510
             (203) 821-3756
18           E-mail: jocelyn.kaoutzanis@usdoj.gov
         BY: JOCELYN J. COURTNEY KAOUTZANIS, AUSA
19

20   For the Defendant:

21       LAW OFFICE OF FRANCIS L. O'REILLY
             1735 Post Road, Suite 2C
22           Fairfield, CT 06824
             (203) 319-0707
23           E-mail: attflor@aol.com
         BY: FRANCIS L. O'REILLY, ESQ.
24

             Official Court Reporter:
25           Corinne T. Thomas, RPR
               (203) 809-0848
```

```
 1              (Call to Order, 11:21 a.m.)

 2         THE COURT:  Good morning, counsel, ladies and

 3    gentlemen.  Please be seated.

 4         MR. O'REILLY:  Good morning, Your Honor.

 5         MS. KAOUTZANIS:  Good morning, Your Honor.

 6         THE COURT:  We are here for the continued

 7    sentencing hearing in United States v. Shavarius

 8    Smith, 21-cr-202.

 9         May I have appearances, please, starting with

10    the government?

11         MS. KAOUTZANIS:  Good morning, Your Honor,

12    Jocelyn Courtney Kaoutzanis for the government, and

13    with me at counsel table is Special Agent Chris

14    Rettig with the ATF.

15         MR. CHRIS RETTIG:  Good morning, Your Honor.

16         THE COURT:  Good morning.

17         And for the defendant?

18         MR. O'REILLY:  Good morning, Your Honor,

19    Francis O'Reilly present for Shavarius Smith who is

20    present in the court.

21         THE COURT:  Good morning to you,

22    Mr. O'Reilly, and good morning Mr. Smith.  And good

23    morning as well to Probation Officer Lauren Harte.

24         THE PROBATION OFFICER:  Good morning.

25         THE COURT:  We were last together for the
```

A-147

3

 1   sentencing hearing in this case November 28, 2022.
 2   We continued that sentencing until today to give the
 3   parties the opportunity to brief the issue with
 4   respect to whether the defendant's state narcotics
 5   conviction constituted a predicate offense for the
 6   purposes of the sentencing enhancement.
 7           The parties have now briefed that.  I had
 8   asked that they also consider *United States v.*
 9   *Gibson*, a Second Circuit case issued in December 2022
10   after our last hearing.  We had -- and Mr. Smith has
11   already agreed that he understands the contents of
12   the presentence report, he's given the input he
13   wanted, if any, and there wasn't any reason to
14   impose -- there wasn't any reason not to impose
15   sentence.
16           And I take it that none of that has changed,
17   Mr. O'Reilly?
18           MR. O'REILLY:  That's correct, Your Honor.
19           THE COURT:  So in the guideline application
20   which the presentence report sets out, unchanged is
21   the base offense level under 2K2.1(a)(4)(B), the
22   firearm conviction by -- possession by a prohibited
23   person which was an Offense Level 20.  And the
24   question was under 2K2.1(a)(3), whether he was
25   involved with a semiautomatic firearm capable of a

A-148

4

```
1   large-capacity magazine and after conviction for a
2   controlled substance offense which would make his
3   offense level a 22, the other portions, the
4   2K2.1(b)(6)(B) four-level increase for firearm
5   possessed in connection with another felony, that is
6   the possession of heroin and cocaine, and the
7   reduction for the acceptance of responsibility under
8   3E1.1(a), and the government's motion for an
9   additional point under B was granted with reducing it
10  to -- by three.
11          And so the debate was should the total
12  offense level be a 23 or a 21.  The criminal history
13  category is a five, notwithstanding what the parties
14  did in the plea agreement, and the question is is the
15  imprisonment range 84 to 105 months or 70 to
16  87 months.
17          Do counsel wish to be heard additionally on
18  the predicate offense issue?
19          MR. O'REILLY:  I think the papers lay it out
20  pretty well, Your Honor.
21          THE COURT:  Okay.  And when you speak, you
22  are welcome to remove your mask, but, otherwise, we
23  require that the masks be kept on.
24          MR. O'REILLY:  Yes, Your Honor.
25          THE COURT:  Ms. Kaoutzanis?
```

1       MS. KAOUTZANIS:  Your Honor, I'm happy to

2   answer any questions that the Court may have, but I

3   think our position is also laid out in the papers.

4       THE COURT:  Okay.  And I have read those

5   papers and considered them and considered the

6   parties' dispute on whether Mr. Smith's prior state

7   conviction under Connecticut General Statute

8   21a-278(b)(1)(A) qualifies as a controlled substance

9   offense for the purposes of 2K2.1(a)(3).  It's the

10  government's contention that it does under *Chery v.*

11  *Garland* from the Second Circuit while the defendant

12  contends that Section 278 is categorically overbroad

13  and *Chery* does not apply.

14      If Mr. Smith's prior conviction is a

15  controlled substance, then his base offense level is

16  a 22.  If it does not, then his base offense level is

17  a 20, and the government bears the burden of showing

18  that the prior conviction counts as a predicate

19  offense for the purposes of this sentencing

20  enhancement under *U.S. v. Savage*.

21      So there are two issues to be addressed,

22  whether 21a-278(b)(1)(A), that I'm going to call 278,

23  qualifies as a controlled substance offense under the

24  categorical inquiry, and if not, whether Mr. Smith's

25  specific conviction under 278 is a predicate offense

6

1   under the modified categorical inquiry.

2         As to the categorical inquiry, the government

3   argues that *Chery's* conclusion that the prescribed

4   conduct in 21a-277 is a categorical match to the

5   federal definition of controlled substance offense

6   and governs the case because the prescribed conduct

7   in 271 is the same as -- excuse me, 277 is the same

8   as in 278.  The defendant, on the other hand, argues

9   that 278 is broader because it makes allowances for

10  the fact -- for the status of the defendant as a

11  drug-dependent person.

12        The defendant further contends that *Chery* is

13  inapplicable because it involved an immigration case

14  rather than a criminal case relying on *U.S. v. Gibson*

15  which cautioned that an immigration determination was

16  not, quote, on point precedent involving the same

17  analysis as the criminal matter because it was,

18  quote, legally and factually different.

19        Now, application note one of the guideline

20  2K2.1(a)(3) defines controlled substance offense

21  through cross reference to Section 4B1.2(b) which in

22  turn defines a controlled substance as, quote, An

23  offense under federal or state law punishable by

24  imprisonment for a term exceeding one year that

25  prohibits the manufacture, import, export,

A-151

7

 1   distribution or dispensing of a controlled substance

 2   or counterfeit substance or the possession of a

 3   controlled substance or counterfeit substance with

 4   intent to manufacture, import, export, distribute or

 5   dispense, end quote.

 6       The state statute under which Mr. Smith was

 7   convicted states no person may, quote, manufacture,

 8   distribute, sell, prescribe, dispense, compound,

 9   transport with the intent to sell or dispense --

10   possess with intent to sell or dispense, offer, give

11   or administer to another person a narcotic substance.

12       *Chery* viewed each proscribed act under 277(a)

13   as falling within the corresponding proscribed act in

14   the controlled substances act, but the defendant

15   argues that under 278, the statute only applies if

16   the defendant was not a drug-dependent person such

17   that an additional element is imposed for proof on

18   the government; however, as the Connecticut Supreme

19   Court has stated in *State v. Ray* in 2009, quote,

20   Absence of drug dependency is not an element of the

21   offense but it is an affirmative defense.  So because

22   drug dependency is not an element, the statute is not

23   overbroad on that basis.

24       The next step of the categorical inquiry

25   requires a determination of whether the proscribed

A-152

8

 1    substances match those that are regulated under the

 2    state definition.  The Second Circuit in 2018 in *U.S.*

 3    *v. Townsend* said that to qualify as a predicate

 4    controlled substance offense, quote, The state law

 5    must criminalize only those substances that are

 6    criminalized under federal law, end quote.

 7          The defendant contends that Connecticut

 8    regulates naloxegol, an opium derivative, and

 9    ioflupane, a cocaine-related substance, while neither

10    the version of the controlled substances act schedule

11    in effect at the time of Mr. Smith's offense or

12    sentencing criminalized either substance.

13          There are two ways in which Connecticut's

14    definition of narcotic substance is, in the Court's

15    view, broader than the federal definition of

16    controlled substance.  First, Connecticut defines

17    narcotic substance as including opium or opiate, or

18    any salt, compound, derivative, or preparation of

19    opium or opiate.  Under Connecticut General Statute

20    21a-240, the Second Circuit in *Gibson* found that

21    identical wording in the New York Public Health Law

22    Section 3306 in 2002 includes naloxegol because it

23    can be derived from opium alkaloid.  Thus, under

24    Gibson's analysis of an analogous statute,

25    Connecticut includes naloxegol in its definition of a

1  narcotic substance, but the federal controlled
2  substances definition does not.
3       Second, Connecticut also regulates, quote,
4  Any isomer of cocoa leaves, while the Controlled
5  Substances Act more narrowly defines isomer with
6  respect to cocaine as any optical or geometric isomer
7  in 21CFR Section 1300.01.
8       In *United States v. Holmes* from the Eastern
9  District of New York in April of '22 found that New
10 York's identically worded definition of isomer is
11 broader than the federal definition because any
12 isomer is broader than the two narrower categories of
13 optical or geometric isomers.  Based on the analysis
14 of *Holmes*, Connecticut's inclusion of any isomer of
15 cocaine as a narcotic substance also renders its
16 definition broader than the federal one.  Thus, the
17 Court finds that the government has not met its
18 burden with respect to the categorical inquiry.
19       But moving to the modified categorical
20 approach, the defendant's certificate of conviction,
21 certified conviction, states he was convicted of
22 possession with intent but does not specify whether
23 it was with intent to sell, to distribute, both of
24 which are, however, encompassed in the federal
25 definition.  But focusing on the specific subsection

10

1  (b)(1)(A) 21a-278, defining the offense as narcotic

2  substances, this term is broader under Connecticut

3  law than the federal definition of controlled

4  substance.

5      The government has provided no appropriate

6  document permitting the Court to determine whether

7  the defendant was charged with conduct involving a

8  specific drug or only of a narcotic substance

9  generally and his certified conviction confirms only

10  that he was convicted of possession with intent to

11  sell or distribute a narcotic substance generally

12  under 21a-278(b)(1)(A), although the PSR specifies at

13  paragraph 38 that the defendant was convicted of

14  cocaine, but the PSR is not among the list of

15  judicially recognized documents provided by the

16  Supreme Court in *Mathis* upon which the Court can

17  rely.

18      In sum, the Court concludes that the

19  defendant's conviction under 21a-278 does not qualify

20  as a controlled substance offense for our sentencing

21  purposes here and his base level will be a 20.  Thus,

22  his total offense level is 21, Criminal History

23  Category V, prison range 70 to 87.

24      I'll hear from defense counsel with respect

25  to your arguments on the 3553 sentencing factors and

A-155

1  the circumstances of Mr. Smith's case as reflected in

2  the PSR or otherwise.

3          MR. O'REILLY:  Thank you, Your Honor.  I'd

4  just like to begin by pointing out that his mother,

5  Thomasina Evans, is here and I think she wants to

6  address you briefly, I would think at the end of my

7  remarks.

8          THE COURT:  That would be fine.

9          MR. O'REILLY:  And then Mr. Smith also has a

10 letter he prepared, Your Honor, that he wants to read

11 to you as well and I think we'll have him do that

12 last.

13         THE COURT:  All right.  And you can also make

14 comment in addition to whatever you've written in

15 your letter if you wish to.

16         MR. O'REILLY:  Thank you, Your Honor.

17         Your Honor, I guess I would begin at the

18 guideline range of 70 to 87 months.  I think in our

19 initial sentencing memorandum, we had asked the Court

20 to consider a departure from that guideline range or

21 a variance, for that matter, based on the case *United*

22 *States v. Fernandez*.  The initial plea agreement had

23 that -- that was contemplated by the parties was a

24 Criminal History Category IV.

25         Through the efforts of probation, it was

A-156

12

1   determined that it was a Category V.  We don't

2   dispute that, but we do think that the plea

3   bargaining process is a critical phase of the

4   resolution of these types of cases when the parties

5   have reached a resolution.  We're asking the Court to

6   honor that, and the Second Circuit has found that to

7   be an appropriate consideration for Your Honor in

8   *Fernandez*.

9         And so if Your Honor were to consider that

10   *Fernandez* departure and you were to contemplate a

11   Category IV, the guideline range would be 57 to

12   71 months, and that's where we would ask the Court to

13   begin its analysis of what the appropriate sentence

14   in this case is.

15         Your Honor, in my memo, I mentioned that I

16   thought a sentence of 48 months was an appropriate

17   sentence in this case which is a -- would be somewhat

18   of a downward variance from the Category IV guideline

19   that I just mentioned to you and it would also be a

20   variance down if Your Honor was to hold fast to the

21   Category V.  But the reason that I suggested or

22   thought that the 48 months was appropriate is because

23   I've -- you know, in thinking about Mr. Smith's

24   entire life or Shavarius' entire life, the periods of

25   incarceration he's had before, the fact that this is

13

1   a federal conviction, that he's going to serve a

2   substantial period of incarceration no matter what,

3   that -- that the goals of sentencing can be

4   accomplished by a sentence of somewhat of a downward

5   variance from the guideline range and I thought the

6   appropriate sentence was 48 months.

7           THE COURT:  May I interrupt you?

8           MR. O'REILLY:  Yes, Your Honor.

9           THE COURT:  With respect to your *Fernandez*

10  argument, is it correct that the plea agreement

11  contemplated either the range of the 84 to 105 or 70

12  to 87?

13          MR. O'REILLY:  I don't think the 84 to 105.

14  I think it contemplated whether the two-level

15  enhancement was appropriate or not.  Right?  And so

16  we had that dispute going into this argument.  So if

17  it was a 23 under a Category IV, it would have been

18  70 to 87 months.  Your Honor's determined it to be a

19  category -- I'm sorry.

20          THE COURT:  To not be a predicate offense.

21          MR. O'REILLY:  To not be a predicate offense.

22  So therefore, the offense would be a 21 and the

23  Category IV would be 57 to 71 months.  So we did

24  contemplate this argument in the plea agreement, Your

25  Honor, but we -- but I think once that argument is

A-158

14

```
 1   resolved, then it should default to the Level 21
 2   guideline range.  So I don't think -- I think it was
 3   only contemplating the higher range if Your Honor
 4   determined that the prior conviction was a predicate
 5   drug offense.
 6           THE COURT:  Okay.
 7           MR. O'REILLY:  Your Honor, Shavarius is still
 8   a young man; he's 22 years old.  He grew up in some
 9   very difficult circumstances here in New Haven.  I
10   don't think I need to explain to Your Honor how
11   certain neighborhoods in New Haven can be very
12   difficult.  He grew up in the Farnam Court Housing
13   Project, which I'm sure Your Honor is -- is fully
14   aware of all of the activities that go on in that
15   environment.
16           You know, I have no disrespect towards his
17   mother who's here, Your Honor, but she wasn't present
18   for the majority of his earlier years.  She had her
19   own difficulties with the legal process and she was
20   in and out of incarceration which created a
21   tremendous instability in Shavarius' life.  His
22   father was nonpresent in his life, Your Honor, until
23   the father was -- you know, died of, I think, a
24   murder when Shavarius was 11 years old.
25           He was fortunate that he had an aunt that
```

15

```
 1  took him and helped raise him as well as Ms. Evans'
 2  foster mother helped raise him as well.  So he did
 3  have people in his life that cared for him, including
 4  his mother, I'm not saying she didn't, but that cared
 5  for him and raised him in -- as the best they could
 6  under a very difficult set of circumstances, Your
 7  Honor.
 8          Shavarius has gone off the rails.  He's --
 9  he's not -- his record up to this point, I'm not
10  going to dispute, has been problematic.  But I don't
11  think that is a reason to say that there's not hope
12  for him.  There is hope for him.  He's an intelligent
13  man, Your Honor.  I've spoken to him many times.  He
14  is engaging when I meet with him.  There's never any
15  conflict or contentious atmosphere.  There's nothing
16  menacing, at least in my interactions with him.  He's
17  always been respectful with me.  He's attentive.  He
18  accepted responsibility early in the case.  And so I
19  think there are a lot of positive attributes about
20  Shavarius that the Court should credit.
21          And then when thinking about the custodial
22  sentence that he is going to receive, the type of
23  programming and the type of efforts that he can
24  receive within the BOP but then also upon his
25  release, because regardless of what Your Honor --
```

16

```
 1   what sentence Your Honor imposes today, he's still
 2   going to be a very young man when he's released.
 3   He'll be in his late 20s, mid to late 20s regardless
 4   of what Your Honor does.  So he's going to need some
 5   structure and some help upon his release, and I think
 6   mental health treatment I think is important.
 7           I would suggest, Your Honor, and I think the
 8   PSR does this as well, is that he had untreated
 9   mental health issues and I think that if those can be
10   appropriately handled with the right type of medical
11   and therapeutic intervention, it can really turn
12   people's lives around and I know probation can make
13   those types of efforts.
14           So I think maybe this is a long way of saying
15   that he is going to serve a period of incarceration
16   here.  He is going to get out relatively soon, we're
17   asking Your Honor for 48 months, and that a sentence
18   like that would send a message to him that this
19   behavior is not going to be tolerated, but it would
20   also send a message that the Court sees there are
21   positive things about Shavarius, that there is hope
22   for Shavarius, that if he engages in the appropriate
23   behavior upon release and within the Bureau of
24   Prisons, that he can have a positive, fruitful life
25   beyond this circumstance, Your Honor.
```

17

```
 1            So I ask you to consider the 48 months.  I
 2    think it's appropriate under the circumstances.  I
 3    think -- I'd ask his mother to say a few words to you
 4    now, Your Honor, if that's appropriate.
 5            THE COURT:  That's fine.  And going forward,
 6    Mr. O'Reilly, if you wish to speak without your mask,
 7    you are welcome to do that.
 8            MR. O'REILLY:  I'm sorry.  Thank you, Your
 9    Honor.
10            THE COURT:  All right then.  Ms. Evans, do
11    you want to come forward?
12            All right.  If would you give us your full
13    name for our record and you may speak without your
14    mask, if you wish.
15            MS. THOMASINA EVANS:  My name is Thomasina
16    Evans.  Well, he said a lot, but I do want to say
17    that I do play a big part in having my son go through
18    half of the things that he's been through, but he is
19    a smart, intelligent young man, and I do have a
20    support system behind me to help support him as far
21    as the time that he's going to be serving and his
22    transition back home.
23            THE COURT:  You want to describe that?
24            MS. THOMASINA EVANS:  What part?
25            THE COURT:  Your support system.
```

A-162

18

```
1              MS. THOMASINA EVANS:  Well, there are some
2    people that helped me with Shavarius last time, two
3    mentors that he had, and they're still willing to be
4    there to help me with him.  They just didn't know his
5    status right now, but I do keep in touch with them
6    and they're willing to continue to work with him
7    whenever his transition is to come back home.
8              THE COURT:  All right.  Thank you.
9              MS. THOMASINA EVANS:  Thank you.
10             MR. O'REILLY:  Your Honor --
11             THE COURT:  I think I'll hear from the
12   government first.
13             MR. O'REILLY:  That's fine.  Thank you.
14             THE COURT:  And then, Mr. Smith, that means
15   you will have heard everything that the Court has
16   heard and you can address it if you wish.
17             THE DEFENDANT:  Yes, Your Honor.
18             THE COURT:  Ms. Kaoutzanis?
19             MS. KAOUTZANIS:  Thank you, Your Honor.  So I
20   do want to start out by prefacing my remarks similar
21   to what Mr. O'Reilly just said, I think everyone
22   agrees that Mr. Smith is a young man and is certainly
23   not irredeemable and all of the programs that
24   Mr. O'Reilly was talking about upon his release from
25   prison, I would also strongly support as well, but
```

19

 1    there is also a need for punishment here.  There's a
 2    need to reflect the seriousness of the crime, and in
 3    the government's view, there's a real need to deter
 4    from future criminal behavior like this.
 5          In terms of the crime itself, it's a felon in
 6    possession crime, but in the scheme of felon in
 7    possession crimes, it's arguably one of the worst.
 8    Mr. Smith has a loaded firearm with an extended
 9    magazine capable of holding 31 rounds of ammunition.
10    It's a privately manufactured firearm or a ghost gun.
11    He has it loaded in a residential area and he has
12    heroin and crack packaged for redistribution in his
13    car.
14          So this is -- I mean, I think it's hard to
15    categorize any felon in possession as totally a
16    victimless crime because at the end of the day,
17    there's a gun on the streets that could end up
18    causing harm to someone, but in this case, it's a
19    particularly egregious form of that felon in
20    possession in light of the gun itself, the extended
21    magazine -- I mean, there is no reason why anyone
22    needs a magazine with 31 rounds in a residential
23    area, and then the fact that the gun is untraceable
24    and that there's drugs with Mr. Smith packaged for
25    redistribution.

A-164

20

```
 1          Then the circumstances of the crime itself
 2   are also striking.  Mr. Smith was just released from
 3   custody.  He was driving a stolen care and he had a
 4   GPS bracelet on when he was doing this.  That taken
 5   together shows that Mr. Smith did not care at all
 6   about the fact that he was supposed to be in
 7   compliance, the fact that he had on a GPS bracelet.
 8   I mean, this type of totally brazen conduct without
 9   regard for any of the circumstances in which he found
10   himself shows that his prior criminal convictions and
11   incarceration had not sufficiently deterred him, they
12   had not showed him that this can't continue, because
13   he chose to do it again even under these conditions
14   while wearing a GPS bracelet.
15          And then you have Mr. Smith's extensive and
16   repeated criminal history.  So there is multiple
17   infractions that he had in DOC custody, I think there
18   was four after this offense, prior criminal
19   convictions, the lack of trying to secure employment
20   in the past.  So I think there's certainly a lot to
21   be said for the fact that the circumstances of his
22   life unfortunately probably pushed him on this
23   trajectory, but the fact that he keeps on engaging in
24   this criminal conduct, I don't think that can be
25   blamed on the early circumstances of his life
```

21

1    anymore.  And at this point, the seriousness of the

2    crime and the deterrence merits a significant

3    sentence of imprisonment.

4         So, Your Honor, the government is asking for

5    a 70-month sentence.  That is -- we are taking the

6    position that a *Fernandez* departure is not

7    appropriate in terms of the criminal history because

8    the plea agreement specifically lays out that the

9    parties have the right to recalculate Mr. Smith's

10   criminal history; however, the government's sentence

11   is within both of the guidelines contained in the

12   original plea agreement and the sentence that

13   Mr. Smith seeks is below both of the guidelines

14   contained in the original plea agreement.  But the

15   70-month sentence here, I think, best captures the

16   seriousness of what Mr. Smith did and the need for

17   deterrence.

18        And I would just draw the Court's attention

19   to the presentence report in paragraph 90 where I

20   think the probation officer also captures this when

21   she comments that Mr. Smith had been just released

22   from custody one month prior, she comments on the

23   stolen car, the loaded gun, the ammunition, the

24   drugs, and then writes, he was not deterred at all by

25   the fact that he had just been released from jail or

A-166

22

```
 1   that he was on probation and monitored by GPS with a
 2   device strapped to his ankle or by any of the terms
 3   of imprisonment he had previously served when he
 4   committed the instant offense.  He clearly had no
 5   regard for the state court or probation officer for
 6   the potential that he would get caught and go back to
 7   jail.  And I think that captures why we're seeking
 8   the 70-month sentence here for the deterrence
 9   purposes, to capture the seriousness of the crime and
10   provide just punishment.  Thank you, Your Honor.
11              THE COURT:  All right.
12              All right.  Mr. Smith, would you like to come
13   to the podium and be heard?
14              THE DEFENDANT:  Your Honor, I put a letter
15   together for you.  Dear Judge, first and foremost --
16   Dear Judge Arterton, first and foremost, I want to
17   take the time to be a responsible adult and stress to
18   the Court that I take full ownership and
19   responsibility of my actions in the crime that had
20   been committed.  I am willing to accept the
21   punishment that will be held against me today, and
22   during my time of incarceration, I have been taking
23   heed to myself as well as others' mistakes and
24   wrongdoings and I'm starting to understand that for
25   every action, there will be a reaction, and if I can
```

23

```
 1   continue to take the path that I've been taking, my
 2   consequences will only get worse.
 3           I'm 22 years old and while living in
 4   New Haven my whole life, I've struggled with nothing
 5   but violence, battling the death of not only friends
 6   and relatives but also a parent.  Sometimes in my own
 7   way, I feel like jail saved me, and honestly, I feel
 8   like I need this in order to escape the reality, but
 9   taking responsibility for your actions is a huge part
10   of being a man and without blaming anyone else for my
11   wrongdoings besides myself.  I want to say I
12   apologize for any harm I have caused and I'm ready to
13   get my life on the right path and change not only for
14   myself but the family and friends that continue to
15   support me through my ups and downs.  That's it.
16           THE COURT:  So let me ask you this,
17   Mr. Smith:  When you say you're ready to get your
18   life on the right path, how come this didn't happen
19   earlier?
20           THE DEFENDANT:  I feel like I was still young
21   and, like, I was taking stuff as a joke, but as you
22   get older, you wisen up.  So being around older
23   people that I'm around while being incarcerated, I
24   just feel like I'm starting to understand life more
25   easier.  I'm starting to understand life more better.
```

A-168

24

```
1          THE COURT:  You are getting some of this
2   understanding from the older detainees?
3          THE DEFENDANT:  Yeah.  Like, a lot of the
4   people that I'm around, they're already going through
5   this process.  Like, I'm around nothing but federal
6   detainees.  So when they're sitting me down and
7   they're telling me I got to chill out and I got to
8   get my head on the right track, I'm taking heed to
9   them because they've been going through this for some
10  time already.  So when they already been through it
11  and then they're telling me that I got to straighten
12  up so I don't go through it, it's obvious that it's
13  right there in my face that this is what could happen
14  if I continue to do what I do or act the way I act.
15          THE COURT:  All right.  Anything else that
16  you want to add?
17          THE DEFENDANT:  No.  That's it.
18          THE COURT:  Okay.  Thank you.
19          THE DEFENDANT:  I appreciate it.
20          THE COURT:  Anything, Mr. O'Reilly, to be
21  added?
22          MR. O'REILLY:  No, Your Honor.  Thank you.
23          THE COURT:  Ms. Kaoutzanis?
24          MS. KAOUTZANIS:  No, Your Honor.  Thank you.
25          THE PROBATION OFFICER:  Your Honor, if I may,
```

1  I just realized -- I apologize.  I hadn't noticed

2  this earlier.  I believe Mr. Smith is currently at

3  Wyatt; is that correct?

4      MR. O'REILLY:  Yes.

5      THE PROBATION OFFICER:  So I think we should

6  update the presentence report because it currently

7  reflects that he's in state custody.

8      THE COURT:  And that triggers another

9  question I wanted to ask.  Probation has reviewed the

10  DOC records of movement and they say that on June 22,

11  2022, Mr. Smith was transferred into federal custody.

12  Is that the date from which Mr. Smith should be given

13  credit towards his federal sentence?

14      MR. O'REILLY:  My understanding, Your Honor,

15  is that he was in on a violation of probation charge.

16  Well, he was initially in on charges related to this

17  offense.

18      THE COURT:  And that was on October 8th of

19  2021?

20      MR. O'REILLY:  Right.  And then he was

21  subsequently indicted federally.  My understanding is

22  those state charges that were related to this have

23  been nolled, but the one that remained was the

24  violation of probation.  That would relate to his

25  prior offense -- this is my understanding, to his

26

1    prior offense for which he was on probation for.  And

2    so he was not -- he would not be getting credit from

3    October 2021 to that June date, but at that point

4    when he transferred into federal custody, he should

5    be receiving credit for all of that time.

6           And as a further thought, we could ask Your

7    Honor to potentially adjust his sentence for that

8    period of time from October of '21 to June of 2022 as

9    something -- as something as you fashion a sentence

10   that's up for Your Honor's consideration, but I think

11   once he comes into federal custody is when he should

12   start earning credit for this federal offense.

13          THE COURT:  So you make two arguments, one is

14   that the June 22, '22, triggers his -- the start of

15   his federal time?

16          MR. O'REILLY:  Right.  Because he's in --

17          THE COURT:  But the time between October of

18   '21 and June of '22 is not going to be credited to

19   any state sentence?  I thought something was still

20   pending.

21          MR. O'REILLY:  Can I just have one moment,

22   Your Honor?

23          So he indicates to me, Your Honor, two

24   things.  One is that he was indicted very soon after

25   he was arrested in October, he was indicted federally

1   on this case, and that the violation of probation is
2   still pending but that he was re- -- he was released
3   to the federal detainer in June of 2022.
4           THE COURT:  Does that explain why the October
5   to June time period would be dead time or is that not
6   your claim?
7           MR. O'REILLY:  Because my concern is -- my
8   thinking is, Your Honor, is that the Bureau of
9   Prisons is not going to credit him for time that is
10  being served for an unrelated offense and if he --
11  and if they're going to contemplate that he was in on
12  a violation of probation on a state charge, that
13  would be an unrelated offense to this crime of
14  federal conviction.  So I -- so I think that is my
15  understanding of how the BOP would calculate it, but
16  I'm not -- you know, I wouldn't bet my life on it,
17  but I think that's right.
18          THE COURT:  But the probation violation is
19  still pending and still needs to be sentenced; is
20  that correct?
21          MR. O'REILLY:  Yes, Your Honor.
22          MS. KAOUTZANIS:  Your Honor?
23          THE COURT:  Yes.
24          MS. KAOUTZANIS:  I think that all of the
25  state charges are still pending, the underlying state

28

```
 1   charges that are the same as these.  So we have a
 2   court date --
 3        THE COURT:  That's what I had thought, so I
 4   was a little surprised to hear that they'd been
 5   nolled.
 6        MR. O'REILLY:  They are going to be.  I think
 7   we talked about --
 8        MS. KAOUTZANIS:  That may very well be the
 9   case that they're going to be nolled, but I think as
10   of right now, there's a March 1, 2023, court date.  I
11   mean, it's generally the case that when it's the same
12   charges, that's what ends up happening.  But it is
13   worth noting that he was charged with multiple
14   including the drug separately, I think there's a
15   stolen motor vehicle charge.  There's other things
16   that aren't necessarily encompassed by the ammunition
17   possession here.  But it's all from the same -- the
18   two pending things are the incident here and then he
19   has a violation of probation on his possession with
20   intent narcotics offense from 2018 and those both
21   have the next court date of March 1st.
22        THE COURT:  So although you seem to think
23   they will be nolled, they might also be time served
24   or they might be concurrent or some other variant of
25   a sentence?
```

29

```
 1          MS. KAOUTZANIS:  Yes, that is correct, Your
 2   Honor.  I do not have any specific information that
 3   they will be nolled.
 4          THE COURT:  Do you have anything to clarify
 5   the record?
 6          MR. O'REILLY:  No, Your Honor.
 7          THE COURT:  And then depending on his
 8   disciplinary record, Mr. Smith may qualify for good
 9   time reduction of his sentence, but I understand that
10   on October 25th of '22, he got a disciplinary ticket.
11   Is there any information that you can provide me that
12   indicates what that impact may be?
13          MR. O'REILLY:  I think he had an altercation
14   within the facility, Your Honor.  I don't know what
15   the genesis of that altercation was.  I do know that
16   he was being held up at Corrigan in a very difficult
17   set of circumstances.  I think he was locked in, you
18   know, for 23 hours a day.  It was one -- it was a
19   very onerous period of incarceration for him.
20          And so I don't know the circumstances, but I
21   do know that sometimes things happen within the
22   facilities that, you know, we'd rather not happen.
23   But that's his -- that's what he just indicated to
24   me, that it was based on an altercation.
25          THE COURT:  Okay.  And am I correct that his
```

```
 1   longest prior sentence that he served is two years?
 2            MR. O'REILLY:  That's correct, Your Honor.
 3            THE COURT:  I'd like to take a brief recess
 4   and consider your remarks.
 5            (Recess taken.)
 6            (Call to Order, 12:52 p.m.)
 7            THE COURT:  Please be seated, ladies and
 8   gentlemen, counsel.  I appreciate your patience.
 9            Imposing a sentence on one so young is
10   discouraging and difficult, but a sentence needs to
11   reflect the seriousness of the offense, needs to
12   promote respect for law, both generally and with
13   respect to the individual defendant, and to impose
14   just punishment.
15            So we start with the nature and circumstances
16   of the offense, which in this case, although the
17   charge to which he pled guilty is being a felon in
18   possession of ammunition, this is not descriptive of
19   what was going on.  This is not mere possession of
20   ammunition by a person who is a felon, but it was
21   done in the context that posed great risk to the
22   residential neighborhood in which it took place
23   involving a stolen car, a 9 millimeter weapon with
24   extended capacity which was loaded with 20 rounds,
25   the weapon was an untraceable ghost gun and not, of
```

31

1  course, one possessed for any lawful purpose, and as

2  well it was possessed by Mr. Smith in conjunction

3  with narcotics apparently for distribution, and

4  significantly about a month, a little more than a

5  month after he'd been released on September 2 of

6  2021, from his last incarceration.

7       These are all ingredients of menace to that

8  neighborhood and reflect great seriousness of the

9  offense, but the Court doesn't just look at this

10  seriousness.  It looks at Mr. Smith's history and

11  characteristics in order to fashion an appropriate

12  sentence.  Everybody recognizes that Mr. Smith is

13  relatively young, that his childhood was particularly

14  difficult, but he did -- he was not abandoned.  He

15  did have supporting adults available and present.

16       His education was deficient.  He has no high

17  school degree, although it is widely believed by

18  everyone, including Mr. Smith, that he's smart.  He

19  has never had legitimate employment, and so the

20  prospects of what he must do to prepare himself for

21  reentry include preparing for legitimate employment.

22  He has undoubtedly some mental health issues.  His

23  record shows behavioral problems, some evaluation and

24  helpful participation in New Haven's LEAP program but

25  also substance abuse.

32

1        So in terms of promoting respect for the law,
2   while the Court appreciates that Mr. Smith is now
3   listening to the message that he's getting that he
4   has to straighten up, and that is a good sign;
5   however, his record of continued criminal conduct
6   involving some violence, stolen cars, police chases,
7   drug possession, pretty much was unabated and was
8   undeterred by either incarceration or conditions of
9   probation.  Ironically, he had a GPS bracelet on at
10  the time of his arrest.
11       So the sentence to be imposed has to afford
12  adequate deterrence, and that has not been achieved
13  by past incarceration or by conditions of probation,
14  and the public needs protection from Mr. Smith.  The
15  Court listened carefully to Mr. Smith's remarks and
16  they sounded hopeful, they sounded hopeful that he
17  will use his positive attributes to do what fellow
18  detainees are counseling him he has to do.  He has
19  not listened previously.  But to meet his objective,
20  which he says is to be a responsible adult, Mr. Smith
21  is just beginning this process.  He's just beginning
22  to get his life on the right path, as he says, and
23  this hope and his progress will first be largely
24  determined by how well he uses his time and
25  opportunities in prison.

1     I don't think that the circumstances

2 presented in this case justify a variance.  I don't

3 think the plea bargaining process has been undermined

4 if a guideline sentence is imposed.  That is within

5 the ken of the parties' plea agreement.

6     Having taken all these factors into account,

7 I'll ask Mr. Smith to please stand.

8     On Count One, Mr. Smith is remanded to the

9 custody of the Attorney General of the United States

10 for a period of 70 months.  Thereafter, he will be on

11 supervision for three years.  The mandatory

12 conditions of supervision include you must not commit

13 another federal, state or local crime, you must not

14 unlawfully possess a controlled substance, you must

15 refrain from any unlawful use of a controlled

16 substance and submit to a drug test within 15 days of

17 release and at least two periodic drug tests

18 thereafter, and you must cooperate in the collection

19 of a DNA sample as directed by probation or the

20 Bureau of Prisons.

21     In addition, there are special conditions of

22 your supervised release.  First, you shall not

23 possess any firearm or any other dangerous weapon.

24 Second, you must submit your person, your vehicle,

25 your residence or your office to search by a

34

 1    probation officer based on reasonable suspicion of

 2    contraband or violation of supervised release.

 3    Failure to submit to this search is grounds for

 4    revocation of your supervised release and you must

 5    advise others who live with you of this condition.

 6            You must also participate in a mental health

 7    treatment program that's approved by the probation

 8    office, and that includes cognitive behavioral

 9    therapy, and follow the program's rules and

10    regulations.  And to the extent you are financially

11    able, you must pay all or a part of those costs.  You

12    must also participate in substance abuse treatment --

13    a substance abuse treatment program that's approved

14    by probation, again following its rules and

15    regulations, and pay for that treatment as you are

16    financially able.

17            Restitution is not applicable in this case.

18    I'm going to waive any fine because of your inability

19    to pay, but the special assessment of $100 is

20    required to be imposed under 18 United States Code

21    3013.

22            Mr. O'Reilly, are there any arrangements for

23    payment?

24            MR. O'REILLY:  Not that I'm aware of, Your

25    Honor.

```
 1          THE COURT:  All right.  The $100 will be paid
 2   out of the Inmate Financial Responsibility Program
 3   conducted by the Bureau of Prisons.
 4          Mr. Smith, you have the right to appeal this
 5   sentence.  Any notice of appeal must be filed within
 6   14 days of the entry of judgment in your case.  If
 7   you cannot afford the cost of the appeal, at your
 8   request, the clerk will prepare and file a notice of
 9   appeal for you.  If you cannot afford the cost of
10   counsel for your appeal, the Court will appoint one
11   at no cost to you.
12          I will recall for you that in your plea
13   agreement, you waived appeal if the sentence was
14   87 months or less, which it is, but that does not
15   waive your right to challenge any fundamental or
16   unconstitutional flaws in our process including
17   ineffective assistance of counsel.
18          Mr. O'Reilly, are there recommendations that
19   you wish to make to the Bureau of Prisons?
20          MR. O'REILLY:  Yes, Your Honor.  Just that he
21   be incarcerated as close to the state of Connecticut
22   as possible so that he can maintain his relationship
23   with his family.
24          THE COURT:  I will make that recommendation.
25   Anything else?
```

1          MR. O'REILLY:  No, Your Honor.

2          THE COURT:  Is there anything that I have

3    misstated, that needs still to be resolved or that

4    otherwise needs to be addressed?

5          MS. KAOUTZANIS:  Nothing you misstated,

6    Your Honor.  I just need to move to dismiss Count Two

7    for the purposes of the record.

8          THE COURT:  All right.  The government's

9    motion to dismiss Count Two is granted.

10          Anything from probation?

11          THE PROBATION OFFICER:  The only thing, for

12    the record, Your Honor, is would you like me to amend

13    the record to accurately reflect the defendant's

14    movement in pretrial custody?

15          THE COURT:  Yes.  I think that would be

16    helpful and that would correct the face sheet and

17    whichever other paragraphs, if any, reflect that.

18    And I will make notations on the statement of reasons

19    with respect to the different calculation of the

20    sentencing guideline.

21          THE PROBATION OFFICER:  Okay.  Thank you.

22          THE COURT:  Okay.  If there's nothing else

23    then, I thank you all.  And I really hope, Mr. Smith,

24    that you will keep listening, and that not only you

25    will keep listening but you will take this time,

1   which you have suggested may have been a good

2   stopping point for you, to really grow into the

3   person you want to be and can be.  So I wish you well

4   on that.  We stand in recess.

5           (Proceedings adjourned, 1:07 p.m.)

6

7                C E R T I F I C A T E

8

9   RE:   UNITED STATES OF AMERICA v. SHAVARIUS SMITH
                No. 3:21-cr-00202-JBA

10

11          I hereby certify that the within and

12   foregoing is a true and accurate transcript taken in

13   the aforementioned matter to the best of my skill and

14   ability.

15

16          /s/ Corinne T. Thomas

17          CORINNE T. THOMAS, RPR
            Official Court Reporter
18       United States District Court
            141 Church Street
19       New Haven, Connecticut 06510
            (203) 809-0848

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>SHAVARIUS SMITH | Crim. No. 3:21cr202 (JBA)<br><br>January 31, 2023 |

**RULING ON PREDICATE CONTROLLED SUBSTANCE OFFENSE ENHANCEMENT**

**(§ 21A-278(B)(1)(A))**

Defendant Shavarius Smith pled guilty to Unlawful Possession of Ammunition by a Convicted Felon on June 24, 2022. This ruling memorializes the bench ruling at his sentencing on January 25, 2023.

U.S.S.G. § 2K2.1(a)(3) sets a defendant's base offense level at 22 if, in addition to the offense involving certain types of firearms, "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The parties dispute whether Defendant's prior state narcotics conviction under Conn. Gen. Stat. § 21a-278(b)(1)(A) qualifies as a "controlled substance offense" for purposes of U.S.S.G. § 2K2.l(a)(3). The Government relies on *Chery v. Garland*, 16 F. 4th 980 (2d Cir. 2021), while the Defendant maintains that § 21a-278 is categorically overbroad, that *Chery* does not apply, and Defendant's base offense level should be 20.

**I.    Legal Standard**

"The government bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentencing enhancement." *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008). To determine whether a prior conviction qualifies as a controlled substance offense, the Court conducts a two-part inquiry:

> First, in the categorical inquiry, we ask whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense. If so, 'there is no problem, because the conviction necessarily implies that the defendant has been found guilty of' a

predicate offense. *Taylor v. United States,* 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). If, however, the statute of the prior conviction criminalizes both predicate and non-predicate conduct, then the second part of the modified categorical inquiry requires that we ask whether the government has shown that the plea 'necessarily' rested on a fact identifying the conviction as a predicate offense. *Shepard v. United States,* 544 U.S. 13, 24, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

*Id.* at 964. When applying the modified categorical approach, if the statute has a "divisible" structure that "list[s] elements in the alternative, and thereby define[s] multiple crimes," the court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of," and then compares that crime with the "relevant generic offense." *Mathis v. United States*, 579 U.S. 500, 505–06 (2016). If the statute "enumerates various factual means of committing a single element," however, the modified categorical approach cannot be applied, and the court must instead apply only the categorical approach described in the first step. *Id.* at 506.

## II.   Analysis

There are two issues to be addressed: whether § 21a-278(b)(1)(A) qualifies as a controlled substance offense under the categorical inquiry; and if not, whether Defendant's specific conviction under § 21a-278(b)(1)(A) is a predicate offense under the modified categorical inquiry.

### A.   The Categorical Inquiry

The Government argues that *Chery's* conclusion that the proscribed conduct in § 21a-277 is a categorical match to the federal definition of a controlled substance offense governs this case because the proscribed conduct in § 21a-277(a) is the same as § 21a-278. (Gov's Supp'l Mem. at 4-5.) Defendant argues that § 21a-278 is broader than § 21a-277(a) because § 21a-278 makes allowances ". . . for the status of the defendant as a 'drug-dependent person'." (Def.'s Supp'l Mem. at 4.) Defendant further contends that *Chery* is inapplicable because it involved an immigration case rather than a criminal case based on *United States*

2

*v. Gibson,* 55 F.4th 153, 166 (2d Cir. 2022), which cautioned that an immigration determination was not "on-point precedent" involving "the same analysis" as the criminal matter because it was "legally and factually different," and "[l]egally, an alien removal proceeding is not a criminal prosecution."

Application Note 1 of U.S.S.G. § 2K2.1(a)(3) defines "controlled substance offense" through cross-reference to Section 4B1.2(b), which in turn defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." The state statute under which Defendant was convicted states that no person may "manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person" a "narcotic substance."

*Chery* viewed each proscribed act in § 21a-277(a) as falling within the definition of a corresponding proscribed act in the Controlled Substances Act ("CSA"). "Dispense" is defined by the Controlled Substances Act ("CSA") as "to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery," 21 U.S.C. § 802-10, and so encompasses the acts of prescribing, administering, and compounding enumerated in § 21a-278. The federal definition of "manufacture" similarly includes "compounding." 21 U.S.C. § 802-15. To "deliver", in turn, means "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical," 21 U.S.C. § 802-8, and thus includes "give" and "sell" as defined in Connecticut; the definition is broad enough to also reasonably include

"offer" as an "attempted transfer," since Connecticut defines "offer" as "to present for acceptance or rejection." *State v. Webster*, 308 Conn. 53 (2013).

Defendant argues that § 21a-278 only applies if the defendant is not a "drug-dependent person," which adds as an additional element the requirement for the Government to prove. However, "absence of drug dependency is not an element of the offense," but is rather an affirmative defense according to *State v. Ray*, 290 Conn. 602, 616 (2009). Because the drug dependency provision is not an element, the statute is not overbroad on that basis.

The next step of the categorical inquiry requires determination of whether the proscribed substances match those regulated under the federal definition. *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) teaches that to qualify as a predicate controlled substance offense, "the state law must criminalize only those substances that are criminalized under federal law." Defendant contends that Connecticut regulates naloxegol, an opium derivative, and ioflupane, a cocaine-related substance, while neither the version of the CSA schedule in effect at the time of Defendant's offense or sentencing criminalized either substance. (Def.'s Supp'l Mem. at 7.)

There are two ways in which Connecticut's definition of "narcotic substance" is broader than the federal definition of a controlled substance. First, Connecticut defines "narcotic substance" as including "opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate. . . ." Conn. Gen. Stat. § 21a-240. The Second Circuit in *Gibson* found that identical wording in N.Y. Pub. Health Law § 3306 (2002) includes naloxegol because it "can be derived from opium alkaloids." Thus, based on *Gibson's* analysis of an analogous statute, the Court concludes Connecticut includes naloxegol in its definition of a narcotic substance, while the federal controlled substances definition does not.

Second, Connecticut also regulates "any . . . isomer" of coca leaves, while the CSA more narrowly defines "isomer" with respect to cocaine as "any optical or geometric isomer" in 21

4

A-186

C.F.R. § 1300.01. The district court in *United States v. Holmes,* No. 21-CR-147 (NGG), 2022 WL 1036631, at *8 (E.D.N.Y. Apr. 6, 2022), found that New York's identically worded definition of "isomer" is broader than the federal definition, because "any" isomer is broader than the two narrower categories of "optical" or "geometric" isomers. Based on the analysis in *Holmes,* Connecticut's inclusion of *any* "isomer" of cocaine as a narcotic substance also renders its definition broader than the federal one.

The Court finds that the Government has not met its burden with respect to the categorical inquiry.

**B.     Modified Categorical Inquiry**

Moving to the modified categorical approach, Defendant's certified conviction states he was convicted of "POSS [sic] W/ INTENT"; while it does not specify whether the possession was with intent to sell or to distribute, both are encompassed by the federal definition. (*See* Notice of Certified Conviction [Doc. # 67] at 4.) However, focusing specifically on subsection (b)(1)(A) of § 21a-278, defining the offense as involving "narcotic substances," this term is broader under Connecticut law than the federal definition of controlled substance, as discussed above. The Government has provided no qualifying document permitting the Court to determine whether Defendant was charged with conduct involving a specific drug, or only of a narcotic substance generally. His certified conviction confirms only that he was convicted of possession with intent to sell or distribute a "NARCOTIC SBSTNCE [sic]" generally under § 21a-278(b)(1)(A). Although the PSR specifies at paragraph 38 that the Defendant was convicted of possessing cocaine, the PSR is not among the list of judicially approved documents upon which the Court can rely under the Supreme Court's decision in *Mathis,* 579 U.S. at 505–06.

A-187

**III.     Conclusion**

For the foregoing reasons, the Court concludes that Defendant's conviction under § 21a-278 does not qualify as a controlled substance offense under either a categorical or modified categorical analysis, and his base level is set at 20.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of January, 2023.

UNITED STATES DISTRICT COURT
District of Connecticut

**JUDGMENT IN A CRIMINAL CASE**

UNITED STATES OF AMERICA

Case Number: **3:21-CR-00202-JBA(1)**

USM Number: 76682-509

v.

**SHAVARIUS SMITH**

**Jocelyn J. Courtney Kaoutzanis**
Assistant United States Attorney

**Francis L. O'Reilly**
Defendant's Attorney

Defendant pled guilty to count 1 of the Indictment.

Accordingly, the defendant is adjudicated guilty of the following offense(s):

| Title & Section | Nature of Offense | Offense Concluded | Count |
|---|---|---|---|
| Title 18, United States Code, §922(g)(1) | Unlawful Possession of Ammunition by a Felon | 10/8/2021 | 1 |

The following sentence is a guideline sentence imposed pursuant to the Sentencing Reform Act of 1984.

**IMPRISONMENT**
Defendant is ordered committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total of 70 months on count one.

**SUPERVISED RELEASE**
Upon release from imprisonment, Defendant shall be on Supervised Release for a total term of 3 years.

The Mandatory and Standard Conditions of Supervised Release / Probation as attached are imposed. In addition, the following Special Conditions are imposed:

1. You must not possess a firearm, ammunition, or other dangerous weapon.
2. You must submit your person, residence, office or vehicle to a search, conducted by a United States Probation Officer based upon reasonable suspicion of contraband or evidence of a violation of supervised release; failure to submit to a search is grounds for revocation; you must inform any other residents/occupants that the premises/vehicle are subject to searches pursuant to this condition.
3. You must participate in a program recommended by the Probation Office for mental health treatment including Cognitive Behavioral Therapy. You must follow the rules and regulations of that program. You must pay all or a portion of costs associated with treatment based on your ability to pay as recommended by the probation officer and approved by the Court.
4. You must participate in a program recommended by the Probation Office for substance abuse treatment and testing. You must follow the rules and regulations of that program. You must pay all or a portion of costs associated with treatment based on your ability to pay as recommended by the probation officer and approved by the Court.

A-189

Judgment in a Criminal Case                                                                              Judgment -- Page 2 of 4

## CRIMINAL MONETARY PENALTIES

Defendant must pay the total criminal monetary penalties under the schedule of payments as follows:

| | |
|---|---|
| **Special Assessment:** | $100.00 payable under the Inmate Financial Responsibility Program. |
| **Fine:** | Waived. |
| **Forfeiture:** | Four rounds of Cascade Cartridges Inc., 9mm ammunition; One (1) 9mm pistol with no serial number; and $111.00 in U.S. currency, seized from the Defendant on or about October 8, 2021, all forfeited pursuant to the Order Directing Forfeiture of Property. |

It is further ordered that the Defendant will notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are paid.

The following Counts have been dismissed: Count Two of the Indictment dismissed on government motion.

## JUDICIAL RECOMMENDATION TO THE BUREAU OF PRISONS

The Court recommends Defendant be designated to a facility as close as possible to Connecticut to maintain familial relationships.

**January 25, 2023**
_____
Date of Imposition of Judgment

/s/ Janet Bond Arterton
_____
Signature of Judge

**JANET BOND ARTERTON**
**UNITED STATES DISTRICT JUDGE**
_____
Name and Title of Judge
February 1, 2023
_____
Date

Judgment in a Criminal Case                                                      Judgment -- Page 3 of 4

## CONDITIONS OF SUPERVISION

**In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:**

### MANDATORY CONDITIONS

1. You shall not commit another federal, state or local crime.
2. You shall not unlawfully possess a controlled substance.
3. You shall refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C.§§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ■ You must cooperate in the collection of DNA as directed by the Bureau of Prisons or probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

### STANDARD CONDITIONS

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision and impose a term of imprisonment, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____                    _____

        Defendant                                                                     Date


        _____                    _____

        U.S. Probation Officer/Designated Witness                              Date

A-191

Judgment in a Criminal Case                                                              Judgment -- Page 4 of 4

**CERTIFIED AS A TRUE COPY ON THIS DATE:** _____

By: _____
       Deputy Clerk

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____ a _____,
with a certified copy of this judgment.

_____
Lawrence Bobnick
Acting United States Marshal

By     _____
                Deputy Marshal

A-192

JAN 30 2023 PM 12:25
FILED-USDC-CT-NEW HAVEN

### United States District Court for the District of Connecticut

Case Number: _3:21 CR 202 (JBA)_

_United States_
_____
*List the full name(s) of the plaintiff(s)/petitioners(s)*

v.

**NOTICE OF APPEAL**

_Shavavius Smith_
_____
*List the full name(s) of the defendant(s)/respondent(s)*

Notice is hereby given that _Shavavius Smith_ in the above-
*List the names of all parties who are filing an appeal*

named case, hereby appeal to the United States Court of Appeals for the Second Circuit from the

☐ final judgment entered in this action on _1/25/23_
*Date Entered*

OR

☐ order #(_____) entered in this action on _____ described as:
*Date Entered*

_____
|                                                       |
|                                                       |
|                                                       |
|_____|

*(Provide a brief description of the decision in the order/judgment)*

_1/30/23_
*Date*                                                    *Signature*

_Francis L. O'Reilly_
*Name (Last, First, MI)*

_1735 Post Road, Suite 2C,    Fairfield, CT 06824_
*Address*                          *City*                        *State*

_203-913-4608_                          _ATTFLO@AOL.COM_
*Telephone*                              *E-mail Address (if available)*

*See Rule 3(c) for permissible ways of identifying appellants. Attach additional pages as necessary.

***Note to inmate filers:*** *If you are an inmate confined in an institution and you seek the timing benefit of Fed. R. App.
P. 4 (c)(1), complete Form 7 (declaration of Inmate Filing) and file that declaration along with this Notice of Appeal.*

Rev. 11-16-22

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY MAIL** |
| COUNTY OF NEW YORK | ) | | |

     I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

     **On September 12, 2023**

deponent served the within: **APPENDIX**

     **upon:**

**Mr. Shavarius Smith**
**76682-509**
**FCI McKean**
**6975 Route 59**
**Lewis Run, PA 16738**

the address(es) designated by said attorney(s) for that purpose by depositing 1  true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on September 12, 2023**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026

**Job#  323664**